UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

CVS PHARMACY, INC.

Plaintiff,

- against -

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., INTEGRATED BIOPHARMA, INC., and CONTEMPORARY MARKETING , INC.

Defendants.

---

[illegible] 05 171 T

Civil Action No.

## **COMPLAINT**

Plaintiff, CVS Pharmacy, Inc., ("CVS"), by its attorneys, as and for its Complaint, alleges as follows:

## **SUBJECT MATTER JURISDICTION**

1. Subject matter jurisdiction in this action is based upon diversity of citizenship pursuant to 28 U.S.C.A. § 1332.

2. Plaintiff CVS is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business located at 1 CVS Drive, Woonsocket, Rhode Island 02895.

3. The matter in controversy, exclusive of interest and costs, exceeds $75,000.

4. Upon information and belief, Defendants Beneficial Holdings, Inc., Beneficial Health Systems, Inc., and Beneficial Nutraceuticals, Inc., (referred to collectively as

"Beneficial") are corporations organized and existing under the laws of the State of Utah with their principal places of business located at 4848 South Highland Drive 402, Salt Lake City, Utah 84117.

5. Upon information and belief Defendant Integrated BioPharma, Inc., ("Integrated BioPharma") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 225 Long Avenue, Hillside, NJ 07205.

6. Upon information and belief Contemporary Marketing, Inc., ("CMI") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 1569 Barclay Boulevard, Buffalo Grove, Illinois, 60089.

## PERSONAL JURISDICTION AND VENUE

7. This Court has personal jurisdiction over the Defendants in that Defendants conduct business in this judicial district, and this action arises out of a contract and transactions between CVS and Beneficial in which Beneficial was to supply goods to CVS in this judicial district.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in the judicial district.

9. Upon information and belief, Beneficial regularly and continuously conducts and solicits business in this judicial district and derives substantial revenue from goods it sells in the judicial district.

10. Upon information and belief, Beneficial sells, distributes, markets, and advertises numerous natural herbal and nutraceutical products in the judicial district through a number of retail locations throughout the district.

11. Upon information and belief, Beneficial sells, distributes, markets, and advertises numerous nutraceutical products to consumers in the judicial district through its websites www.beneficialholdings.com, www.WillpowerRX.com, www.EnjoyRX.com, www.EnduranceRX.com and www.HerbalMuscle.com.

12. Upon information and belief, Integrated BioPharma conducts business in the judicial district.

13. Upon information and belief, Integrated BioPharma has purchased all or some of Beneficial's CVS receivables.

14. Upon information and belief, CMI conducts business in this district, and was involved in the contract and transactions at issue in this matter.

15. This action arises out of a contract between CVS and Beneficial in which Beneficial was to supply goods to CVS that were to be sold in this judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16. CVS is a Rhode Island based corporation that operates retail drug stores and pharmacies under the trade name "CVS" throughout the judicial district.

17. Upon information and belief, Defendant Beneficial Holdings, Inc. is a publicly traded holding company operating through its wholly owned subsidiaries, Beneficial Health Systems, Inc. and Beneficial Nutraceuticals, Inc.

18. Beneficial manufactures, sells, distributes, markets, and advertises a diet and weight loss formula called WillpowerRX.

19. On or about May 2004, Beneficial entered into negotiations with CVS regarding introducing WillpowerRX for sale at CVS' retail locations.

20. These negotiations were facilitated through Defendant CMI, a third party intermediary.

21. Upon information and belief, in May 2004, a planning meeting was held between CMI and Beneficial whereby CMI advised Beneficial that CVS' payment terms would be "pay on scan."

22. Upon information and belief, during these meetings, Beneficial agreed that the payment terms would be "pay on scan."

23. "Pay on Scan" is similar to a consignment arrangement whereby Beneficial would only be paid based upon WillpowerRX's sales performance. Under the "Pay on Scan" arrangement, CVS would only be responsible for paying Beneficial for units of WillpowerRX that CVS actually sold.

24. Upon information and belief, CMI had a number of subsequent telephone conversations with Beneficial's principles, directors, and officers, whereby CMI reinforced the fact that CVS would only introduce WillpowerRX into its retail locations if payment was "pay on scan."

25. Upon information and belief, Beneficial would commonly and customarily offer its products for sale to other retailers on a "pay on scan" basis.

26. On or about June 10, 2004, Mr. Harvey Carmichael, Beneficial's President, sent CVS a written correspondence outlining the details of Beneficial's agreement to sell WillpowerRX to CVS.

