IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS PHARMACY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | AFFIDAVIT OF HARVEY L. CARMICHAEL |
| vs. | ) | |
| | ) | |
| BENEFICIAL HOLDINGS, INC.; BENEFICIAL HEALTH SYSTEMS,INC.; BENEFICIAL NUTRACEUTICALS, INC., INTEGRATED BIOPHARMA, and CONTEMPORARY MARKETING, INC., | ) | Civil No.: CA 05 171 T |
| | ) | Honorable Judge Torres |
| Defendants. | ) | |

Salt Lake County )
)ss
State of Utah )

Being first duly sworn upon his oath, Harvey L. Carmichael, hereby deposes and states as follows:

1. I am the President of Beneficial Holdings, Inc. dba Beneficial Health Systems (hereinafter "Beneficial").

2. I have personal knowledge of the information contained herein and could and would testify competently regarding the same if called upon to do so.

3. Beneficial is a Nevada corporation head-quartered and doing business in Salt Lake County, State of Utah.

4. Contemporary Marketing Inc. ("CMI"), through its agent and/or employee Ed Ellis, negotiated the placement of Beneficial's product, WillpowerRX™, for retail sale with CVS Pharmacy, Inc. ("CVS").

5. In July, 2004 Beneficial received CVS's first purchase orders. **The purchase orders reflected payment terms of 2% 30 Net 31.**

6. Based upon the payment terms set forth in the purchase orders, as well as the representations Mr. Ellis confirming the same, Beneficial accepted CVS's purchase orders and began filling the same.

7. Over the course of Beneficial's contractual relationship with CVS, Beneficial received 92 purchase orders for product from CVS.

8. The product ordered pursuant to CVS's first 29 purchase orders was manufactured in the State of Utah through Beneficial's product broker, Equity Labs, and shipped from the manufacturer's Layton, Utah factory to the various locations specified by CVS.

9. CVS's offer to purchase Beneficial's product through the submission of purchase orders bearing payment terms of 2%30 Net 31, as well as CMI's confirmation of the payment terms contained in the purchase orders, <u>induced</u> Beneficial to take certain actions including, without limitation, (1)accepting CVS's "offers" (purchase orders) and agreeing to transact business with CVS by filling its purchase orders; (2) engaging manufacturers and obtaining loans to manufacture product to fill CVS's orders; (3) obtaining loans to provide additional operating capital for Beneficial's business; (4) agreeing to repay the subject loans upon receipt of CVS's first 30 day payment; (5) agreeing to "tag" CVS on television and newsprint ads (at an increased cost of advertising) that Beneficial paid for and aired for the benefit of both Beneficial and CVS; (5) agreeing to provide a certain level of advertising of its product; (6) purchasing product

liability insurance in the amount required by CVS and identifying CVS as an additional named insured on the policy; and (7) agreeing to have Beneficial's product advertised in CVS's circulars at a substantial cost to Beneficial.

10. During the course of the relationship between the parties, CVS ordered and received over $1.2 million of product from Beneficial.

11. To date, CVS has paid for approximately $80,000 of product.

12. Beneficial sent a formal demand for payment to CVS on March 1, 2005, informing CVS that if payment in full was not tendered by March 10, 2005, Beneficial would commence legal action against CVS without further notice or delay. CVS ignored Beneficial's demand for payment.

13. As a result of CVS's failure to honor its contractual obligations, and CMI's commission of fraud in inducing Beneficial to engage in a contractual relationship with CVS, Beneficial commenced legal action against CVS and CMI in the Third Judicial District Court in Salt Lake City, Utah on April 12, 2005.

14. CVS then filed suit against Beneficial in Rhode Island on April 25, 2005.

15. CVS and CMI also removed Beneficial's action to federal court and filed Motions to Dismiss Beneficial's complaint, seeking to require Beneficial to try its case against CVS and CMI in Rhode Island and Illinois, respectively.

16. As of this date, the Motions to Dismiss filed by CVS and CMI are still in the briefing process and have not yet been heard or determined by the district court in Utah.

17. CVS's failure to honor the terms contained in the purchase orders received and filled by Beneficial has resulted in extraordinary damages to Beneficial including, without limitation, (1) damage to Beneficial business relationships, as Beneficial has been unable to repay its manufacturer and other creditors; (2) damage to Beneficial's prospective economic relations, as Beneficial has lost sales (as a result of being unable to advertise its product to the extent necessary to achieve market awareness and promote the sale of its product); been unable to fill orders for its product; has lost its celebrity spokesperson; and has lost other retail accounts; (3) damage to Beneficial's reputation; (4) damage to Beneficial's contractual relations with its manufacturers, lenders, retailers, spokespersons, vendors and other business relationships; (5) loss of over $7 million dollars in market value and as a going concern; and (6) damage from being rendered insolvent and no longer having a presence in the retail market.

18. All of Beneficial's witnesses, with the exception of four witnesses that reside out of state, are located in Utah. These witnesses include, without limitation, Beneficial's President, Beneficial's manufacturer, Equity Labs, Beneficial's fulfillment company, Ageless Enterprises (that handled all warehouse returns from CVS) Beneficial's transfer agent that can attest to the loss of market value in Beneficial's equity, Beneficial's accountant who will provide testimony regarding Beneficial's financial losses and Darren Lopez, an independent contractor of Beneficial and witness to representations made by Defendants CMI and Ed Ellis at the meeting that took place in Salt Lake City.

19. If Beneficial is required to try its claims in a foreign jurisdiction, it will effectively be deprived of its day in court. Beneficial has been rendered insolvent by the actions of CVS, CMI and Mr. Ellis and will be unable to shoulder the financial burden of prosecuting

these claims in foreign jurisdictions.

DATED this 27th day of June, 2005.

HARVEY L. CARMICHAEL
President, Beneficial Holdings, Inc.

SUBSCRIBED AND SWORN TO before me this 27th day of June, 2005.

Susan R. Oldroyd
NOTARY PUBLIC

My commission expires:
8/16/05

NOTARY PUBLIC
SUSAN R OLDROYD
3995 SOUTH 700 EAST STE #400
SALT LAKE CITY, UT 84107
MY COMMISSION EXPIRES
AUGUST 16, 2005
STATE OF UTAH