UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS PHARMACY, INC.<br><br>Plaintiff,<br><br>vs.<br><br>BENEFICIAL HOLDINGS, INC.<br>BENEFICIAL HEALTH SYSTEMS, INC.<br>BENEFICIAL NUTRACEUTICALS, INC.<br>INTEGRATED BIOPHARMA, INC.<br>And CONTEMPORARY MARKETING, INC.,<br>Defendants. | ) | **ANSWER & COUNTERCLAIM**<br><br>Case No: CA 05 171 T |
| BENEFICAL HOLDINGS, INC. dba<br>BENEFICIAL HEALTH SYSTEMS,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>CVS PHARMACY, INC.,<br>INC.<br><br>Counterclaim Defendant. | ) | |

**ANSWER OF BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC. AND BENEFICIAL NUTRACEUTICALS, INC.**

Beneficial Holdings, Inc., Beneficial Health Systems, Inc., Beneficial Nutraceuticals, Inc. (hereinafter collectively "Beneficial"), by and through counsel of record, hereby Answers the allegations set forth in Plaintiff's Complaint and affirmatively alleges as follows:

1. Beneficial admits the allegations set forth in paragraphs 1-3, 5, 6, 14, 19-20 and 32 of Plaintiff's Complaint.

2. Beneficial denies the allegations set forth in paragraphs 7-12, 23, 25, 34, 36, 37, 40, 41, 44, 46-48, 50-55, 58-60 and 62 of Plaintiff's Complaint, except to admit in paragraph 7 that there was a contract between CVS and Beneficial.

3. Beneficial denies the allegations set forth in paragraphs 17 and 18, except to admit in paragraph 17 that Beneficial Holdings, Inc. is a publicly trading holding company doing business through Beneficial Health Systems, Inc., and except to admit in paragraph 18 that Beneficial sells, markets and advertises a diet and weight loss formula called WillpowerRX.

4. With respect to paragraphs 45, 49 and 56 of Plaintiff's Complaint, Beneficial realleges its previous responses and affirmative defenses as if fully set forth therein.

5. With respect to the allegations set forth in paragraph 4 of Plaintiff's Complaint, Beneficial admits that it is headquartered and transacts business within the State of Utah but denies that it is a Utah corporation inasmuch as it is incorporated in the State of Nevada.

6. With respect to the allegations set forth in paragraphs 13 and 43 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that it owes Defendant Integrated Biopharma for credit extended and loans advanced in connection with the manufacturing of the product required to fill Plaintiff's purchase orders and in

order to repay the same, Beneficial assigned a portion of its receivables due from CVS to Integrated Biopharma.

7. With respect to the allegations set forth in paragraph 15 of Plaintiff's Complaint, Beneficial denies the same, except to admit that there is a contract between Beneficial and CVS, and that Beneficial shipped one order of product to this judicial district and affirmatively alleges that the remaining 91 orders of product supplied by Beneficial to CVS were sold in numerous other judicial districts throughout the country.

8. With respect to the allegations set forth in paragraph 21 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that CMI, through Ellis, discussed a number of potential payment options with Beneficial including 2%30 Net 31; that Beneficial specifically requested that Mr. Ellis obtain the Net 31 payment terms; and that Mr. Ellis agreed to use his best efforts to do so.

9. With respect to the allegations set forth in paragraph 22 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that it never agreed to payment terms of "pay on scan," would not have been able to fill the purchase orders under pay on scan payment terms, and asked Mr. Ellis to obtain Net 31 day payment terms on its behalf.

10. With respect to the allegations set forth in paragraph 24 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that there were numerous telephone calls between CMI and Beneficial wherein CMI represented that it was negotiating with CVS to obtain Net 31 day payment terms.

11. With respect to the allegations set forth in paragraph 26 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that Beneficial's President signed a letter dated June 10, 2004 that was authored by CMI and returned the signed letter to CMI—not CVS—after CMI reassured Beneficial that the letter was merely a tool in the process of negotiating more favorable payment terms.