27. Pursuant to Beneficial's June 10, 2004 correspondence, each unit of WillpowerRX was to be sold to CVS at a cost of $23.97 and sold by CVS at a retail price of

$39.95. Additionally, Beneficial provided CVS an ongoing "BDF marketing fund" of 10% to be taken off invoice.

28. Pursuant to Beneficial's June 10, 2004 correspondence, Beneficial would extend to CVS terms of "Pay on Scan" for a period of one year, after which the payment terms would switch to "2%, 30 net 31 days." Accordingly, pursuant to Beneficial's correspondence, CVS would not have to pay for the WillpowerRX that CVS did not sell.

29. Additionally, Beneficial agreed in its June 10, 2004 correspondence that any and all returns would be handled as outlined in the "CVS return goods agreement."

30. Beneficial also agreed in its June 10, 2004 correspondence that CVS is authorized to deduct a one time charge of $5,000 to "cover the new item slotting."

31. Finally, Beneficial agreed to aggressively market and advertise WillpowerRX. Beneficial's June 10, 2005 correspondence stated that, "We are committed to making sure that WillpowerRX grows to become on (sic) of your best weight loss brands in 2005 through our TV and Print advertising and through our partnerships with leading retailers like CVS. As we discussed the product will be available at GNC and Riteaid/GNC stores starting in September. It will be available to other key retailers beginning in December."

32. Between July 8, 2004, and January 5, 2005, Beneficial received approximately ninety-two (92) purchase orders from CVS/Pharmacy for WillpowerRX.

33. While a large amount of the purchase orders indicated that the terms of sale would be "pay on scan," several purchase orders inadvertently and mistakenly only stated the eventual payment terms of "2%, 30 net 31 days" and failed to include that the terms of sale would be "pay on scan" for the first year.

34. Upon information and belief Beneficial filled the purchase orders with knowledge that the payment terms were "pay on scan," and that some of the purchase orders contained a mutual mistake regarding payment.

35. CVS aggressively marketed and advertised WillpowerRX at a cost of over $100,000. CVS advertised WillpowerRX through 3 circulars that were circulated to over 55 million households per circular. Such advertising would normally cost over $50,000 per add. Thus, CVS advertised to over 150 million households at a value of over $150,000.

36. Beneficial failed to advertise and support the WillpowerRX brand as Beneficial promised and agreed to. Upon information and belief, Beneficial failed to advertise WillpowerRX outside their websites.

37. Upon information and belief, Beneficial failed to market WillpowerRX through print and/or television advertising.

38. Upon information and belief, WillpowerRX was not made available to other retailers besides CVS, and GNC/Riteaid by December of 2004 as promised and agreed upon by Beneficial.

39. CVS discontinued the sale of WillpowerRX due to extremely poor sales. On April, 15 2005, CVS issued a recall of WillpowerRX, at which point WillpowerRX was pulled from CVS shelves and sent to a CVS' reclamation center.

40. WillpowerRX's poor sales were due primarily to Beneficial's failure to effectively market and advertise WillpowerRX.

41. The unsold units of WillpowerRX have been made available to Beneficial for reclamation.

42. Beneficial has recently demanded that CVS pay it over $ 1 million dollars for the units of WillpowerRX that went unsold.

43. Upon information and belief Integrated BioPharma has purchased Beneficial's CVS receivables.

44. Plaintiff has no adequate remedy at law.

**COUNT I**

**(Declaration that Payment Terms were "Pay on Scan")**

45. The plaintiff repeats and realleges each allegation contained in paragraphs one (1) through forty-four (44) of this Complaint as though fully set forth herein.

46. Pursuant to the contract between CVS and Beneficial, the payment terms for WillpowerRX were "pay on scan." Therefore, pursuant to the contract, CVS was only responsible for paying Beneficial for units that CVS actually sold at its retail locations.

47. By reason of the foregoing, plaintiff is entitled to a declaration pursuant to 28 U.S.C.A. § 2201 stating that the payment terms of the contract were "pay on scan" and that CVS was only responsible for paying Beneficial for units that CVS actually sold at its retail locations.

48. By reason of the foregoing, plaintiff is entitled to a declaration from the Court pursuant to 28 U.S.C.A. § 2201 stating that any payment terms in CVS' purchase orders that differed from Beneficial's offer by indicating a payment term other than "pay on scan," would material alter the contract, and are therefore not part of it.

**COUNT II**

**(Reformation of Contract)**

49. The plaintiff repeats and realleges each allegation contained in paragraphs one (1) through forty-eight (48) of this Amended Complaint as though fully set forth herein.