12. With respect to the allegations set forth in paragraph 27 of Plaintiff's Complaint, Beneficial affirmatively alleges that the document speaks for itself.

13. With respect to the allegations set forth in paragraph 28 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that the document speaks for itself and that CVS failed to respond to the June 10 letter in any way and subsequently offered Beneficial payment terms of 2%30 Net 31 set forth in purchase orders that were submitted to Beneficial throughout the months of July-December, 2004.

14. With respect to the allegations set forth in paragraph 29 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that the document speaks for itself.

15. With respect to the allegations set forth in paragraph 30 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that the document speaks for itself.

16. With respect to the allegations set forth in paragraph 31 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that the document speaks for itself.

17. With respect to the allegations set forth in paragraph 33 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that the vast majority of all purchase orders received by Beneficial clearly state that the payment terms are 2%30 Net 31 and that none of the purchase orders received by Beneficial specify payment terms of "pay on scan."

18. With respect to the allegations set forth in paragraph 35 of Plaintiff's Complaint, Beneficial lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations and therefore denies the same and affirmatively alleges that CVS charged Beneficial for its advertising costs and deducted the same from the invoices that were actually paid by CVS.

19. With respect to the allegations set forth in paragraph 38 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that the only terms agreed upon by the parties were those contained in the purchase orders that were submitted to Beneficial by CVS and that Beneficial, in turn, accepted and filled.

20. With respect to the allegations set forth in paragraph 39 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that CVS did not discontinue Beneficial's product until after Beneficial commenced legal action against CVS following CVS's refusal to honor Beneficial's previous and numerous demands for payment. Beneficial further asserts that CVS experienced good sales volume of Beneficial's product to the extent that there were numerous "refill" orders placed for store locations that had sold out of Beneficial's product.

21. With respect to the allegations set forth in paragraph 42 of Plaintiff's Complaint, Beneficial denies that its demand for payment from CVS was "recent." Beneficial first began demanding payment from CVS in November, 2004 when Beneficial began to question whether CVS was going to honor the payment terms set forth in the purchase orders. Beneficial continued to demand payment and retained legal counsel to send a formal demand for payment in March, 2004. Thereafter, in April, 2004, Beneficial commenced legal action against CVS in the State of Utah by filing suit to collect its receivables and other damages caused by CVS's failure to pay for the product it had received.

22. With respect to the allegations set forth in paragraph 57 of Plaintiff's Complaint, Beneficial denies the same and affirmatively asserts that the document speaks for itself. Additionally, Beneficial alleges that its ability to aggressively market and advertise its product was thwarted by CVS's refusal to honor its payment obligations and pay for the huge amount of product it ordered and received according to the Net 31 day payment terms contained in the subject purchase orders.

23. With respect to the allegations set forth in paragraph 61 of Plaintiff's Complaint, Beneficial denies the same and affirmatively alleges that even though Beneficial's product was made available to other retailers by December, 2004, Beneficial's ability to manufacture and sell product to those retailers was thwarted by CVS's refusal to honor its payment obligations and pay for the product it ordered and received, thereby leaving Beneficial undercapitalized and in financial ruin.

24. Beneficial denies each and every allegation not specifically admitted herein, including the allegations and requests for relief in the Prayer For Relief.

**FIRST DEFENSE**

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**SECOND DEFENSE**

There was no mutual mistake requiring that the contract between CVS and Beneficial be reformed.

**THIRD DEFENSE**

Plaintiff's losses and/or damages, if any, are the fault of third parties over whom Beneficial had no authority or control.

**FOURTH DEFENSE**

Plaintiff engaged in a course of conduct completely contrary to its assertion that the parties agreed to payment terms of "pay on scan" in that the few payments that Plaintiff did make were not made on a pay on scan basis. Rather, Plaintiff paid specific invoices. Additionally, Plaintiff charged Beneficial for advertising based upon a percentage of the total amount of product ordered and received, not upon a percentage of product actually sold.