50. Both CVS and Beneficial intended the contract's payment terms to be "pay on scan."

51. Several of the purchase orders did not embody the complete agreement made, but instead omitted the provision that CVS would only pay Beneficial for WillpowerRX on a "pay on scan" basis, meaning that CVS was only responsible for paying Beneficial for units that CVS actually sold at its retail locations.

52. These purchase orders' incomplete payment terms taken as is would materially alter the contract as intended by the parties.

53. Upon information and belief, Beneficial was aware that these purchase orders did not embody the entire agreement between the parties.

54. Plaintiff has no adequate remedy at law.

55. By reason of the foregoing, in the alternative, plaintiff is entitled to a declaration pursuant to 28 U.S.C.A. § 2201, that the terms of the purchase orders containing mutual mistakes be reformed and corrected to indicate "pay on scan" and that CVS was only responsible for paying Beneficial for units that CVS actually sold at its retail locations.

**COUNT III**

**(Breach of Contract)**

56. The plaintiff repeats and realleges each allegation contained in paragraphs one (1) through fifty-five (55) of this Complaint as though fully set forth herein.

57. Beneficial agreed to aggressively market and advertise WillpowerRX. Beneficial's June 10, 2005 correspondence stated that, "We are committed to making sure that WillpowerRX grows to become on (sic) of your best weight loss brands in 2005 through our TV and Print advertising and through our partnerships with leading retailers like CVS. As we discussed the product will be available at GNC and Riteaid/GNC stores starting in September. It will be available to other key retailers beginning in December."

58. Beneficial, however, failed to advertise the WillpowerRX brand as Beneficial promised and agreed to.

59. Upon information and belief, Beneficial failed to advertise WillpowerRX outside its websites.

60. Upon information and belief, Beneficial failed to advertise WillpowerRX through print and/ or television advertising.

61. Upon information and belief, WillpowerRX was not made available to other retailers by December of 2004.

62. By reason of the foregoing, in the alternative, plaintiff is entitled to a declaration pursuant to 28 U.S.C.A. § 2201, that Beneficial is in breach of contract, and that as a result of the breach, CVS is not contractually bound to pay Beneficial for unsold units of

WillpowerRX regardless of whether Beneficial delivered the WillpowerRX on a "pay on scan" basis, and that the contract is rescinded based on this material breach.

**PRAYER FOR RELIEF**

WHEREFORE, CVS seeks a declaratory judgment pursuant to 28 U.S.C.A. § 2201 and 28 U.S.C.A. § 2202 stating that:

1. The payment terms of the contract were "pay on scan" and that CVS was only responsible for paying Beneficial for units that CVS actually sold at its retail locations;

2. Any payment terms contained in CVS' purchase orders that differed from Defendant's offer by indicating a payment term other than "pay on scan," would material alter the contract, and are therefore not part of it;

3. In the alternative, that the terms of the purchase orders containing mutual mistakes be reformed and corrected to indicate "pay on scan" and that CVS was only responsible for paying Beneficial for units that CVS actually sold at its retail locations;

4. In the alternative, that Beneficial is in breach of contract, and that as a result of the breach, CVS is not contractually bound to pay Beneficial for unsold units of WillpowerRX regardless of whether Beneficial delivered the WillpowerRX on a "pay on scan" basis, and that the contract is rescinded based on this material breach; and

5. CVS obtain such other and further relief as the Court may deem just and proper.

Dated: April 22, 2005

Providence, Rhode Island

Respectfully submitted,

EDWARDS & ANGELL LLP

By: ______________________
Todd M. Reed, Esq. (#6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611

OF COUNSEL:

ALLYN & FORTUNA LLP
Nicholas Fortuna, Esq.
Jesse A. Kaplan, Esq.
200 Madison Avenue, 5th Floor
New York, New York 10016
(212) 213-8844
(212) 213-3318 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

CVS PHARMACY, INC.

Plaintiff,

- against -

Civil Action No.

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., INTEGRATED BIOPHARMA, and CONTEMPORARY MARKETING , INC.

Defendants.

---

**RULE 7.1 STATEMENT**

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned counsel for Plaintiff CVS Pharmacy, Inc., states that its corporate parent is CVS Corp.

DATED: Providence, Rhode Island
April 22, 2005

Respectfully submitted,
EDWARDS & ANGELL LLP

By: ____________________

Todd M. Reed, Esq. (#6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 274-9200

OF COUNSEL:
ALLYN & FORTUNA LLP
Nicholas Fortuna, Esq.
Jesse A. Kaplan, Esq.
200 Madison Avenue, 5th Floor
New York, New York 10016
(212) 213-8844
(212) 213-3318 (facsimile)