**FIFTH DEFENSE**

Plaintiff's claims are barred by the doctrine of unjust enrichment, as Plaintiff has been unjustly enriched through its receipt of product from Beneficial for which it has failed to pay.

**SIXTH DEFENSE**

Plaintiff's claims are barred by the equitable doctrine of quantum meruit.

**SEVENTH DEFENSE**

Plaintiff's claims are barred by the doctrine of unclean hands.

**EIGHTH DEFENSE**

Plaintiff's claims are barred by the equitable doctrines of waiver and estoppel.

**NINTH DEFENSE**
**(UCC)**

Under the UCC, the terms set forth in the purchase orders submitted by CVS and filled by Beneficial govern the relationship between the parties.

**TENTH DEFENSE**
**(UCC)**

The purchase orders submitted in this matter constitute "offers" and Beneficial's filling of the purchase orders constitute "acceptances" thereby forming binding contracts between the parties.

**ELEVENTH DEFENSE**

Plaintiff is required to pay Beneficial for the product it has received according to the payment terms specified in the purchase orders.

**TWELFTH DEFENSE**

The terms set forth in the purchase orders submitted by CVS to Beneficial supersede any purported prior agreements between the parties.

**THIRTEENTH DEFENSE**

The letter dated June 10, 2004 constitutes a proposal that was never accepted and/or responded to in any fashion by CVS and was subsequently superseded and/or nullified by the terms offered by CVS in the purchase orders it submitted to Beneficial for fulfillment.

**FOURTEENTH DEFENSE**

Plaintiff's claims against Beneficial are barred by the doctrine of impossibility in that Beneficial would not have been able to accept and/or fill Plaintiff's purchase orders in the absence of the 2% 30 Net 31 day payment terms contained therein, because Beneficial would not have been able to obtain the financing and credit necessary to fill the subject orders in the absence of the same.

WHEREFORE, having fully answered the allegations set forth in Plaintiff's Complaint, Beneficial respectfully requests that this Court find that Plaintiff has no cause of action against Beneficial, that the Complaint should be dismissed and that Plaintiff should take nothing thereby and Beneficial be awarded such relief as the Court deems just and proper, including costs and attorneys' fees.

Respectfully submitted,

David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607

Jacquelynn D. Carmichael
EISENBERG, GILCHRIST & MORTON
900 Parkside Tower
215 South State Street
Salt Lake City, Utah 84111
Telephone: (801) 366-9100

*Attorneys for Defendants/Counterclaimants*
*Beneficial Holdings, Inc.*
*Beneficial Health Systems, Inc. and*
*Beneficial Nutraceuticals, Inc.*

**JURY TRIAL DEMANDED**

Beneficial, by and through counsel, hereby requests a trial by jury in the above-captioned matter.

**COUNTERCLAIM OF BENEFICIAL HOLDINGS, INC.**
**DBA BENEFICIAL HEALTH SYSTEMS AGAINST CVS**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Beneficial counterclaims against CVS and for causes of action alleges as follows:

**FACTUAL BACKGROUND**

1. CVS is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business located at 1 CVS Drive, Woonsocket, Rhode Island.

2. Beneficial Holdings, Inc. dba Beneficial Health Systems (hereinafter "Beneficial") is a Nevada corporation and, at all times relevant hereto, was headquartered

and maintained offices in Salt Lake City, State of Utah and was actively engaged in the transaction of business in Salt Lake City, State of Utah.

3. Subject matter jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

5. Contemporary Marketing, Inc. (hereinafter "CMI") through its agent and/or employee Ed Ellis, negotiated the placement of Beneficial's product, WillpowerRX™, for retail sale with CVS Pharmacy, Inc.

6. At all times relevant hereto, Mr. Ellis was acting within the scope and course of his employment with CMI and with the authority and approval of CMI.

7. Pursuant to those negotiations, Mr. Ellis suggested a number of possible options to Beneficial for the payment terms that would govern the sale of Beneficial's product to CVS, including "pay on scan" and "2% 30, net 31."

8. During these negotiations, Beneficial indicated to Mr. Ellis that it desired payment terms of 2% 30, Net 31 (hereinafter "Net 31").

9. Mr. Ellis indicated that he would use his best efforts to obtain the desired payment terms of Net 31 on behalf of Beneficial.

10. Thereafter, CMI drafted a letter to CVS and instructed Beneficial to sign the letter and return it to CMI.

11. The letter was a proposal to CVS that included payment terms of "pay on scan."

12. When Beneficial questioned CMI about the payment terms set forth in the letter, CMI explained that the letter was merely a starting point and as Beneficial's broker, CMI was going to use the letter as a tool in the negotiation process with CVS to achieve the more favorable payment terms of Net 31.

13. With this explanation, Beneficial agreed to execute the letter drafted by CMI and return it to CMI in compliance with CMI's request that it do so.

14. The letter was dated June 10, 2004.

15. Beneficial did not receive a response from CVS regarding the letter or any of the terms proposed therein.

16. Thereafter, however, Beneficial received CVS's first purchase orders. The purchase orders reflected payment terms of 2% 30 Net 31. True and accurate copies of a sampling of CVS's purchase orders are attached hereto as Exhibit A and incorporated herein by this reference.

17. In addition to receiving the CVS purchase orders with payment terms of Net 31, Beneficial also received confirmation from Mr. Ellis regarding his negotiation of Net 31 payment terms with CVS. Specifically, Mr. Ellis traveled to Salt Lake City to meet with Beneficial regarding the CVS retail account.

18. In addition to Beneficial's President, the meeting was attended by a representative of Beneficial's manufacturer and one of Beneficial's private investors, both of whom attended the meeting for the express purpose of discussing the payment terms that would govern the relationship between Beneficial and CVS.

19. At the meeting in Salt Lake City, Mr. Ellis represented that he had been able to obtain payment terms of Net 31 on behalf of Beneficial from CVS.

20. Mr. Ellis made this representation to all in attendance at the meeting held in Salt Lake City, including Beneficial's President, as well as a representative of Beneficial's manufacturer and one of Beneficial's private investors.

21. Mr. Ellis even boasted about his ability to obtain the Net 31 payment terms, attributing his success in this regard to the fact that he had "a friend" at CVS.

22. Mr. Ellis's representations were confirmed by the purchase orders received by Beneficial from CVS, which orders also reflected the very terms of 2%30 Net 31 as specified by Mr. Ellis.

23. Mr. Ellis's representations regarding the payment terms he negotiated with CVS are further confirmed by the "CVS Vendor Information Form" created by CMI on behalf of Beneficial and maintained by CMI, which form verifies that the payment terms governing the relationship between Beneficial and CVS are Net 31. A true and accurate copy of CMI's "CVS Vendor Information Form" prepared by CMI regarding Beneficial's account, is attached hereto as Exhibit B and incorporated herein by this reference.

24. Based upon the specific payment terms identified in the CVS purchase orders, as well as Mr. Ellis's representations confirming the same, Beneficial received a factor loan from its manufacturer.

25. Additionally, based upon the payment terms identified in the CVS purchase orders, as well as Mr. Ellis's representations confirming the same, Beneficial received funding from private investors.

26. As a direct result of the Net 31 day payment terms, Beneficial obligated itself to repay the loans it received from its manufacturer and investors upon receipt of its first Net 31 day payment from CVS which was due on or about the first week of September, 2004.

27. Beneficial relied upon the payment terms contained in the CVS purchase orders, as well as Mr. Ellis's representations confirming the same, when it obtained the subject loans from its manufacturer and private investors.

28. Beneficial's manufacturer similarly relied upon the payment terms contained in the CVS purchase orders, as well as Mr. Ellis's representations confirming the same, when it agreed to advance funds to Beneficial and to manufacture product for Beneficial on terms.

29. Beneficial's private investor also relied upon the payment terms contained in the CVS purchase orders, as well as Mr. Ellis's representations confirming the same, when he agreed to advance funds to Beneficial.

30. The loans referenced herein were made on condition that they be repaid immediately following Beneficial's receipt of its first net 31 day payment from CVS.

31. If payment terms of Net 31 had not been obtained, Beneficial could not have accepted the CVS purchase orders because Beneficial could not have manufactured enough product to fill the orders without the credit terms and loans obtained as previously referenced herein.

32. Following the receipt of CVS's initial purchase orders, and prior to the time scheduled for CVS's first Net 31 day payment to Beneficial, CVS submitted numerous additional purchase orders to Beneficial.

33. Each of the additional purchase orders submitted by CVS also contained the identical payment terms of Net 31 days.

34. In reliance on the payment terms set forth in the purchase orders, Beneficial continued to accept CVS's orders, and Beneficial's manufacturer continued to fill the orders.

35. When it came time for Beneficial to receive its first payment from CVS according to the payment terms of Net 31, no payment was forthcoming.

36. Beneficial contacted its broker, co-defendant CMI, and inquired as to when the payment would be forthcoming.

37. CMI indicated that the first payment would be received on or about October 23rd, 2004, secondary to the lapse in time required to deliver product from the district warehouses to the individual retail stores, as well as the time required to enter and process new accounts within the vast CVS accounts payable system.

38. Relying once again upon the representations made by CMI, Beneficial continued to fill purchase orders it received from CVS, including refill orders from several CVS locations, subsequent to the date CVS was to make its first Net 31 day payment.

39. Sometime later, while still awaiting receipt of the first payment from CVS, agents for Beneficial's manufacturer, as well as for Beneficial's private investor,

contacted the accounts payable department of CVS directly and were told that it was the understanding of that department that CVS's payment obligations to Beneficial were "pay-on-scan."

40. When this information was reported to Beneficial, Beneficial assumed that CVS's accounting department was not aware of the terms contained in the CVS purchase orders and that the misunderstanding could be remedied.

41. To the contrary, when Beneficial contacted CMI for assistance in obtaining proper payment from CVS, CMI indicated that the payment terms were not going to be Net 31 after all and would, in fact, be subject to a "pay on scan" arrangement.

42. Following this information, Beneficial, as well as its manufacturer and private investor have all made demands of CVS to pay according to the terms agreed upon and contained in the purchase orders.

43. CVS has refused to honor the payment terms set forth in its purchase orders or otherwise pay for the product it has ordered and received.

44. To date, Beneficial has filled approximately 92 purchase orders for CVS, totaling approximately $1,154,147.10 in receivables due and owing from CVS.

45. To date, CVS has made payments to Beneficial in the approximate amount of $ 82,280.12.

46. As a result of Defendant CVS's failure to pay Beneficial's invoices according to the terms set forth in the numerous purchase orders that have been filled by Beneficial, as well as its breach of the implied covenant of good faith and fair dealing, Beneficial has been rendered insolvent.

47. As an additional proximate result of the acts and/or omissions of CVS, Beneficial has been damaged in numerous respects, including, without limitation:

a. Beneficial's business relationships have been damaged as Beneficial has been unable to repay its manufacturer and other creditors;

b. Beneficial has been unable to advertise its product to the extent necessary to achieve market awareness and promote the sale of its product;

c. Beneficial has been unable to fill orders for its product;

d. Beneficial's reputation has been damaged;

e. Beneficial's prospective economic relations have been damaged;

f. Beneficial's contractual relations have been damaged;

g. Beneficial has lost sales and retail accounts;

h. Beneficial has lost the celebrity sponsorship of its products;

i. Beneficial's stock has dropped from 35 cents per share to 4 cents per share; and

j. Beneficial has been rendered insolvent.

**FIRST CAUSE OF ACTION**
**(Declaratory Relief/Judgment)**

48. The information contained in paragraphs 1-47 is realleged as if fully set forth herein.

49. The purchase orders governing the relationship between Beneficial and CVS provide for payment terms of 2% 30 net 31.

50. The purchase orders were prepared by CVS and provided to Beneficial for acceptance or rejection.

51. Beneficial accepted the subject purchase orders and filled the same according to the terms set forth in the purchase orders.

52. Beneficial did not attempt to alter, modify or amend the terms set forth in the purchase orders in any way.

53. Beneficial filled approximately 92 purchase orders for CVS and shipped product to CVS according to the terms set forth in the purchase orders.

54. CVS has failed to pay for the product it has received according to the terms contained in the purchase orders.

WHEREFORE, Beneficial prays for Declaratory Relief against CVS under its First Cause of Action as set forth below.

**SECOND CAUSE OF ACTION**
**(Breach of Contract)**

55. The information set forth in paragraphs 1-54 is realleged as if fully set forth herein.

56. Beneficial and CVS shared a contractual relationship. The purchase orders submitted by CVS to Beneficial were "offers" and Beneficial's "filling" of the purchase orders were "acceptances" of CVS's offers.

57. CVS breached its contracts with Beneficial when it failed to pay Beneficial's invoices on a Net 31 day basis.

58. Beneficial has sustained significant and substantial damages as a result of CVS's breach of contract.

WHEREFORE, Beneficial prays for judgment against CVS under Beneficial's Second Cause of Action as set forth below.

**THIRD CAUSE OF ACTION**
**(Quantum Meruit—Unjust Enrichment)**

59. The information set forth in paragraphs 1-58 are realleged as if fully set forth herein.

60. Beneficial has provided product to CVS for which it has not been paid.

61. A benefit has been conferred on CVS, for which it has not paid and by which it has been unjustly enriched at Beneficial's expense.

WHEREFORE, Beneficial prays for judgment against CVS under Beneficial's Third Cause of Action as set forth below.

**FOURTH CAUSE OF ACTION**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

62. The information set forth in paragraphs 1-61 is realleged as if fully set forth herein.

63. CVS breached the implied covenant of good faith and fair dealing inherent in every written contract by failing to pay for the purchase orders filled by Beneficial according to the payment terms specified in the purchase orders of 2% 30 Net 31.

64. As a direct consequence of CVS's bad faith, Beneficial has been injured in an amount to be proven at trial.

WHEREFORE, Beneficial prays for judgment against CVS under Beneficial's Fourth Cause of Action as set forth below.

## FIFTH CAUSE OF ACTION
## (Intentional Interference with Contractual Relations)

65. The information set forth in paragraphs 1-64 is realleged as if fully set forth herein.

66. CVS intentionally interfered with Beneficial's contractual relations with its manufacturer, as well as with other retail vendors and private investors, when CVS failed to honor the payment terms contained in the purchase orders and allowed Beneficial to act in reliance on those terms in entering into loan agreements, filling CVS's purchase orders and incurring debts and obligations that it would not otherwise have entered into and incurred in the absence of the subject payment terms.

67. CVS's interference was for an improper purpose and/or by an improper means.

68. CVS's interference resulted in significant and substantial injury to Beneficial, including without limitation, causing Beneficial to incur debts and obligations that it would not otherwise have incurred; causing Beneficial to lose celebrity spokespersons; subjecting Beneficial to lawsuits for failure to pay said debts and obligations; jeopardizing Beneficial's contractual relationship with its manufacturer; jeopardizing Beneficial's prospective economic advantages; rendering Beneficial insolvent; causing Beneficial to lose sales and retail accounts; causing Beneficial to sustain significant economic damage as a result of being unable to advertise and market its products; causing Beneficial's stock value to decline from 35 cents per share to 4 cents per share; and causing Beneficial's business to fail.

WHEREFORE, Beneficial prays for judgment against CVS under its Fifth Cause of Action as follows:

**SIXTH CAUSE OF ACTION**
**(Intentional Interference with Prospective Economic Advantage)**

69. The information contained in paragraphs 1-68 is realleged as if fully set forth herein.

70. CVS intentionally interfered with Beneficial's prospective economic advantage when it failed to pay the subject purchase orders according to the payment terms contained therein and allowed Beneficial to act in reliance on those terms, in entering into loan agreements, filling CVS's purchase orders and incurring debts and obligations that it would not otherwise have entered into and incurred in the absence of the subject payment terms.

71. CVS's interference was for an improper purpose and/or by an improper means.

72. CVS's interference resulted in significant and substantial injury to Beneficial, including without limitation, causing Beneficial to incur debts and obligations that it would not otherwise have incurred; causing Beneficial to lose celebrity spokespersons; subjecting Beneficial to lawsuits for failure to pay said debts and obligations; jeopardizing Beneficial's contractual relationship with its manufacturer; jeopardizing Beneficial's prospective economic advantages; rendering Beneficial insolvent; causing Beneficial to lose sales and retail accounts; causing Beneficial to sustain significant economic damage as a result of being unable to advertise and market its products;

causing Beneficial's stock value to decline from 35 cents per share to 4 cents per share; and causing Beneficial's business to fail.

WHEREFORE, Beneficial prays for judgment against CVS under its SIXTH Cause of Action as set forth below.

**SEVENTH CAUSE OF ACTION**
**(Fraud/Misrepresentation)**

73. The information contained in paragraphs 1-72 is realleged as if fully set forth herein.

74. CVS made material misrepresentations to Beneficial that it would pay terms for Beneficial of 2%30 net 31.

75. In furtherance of the material misrepresentations made by CVS that the payment terms governing Beneficial's relationship with CVS were 2% 30 net 31, CVS sent purchase orders reflecting payment terms of 2% 30 Net 31.

76. CVS made these material misrepresentations to Beneficial knowing them to be false and/or with malicious, willful and/or reckless disregard of the rights of Beneficial.

77. CVS made the representations to Beneficial, its manufacturer and its investor for the purpose of inducing Beneficial to accept and fill purchase orders for CVS.

78. Beneficial reasonably relied on the representation made by CVS and, in ignorance of CVS's true intentions, acted in reliance thereon in (1) obtaining loans from its manufacturer; (2) obtaining payment terms with its manufacturer; (3) obtaining loans from private investors; (4) entering into contracts to repay said loans within a time frame that corresponded with the date Beneficial was to receive its first Net 31 day payment

from CVS and (5) expending large sums of capital in order to fill CVS's numerous purchase orders containing the very same 2% 30 Net 31 day payment terms.

79. Beneficial's reliance on the material misrepresentations made by CVS has been to Beneficial's significant and substantial detriment and damage, including causing Beneficial to incur debts and obligations that it would not otherwise have incurred; causing Beneficial to lose celebrity spokespersons; subjecting Beneficial to lawsuits for failure to pay said debts and obligations; jeopardizing Beneficial's contractual relationship with its manufacturer; jeopardizing Beneficial's prospective economic advantages; rendering Beneficial insolvent; causing Beneficial to lose sales and retail contracts; causing Beneficial to sustain significant economic damage as a result of being unable to advertise and market its products; causing Beneficial's stock value to decline from 35 cents per share to 4 cents per share and causing Beneficial's business to fail.

80. Accordingly, Beneficial is entitled to an award of compensatory damages against CVS and an award of punitive damages against CVS in an amount calculated to punish and deter.

WHEREFORE, Beneficial prays for judgment against CVS under its Seventh Cause of Action as set forth below.

## EIGHTH CAUSE OF ACTION
## (Negligent Misrepresentation)

81. The information contained in paragraphs 1-80 is realleged as if fully set forth herein.

82. CVS made material misrepresentations to Beneficial that it would pay terms for Beneficial of 2%30 net 31.

83. In furtherance of the material misrepresentations negligently made by CVS that the payment terms governing Beneficial's relationship with CVS were 2% 30 net 31, CVS sent purchase orders reflecting payment terms of 2% 30 Net 31.

84. CVS made the representations to Beneficial, its manufacturer and its investor for the purpose of inducing Beneficial to accept and fill purchase orders for CVS.

85. Beneficial reasonably relied on the negligent representation made by CVS and, in ignorance of CVS's true intentions, acted in reliance thereon in (1) obtaining loans from its manufacturer; (2) obtaining payment terms with its manufacturer; (3) obtaining loans from private investors; (4) entering into contracts to repay said loans within a time frame that corresponded with the date Beneficial was to receive its first Net 31 day payment from CVS and (5) expending large sums of capital in order to fill CVS's numerous purchase orders containing the very same 2% 30 Net 31 day payment terms.

86. Beneficial's reliance on the material misrepresentations negligently made by CVS has been to Beneficial's significant and substantial detriment and damage, including causing Beneficial to incur debts and obligations that it would not otherwise have incurred; causing Beneficial to lose celebrity spokespersons; subjecting Beneficial to lawsuits for failure to pay said debts and obligations; jeopardizing Beneficial's contractual relationship with its manufacturer; jeopardizing Beneficial's prospective economic advantages; rendering Beneficial insolvent; causing Beneficial to lose sales and retail contracts; causing Beneficial to sustain significant economic damage as a result of being unable to advertise and market its products; causing Beneficial's stock value to

decline from 35 cents per share to 4 cents per share and causing Beneficial's business to fail.

87. Accordingly, Beneficial is entitled to an award of compensatory damages against CVS and an award of punitive damages against CVS in an amount calculated to punish and deter.

WHEREFORE, Beneficial prays for judgment against CVS under its Eighth Cause of Action as set forth below.

**NINTH CAUSE OF ACTION**
**(Book Account)**

88. The information contained in paragraphs 1-87 is realleged as if fully set forth herein.

89. CVS owes Beneficial on account for its failure to pay Beneficial the pay terms of 2%30 net 31 for the product it purchased.

90. Accordingly, Beneficial is entitled to an award of compensatory damages against CVS on account of the product it received and for which it has not paid.

WHEREFORE, Beneficial prays for judgment against CVS under its Ninth Cause of Action as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Beneficial seeks relief as follows:

1. For an Order from the Court declaring that CVS is bound to pay Beneficial based on payment terms of 2%30 Net 31;

2. For an Order from the Court directing CVS to pay Beneficial for all product that has been shipped and received by CVS according to the payment terms of 2%30 Net

31, with interest assessed at the maximum legal rate from the date the payment was originally due under the terms of the purchase orders to the date payment is made; and

3. For an award of actual and consequential damages, including but not limited to lost profits, punitive damages in an amount calculated to punish and deter CVS, and pre and post-judgment interest at the maximum rate allowed by law, costs and attorneys' fees;

4. For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Beneficial, by and through counsel, hereby requests a trial by jury in the above-captioned matter.

DATED this 16th day of November, 2005.

Respectfully submitted,

David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607

Jacquelynn D. Carmichael
EISENBERG, GILCHRIST & MORTON
900 Parkside Tower
215 South State Street
Salt Lake City, Utah 84111
Telephone: (801) 366-9100

*Attorneys for Defendants/Counterclaimants*
*Beneficial Holdings, Inc.*
*Beneficial Health Systems, Inc. and*
*Beneficial Nutraceuticals, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November , 2005, a copy of the foregoing was hand-delivered to:

Todd M. Reed, Esq.
Edwards & Angell LLP
2800 Financial Plaza
Providence, R.I. 02903

and a copy of the foregoing was mailed, U.S. first class postage, to the following:

Nicholas Fortuna Esq.
Jesse A. Kaplan, Esq.
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, New York 10016

John P. Mullen, Esq.
Anderson & Karrenberg
50 W. Broadway, Suite 700
Salt Lake City, Utah 84101

Kenneth J. Fisch, Esq.
4200 West Peterson Avenue, Suite 140
Chicago, Illinois 60646

360256_1.doc