UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS, INC. Plaintiff, | : | |
| v. | : | C.A. No. 05-CV-171 T |
| BENEFICIAL HOLDINGS, INC., et al. Defendants | : | |

**BENEFICIAL HOLDINGS, INC'S OBJECTION TO THE MOTION TO DISMISS CROSS-CLAIM BY CROSS-CLAIM DEFENDANT CONTEMPORARY MARKETING, INC.**

Beneficial Holdings, Inc. d/b/a Defendant Beneficial Health Systems (hereinafter "Beneficial") hereby objects to Cross-claim Defendant Contemporary Marketing, Inc.'s motion to dismiss Beneficial's cross-claim.[1] The grounds for this objection are set forth in the accompanying memorandum of law.

Dated: January 13, 2006

Respectfully submitted,

David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607

*Attorneys for Beneficial Holdings, Inc. Beneficial Health Systems, Inc. and Beneficial Nutraceuticals, Inc.*

[1] By stipulation dated January 13, 2006, Third-Party Defendant Edwin Ellis has withdrawn without prejudice his motion to dismiss the Third Party Complaint against him, and Beneficial has in turn withdrawn and/or dismissed its Third Party Complaint without prejudice.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of January, 2006, a copy of the foregoing was hand-delivered to:

Todd M. Reed, Esq.
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, R.I. 02903

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
127 Dorrance Street, 4th Floor
Providence, RI 02903

and a copy of the foregoing was mailed, U.S. first class postage, to the following:

Nicholas Fortuna Esq.
Jesse A. Kaplan, Esq.
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, New York 10016

365269_1.doc

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS, INC.<br>Plaintiff,<br><br>v.<br><br>BENEFICIAL HOLDINGS, INC., et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 05-CV-171 T |

**BENEFICIAL HOLDINGS, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO THE MOTION TO DISMISS CROSS-CLAIM BY CROSS-CLAIM DEFENDANT CONTEMPORARY MARKETING, INC.**

Defendant Beneficial Holdings, Inc. d/b/a Defendant Beneficial Health Systems (hereinafter "Beneficial") submits this memorandum of law support of its objection to Cross-claim Defendant Contemporary Marketing, Inc.'s ("CMI") motion to dismiss Beneficial's cross-claim.[1]

## INTRODUCTION

CMI, an agent for Beneficial, has moved to dismiss co-defendant Beneficial's cross-claim on the basis of a forum selection clause contained in the Sale Representative Agreement between Beneficial and CMI. However, many courts have held that a forum selection clause should not be enforced where, as in this case, the co-defendant (Beneficial) asserting a cross-claim did not choose the forum and the allegations of the cross-claim are entwined with the allegations brought by the plaintiff (CVS Pharmacy, Inc.) against the defendants, there is a risk of conflicting judgments in two courts or the litigation of the cross-claims elsewhere would be a

[1] By stipulation dated January 13, 2006, Third-Party Defendant Edwin Ellis has withdrawn without prejudice his motion to dismiss the Third Party Complaint against him, and Beneficial has in turn withdrawn and/or dismissed its Third Party Complaint without prejudice.

gross waste of the parties' and the courts' resources. As discussed more fully below, it was Plaintiff CVS, not Beneficial, that chose Rhode Island to bring this lawsuit, and CMI does not claim that the forum selection clause applies to the originating lawsuit. The allegations contained in the cross-claim are entwined with the allegations of CVS's complaint against the defendants and Beneficial's counterclaims. Moreover, it would be a gross waste of the parties' and the courts' resources, as well as a significant risk of inconsistent rulings in two separate courts, if Beneficial were required to litigate its ancillary cross-claim against CMI in another state while simultaneously defending against CVS's claims and prosecuting its own counterclaims in this forum. Accordingly, CMI's enforcement of the forum selection clause would be unreasonable and unjust and, therefore, the motion to dismiss should be denied.

## **PROCEDURAL HISTORY**

The procedural history of this case is critical to the legal issues raised by the pending motion to dismiss. This case began originally in the state court of Utah on April 12, 2005, when Beneficial filed suit against CVS, CMI and CMI's Vice President, Edwin Ellis, claiming *inter alia* that CVS had failed to pay for over $1 million worth of Beneficial's product, WillpowerRX™, based on the explicit pricing set forth in the purchase orders, and that CMI and Ellis, agents on the sale for Beneficial, had engaged in fraud/misrepresentation and other misconduct and breached their fiduciary duties in representing pricing terms that CVS later reneged on and later contradicting the explicit pricing contained in the purchase orders. Beneficial claimed that CVS was liable to pay for all the product it purchased at 2% 30, Net 31

(hereinafter "Net 31"),[2] while CVS asserts that it only need pay for product that it actually sells in its stores ("pay on scan").

Almost immediately, on April 25, 2005, CVS filed its own lawsuit in this Court against Beneficial and a related entity (Beneficial Nutraceuticals, Inc.), CMI and the product manufacturer, Integrated Biopharma, Inc. CVS principally sought a declaration that it did not owe anything to Beneficial or anyone else and reformation of the purchase orders requiring payment to Beneficial based on Net 31. In addition, in Utah, CVS, CMI and Ellis removed the Utah state court lawsuit to the United States District Court for the District of Utah. CVS then moved to dismiss the Utah lawsuit for lack of personal jurisdiction; CMI and Ellis moved to dismiss on the basis of the forum selection clause.

Here in Rhode Island, the Beneficial defendants moved to dismiss this lawsuit on the basis of the "first-filed" rule or in the alternative to transfer venue to the District of Utah. Because of this Court's ruling in *Cruz v. Hartford Casualty Ins. Co.*, C.A. No. 05-38S, 2005 WL 1231965 (D.R.I. 2005), that the court where the first lawsuit was filed should decide the applicability of the "first-filed" rule, CVS and Beneficial sought and received a stay of this Court's proceedings pending the outcome of the proceedings in Utah.

In Utah, the District Court did not address the "first-filed" rule but rather held that there was a lack of personal jurisdiction over CVS, and that CMI and Ellis should be dismissed based on the forum selection clause in the Sales Representative Agreement. In light of that development, and in order to reduce costs and obtain an expeditious resolution of its claims,

[2] 2% 30 Net 31 means that CVS must pay for all the product its purchases within 31 days but will receive a 2 % discount if it pays within 30 days or less.

Beneficial did not appeal that ruling. Rather, in this Court, Beneficial withdrew its pending motion to dismiss in this case, answered CVS's complaint and filed a counterclaim against CVS for declaratory relief, breach of contract, fraud and many of the same claims asserted in Utah. In addition, Beneficial, as a defendant, asserted a cross-claim against CMI as permitted by Fed. R. Civ. P. 13(g). Beneficial's cross-claim against CMI asserts, as in the Utah action, the same allegations supporting claims for fraud, breach of fiduciary duty, negligent misrepresentation and intentional interference with contract and prospective economic advantage.

CMI has moved to dismiss Beneficial's cross-claim, asserting that the forum selection clause in the Sales Representative Agreement applies to that discrete, ancillary claim. CMI does not claim that the forum selection clause applies to CVS's lawsuit (as CVS was not a party to the Sales Representative Agreement). Beneficial now opposes these motions to dismiss for the reasons stated below.

## SUBSTANTIVE CLAIMS

The allegations contained in CVS's lawsuit and Beneficial's counterclaim against CVS and cross-claim against CMI are intertwined. The crux of this case is the failure of CVS to pay for over $1 million worth of product it purchased, and the failure of Beneficial's agent, CMI, to stand by its oral and written representations that the payment terms negotiated with CVS were Net 31, not "pay on scan."

Specifically, as spelled out in more detail in the pleadings on record,[3] Beneficial's agent, CMI and its Vice President Edwin Ellis, negotiated for CVS to purchase WillpowerRX™ from Beneficial on payment terms of Net 31. Originally, pursuant to those negotiations, Ellis had suggested a number of possible options to Beneficial for the payment terms that would govern the sale of Beneficial's product to CVS, including "pay on scan" and Net 31. During these negotiations, Beneficial indicated to Ellis that it desired payment terms of Net 31. Ellis indicated that he would use his best efforts to obtain the desired payment terms of Net 31 on behalf of Beneficial. Thereafter, Beneficial received CVS's first purchase orders. The purchase orders reflected payment terms of Net 31. In addition, Ellis traveled to Salt Lake City to meet with Beneficial and others regarding the CVS retail account and represented that he had been able to obtain payment terms of Net 31. Ellis even boasted about his ability to obtain the Net 31 payment terms, attributing his success to the fact that he had "a friend" at CVS.

Ellis's representations regarding the payment terms he negotiated with CVS were further confirmed by CMI's "CVS Vendor Information Form," which verifies that the payment terms governing the relationship between Beneficial and CVS are Net 31. A true and accurate copy of CMI's "CVS Vendor Information Form" regarding Beneficial's account is attached as Exhibit B to the Cross-Claim.

Based on the explicit Net 31 payment terms in the CVS purchase orders and Ellis' representations, Beneficial received a factor loan from its manufacturer and additional funding from private investors. As a direct result of the Net 31 payment terms, Beneficial obligated itself

---

[3] The factual allegations in the text are taken from Beneficial's counterclaim and cross-claim. Answer and Counterclaim (Nov. 16, 2005) at ¶¶ 1-47; Cross-Claim (Nov. 16, 2005) at ¶¶ 1-49.

to repay the loans it received from its manufacturer and investors upon receipt of its first Net 31 day payment from CVS which was due on or about the first week of September, 2004. Indeed, if payment terms of Net 31 had not been obtained, Beneficial could not have accepted the CVS purchase orders because Beneficial could not have manufactured enough product to fill the orders without the loans obtained as discussed above.

Following the receipt of CVS's *initial* purchase orders, and prior to the time scheduled for CVS's first Net 31 day payment to Beneficial, CVS submitted numerous additional purchase orders to Beneficial. Each of the additional purchase orders submitted by CVS also contained the identical payment terms of Net 31. In reliance on the payment terms set forth in the purchase orders, Beneficial continued to accept CVS's orders, and Beneficial's manufacturer continued to fill the orders. When it came time for Beneficial to receive its first payment from CVS according to the payment terms of Net 31, no payment was forthcoming.

Beneficial contacted CMI/Ellis and inquired as to when the payment would be forthcoming. CMI and Ellis indicated that the first payment would be received on or about October 23rd, 2004, secondary to the lapse in time required to deliver product from the district warehouses to the individual retail stores, as well as the time required to enter and process new accounts within the vast CVS accounts payable system. Relying once again upon these representations, Beneficial continued to fill purchase orders it received from CVS, including refill orders from several CVS locations, subsequent to the date CVS was to make its first Net 31 day payment. Some time later, however, while still awaiting receipt of the first payment, Beneficial's manufacturer and private investor contacted the accounts payable department of CVS directly and were told that CVS's payment obligations to Beneficial were "pay on scan."

When this information was reported to Beneficial, Beneficial assumed that CVS's accounting department was not aware of the terms contained in the CVS purchase orders and that the misunderstanding could be remedied. To the contrary, when Beneficial contacted CMI and Ellis for assistance in obtaining proper payment from CVS, they indicated that the payment terms were not going to be Net 31 after all and would, in fact, be subject to a "pay on scan" arrangement. Following this information, Beneficial, as well as its manufacturer and private investor, have all made demands of CVS to pay according to the terms agreed upon and contained in the purchase orders. Each of these demands has been rejected.

Beneficial alleges in the cross-claim that CMI and its Vice President Ellis have been dishonest about the representations made to Beneficial. Instead of supporting Beneficial and acting as Beneficial's agent to require CVS to honor the terms of its purchase orders, CMI and Ellis have betrayed Beneficial and sought to interfere with Beneficial's Net 31 contract with CVS. Similarly, CVS has refused to honor the payment terms set forth in its purchase orders or otherwise pay for the product it has ordered and received. CVS has submitted over $1.3 million of purchase orders and, after a meager payment, owes in excess of $1.15 million.

As a result of CMI's and Ellis' fraudulent and/or negligent misrepresentations, breach of its fiduciary duties to Beneficial and other misconduct, along with CVS's failure to honor its contractual obligations, Beneficial has suffered extraordinary damages including, without limitation, 1) loss of income from the filling of the purchase orders: 2) damage to Beneficial's business relationships, as Beneficial has been unable to repay its manufacturers and other creditors; 3) damage to Beneficial's prospective economic relations, as Beneficial has lost sales (as a result of being unable to advertise its product to the extent necessary to achieve market

awareness and promote the sale of its product), been unable to fill orders for its product, lost its celebrity spokesperson, and lost other retail accounts; 4) damage to Beneficial's reputation; 5) damage to Beneficial's contractual relations with its manufacturers, lenders, retailers, spokespersons, vendors and other business relationships; 6) loss of over $7 million dollars in market value and as a going concern; and 7) damage from its elimination from the retail market.

## ARGUMENT

CMI does not dispute that the forum selection clause in the Sales Representative Agreement is inapplicable to CVS's originating lawsuit or that Beneficial did not choose Rhode Island as the forum for this case. Nonetheless, CMI claims that the forum selection clause in the Sales Representative Agreement requires dismissal of a small, discrete part of the case – an ancillary cross-claim brought by a reluctant defendant sued in this forum.

While this Court has often enforced forum selection clauses,[4] neither the First Circuit nor this Court has ever addressed a forum selection clause in the present context – directed against a cross-claim that is intertwined with the issues raised in the main lawsuit. While this Court's previous cases provide a general framework on the legal issues at issue here, the applicability of a forum selection clause to a cross-claim, as far as Beneficial is aware after diligent research, is *sui generic* in this Circuit.

---

[4] *See, e.g., Russo v. Ballard Medical Products,* 352 F. Supp.2d 177, 180-82 (D.R..I. 2005) (addressing a forum selection clause in the context of the claims between plaintiff and defendant); *Microfibres v. McDevitt-Askew*, 20 F. Supp.2d 316, 323-26 (D.R.I. 1998) (same); *Pascalides v. Irwin Yacht Sales North, Inc.*, 118 F.R.D. 298, 302-03 (D.R.I. 1988) (applying a forum selection clause to a third party complaint when the third party claim is a contingent one, seeking indemnity or contribution from the third party in the event liability is imposed on the defendant).

However, courts in other jurisdictions have ruled that a forum selection clause should not be enforced where, as in this case, the allegations of the cross-claim are entwined with the allegations between the plaintiff and the defendants, there is a risk of conflicting judgments in two courts or litigation of the ancillary claim would be a gross waste of the parties' and the courts' resources. *Mylan Pharmaceuticals Inc. v. American Safety Razor Co.*, 265 F. Supp.2d 635, 638-40 (N.D. W. Va. 2002); *Taylor Investment Corp. v. Weil*, 169 F. Supp.2d 1046, 1061 (D. Minn. 2001); *Bankers Trust Co. v. Worldwide Transp. Services, Inc.*, 537 F. Supp. 1101, 1112 (E.D. Ark. 1982); *Personalized Marketing Service, Inc. v. Stotler & Co.*, 447 N.W.2d 447, 451-53 (Minn. App. 1989).[5] In these circumstances, courts have held that it would be unreasonable and unjust to enforce the forum selection clause. *LaSala v. E*Trade Securities LLC*, No. 05 Civ. 5869 (SAS), 2005 WL 2848853, slip op. at *6 (S.D.N.Y. 2005); *Mylan Pharmaceuticals*, 265 F. Supp.2d at 639-40; *Taylor Investment*, 169 F. Supp.2d at 1061; *Bankers Trust*, 537 F. Supp. at 1112; *Personalized Marketing Service*, 447 N.W.2d at 451-53. As one court has summarized,

> Forum selection clauses can be unreasonable where there is a possibility of prejudice to the parties through conflicting judgments by the concurrent litigation in two courts, or when forcing them to refile subordinate claims in a separate court would be a gross waste of the parties' and the court's resources.

*Mylan Pharmaceuticals*, 265 F. Supp.2d at 638. The standard of "unreasonableness" is consistent with that applied by this Court in assessing whether to enforce a forum selection clause. *See, e.g., Russo v. Ballard Medical Products*, 352 F. Supp.2d 177, 180-81 (D.R.I. 2005).

---

[5] *See LaSala v. E*Trade Securities LLC*, No. 05 Civ. 5869 (SAS), 2005 WL 2848853, slip op. at *6 (S.D.N.Y. 2005) (refusing to dismiss action on the basis of forum selection clause because it would be an egregious waste of judicial resources due to pendency of related actions with underlying facts common to all the proceedings); *Pegasus Transp., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574, 576-77 (N.D. Ill. 1993) (refusing to remand claims subject to forum selection clause while retaining pre-forum selection clause claims because it would be a waste of judicial resources).

The case of *Bankers Trust Co. v. Worldwide Transp. Services, Inc.*, 537 F. Supp. 1101 (E.D. Ark. 1982), is directly on point. There, a bank brought a lawsuit against CONASUPO, an organism of the Federal Republic of Mexico, and its agent, World Wide Transportation Services, Inc. ("Worldwide"), seeking restitution for some $300,000 in damages allegedly resulting from the bank's error in transferring funds from CONASUPO's bank account to that of Worldwide. After defendant Worldwide asserted a cross-claim against co-defendant CONASUPO, the latter moved to dismiss the ancillary claim on the basis of a forum selection clause in the agency agreement between them designating Mexico as the forum for any disputes. The federal district court refused to enforce the forum selection clause against count I of the cross-claim, ruling that the allegations in that claim – concerning the scope of the agency relationship – were intertwined with the issues raised in the bank's complaint. *Id.* at 1112. The cross-claim was appropriately litigated with the main claim, the court concluded, because it arose from the same transaction that was the basis of the main proceedings and/or was an integral part of the main matter, and that the ancillary matter needed to be settled to protect the integrity of the main proceeding and/or to insure that the disposition of that proceeding was not frustrated. *Id.* The court added that this conclusion was necessary to effectuate the main purpose of ancillary jurisdiction of ensuring that a judgment of a court is given effect and to serve the needs of judicial economy: "disputes related to a single dispute should be resolved in the original forum" so that "complete justice is done." *Id.*[6]

---

[6] The court applied the forum selection clause to counts II and III of the cross-claim because they had nothing to do with the main claim but rather simply sought payment for services rendered. *Id.* at 1103, 1112.

Two other cases are similarly on point, illustrating these principles. In *Taylor Investment Corp. v. Weil*, 169 F. Supp.2d 1046 (D. Minn. 2001), a business computer system buyer sued the system provider and its president and a software producer, asserting claims for fraud, rescission and restitution, breach of contract, breach of warranties and unjust enrichment resulting from defective computer equipment. The defendants, the system provider and its president, brought cross-claims against their co-defendant, the software producer, for breach of contract, fraud, contractual indemnity and equitable contribution and indemnity, and the software producer moved to dismiss on the basis of a forum selection clause in the co-defendants' agreement requiring venue in Texas. The federal district court ruled that enforcement of the forum selection clause against the cross-claim would be unreasonable and unjust. *Id.* at 1061. Like this Court, the Minnesota district court indicated it normally gave deference to the legitimate expectations of the parties that have agreed to contract in the area of forum selection. *Id.* Nonetheless, the court ruled that enforcement of the forum selection clause would be "unreasonable and has the potential to be unjust" because all the claims relating to the matter at hand were joined before the court, ultimate resolution of the case would dispose of all claims and forcing only a portion of the case to be litigated in Texas could be detrimental to the cross-claimants' interests. *Id.* The court held:

> Geac [the software producer] essentially requests that the Court dismiss a portion of the lawsuit and force Weil and CMAC [cross-claimants] to re-file those claims in Texas. Under these circumstances, that decision could result in either preclusion of Weil's and CMAC's claims in the Texas courts or in the potential for conflicting judgments. In addition, a decision requiring Weil and CMAC to re-file certain claims in Texas would be an inefficient use of judicial resources as well as unnecessary waste of the litigants' resources. *Ace Novelty Co. v. Vijuk Equipment, Inc.*, No. 90-C-3116, 1991 WL 150191, at *7 (N.D. Ill. July 31, 2001) (refusing to enforce a forum selection clause because of the potential for preclusion of one party's claims or conflicting judgments). Retaining jurisdiction

> over the cross-claims of Weil and CMAC will allow this Court to fully and finally resolve all claims stemming from the StarBuilder license agreement. Enforcement of the forum selection clause in this case would be both unreasonable and potentially unjust.

*Id.*

In *Mylan Pharmaceuticals Inc. v. American Safety Razor Co.*, 265 F. Supp.2d 635 (N.D. W. Va. 2002), a buyer that purchased pill bottle cotton balls brought a breach of contract action against the seller and seller's supplier, seeking damages for allegedly defective cotton that was unsuitable for pharmaceutical use. The seller and supplier asserted cross-claims against each other, and the seller moved to dismiss or transfer on the basis of the forum selection clause in an agreement between them establishing New York as the only venue for litigation. The federal district court found that enforcement of the forum selection clause would be unreasonable, because it would force the cross-claimants to refile subordinate claims in a separate court and thereby be a gross waste of the parties' and the court's resources. *Id.* at 639-40. Because there was no case pending in New York, the court concluded that dismissing the cross-claim and forcing the parties to refile in New York would not only increase their own costs but would force the New York federal court to expend its resources in handling the case. *Id.*

As in *Bankers Trust*, *Taylor Investment*, *Mylan Pharmaceuticals* and the other cases cited above, it would be unreasonable and unjust to enforce the forum selection clause in the CMI-Beneficial Sales Representative Agreement against the cross-claim and force Beneficial to file a separate lawsuit in Illinois. As discussed above, the allegations in the cross-claim are entwined with the allegations in CVS's complaint and Beneficial's counterclaim against CVS. Those allegations concern the negotiations and agreements that occurred between not only CVS and Beneficial, but by and between Beneficial, CVS and CMI/Ellis concerning the sale of over a

million dollars worth of WillpowerRX™ and the pricing for those products. The involvement of CMI/Ellis in those negotiations – and their associated testimony and participation in this lawsuit – is integral to the resolution of the legal and factual issues raised in the pleadings.[7]

Forcing Beneficial to refile these claims in Illinois would be unreasonable and unjust for several reasons. First, because the actions of CMI are at the heart of this dispute, litigation of CMI's role in two forums – here in Rhode Island and in Illinois – could result in inconsistent rulings or jury findings to the detriment of Beneficial. Beneficial would be required, in effect, to litigate its entire case against CVS in Illinois in order to prove liability against CMI, and thus the possibility that adverse findings or rulings could occur in Illinois to Beneficial's detriment in Rhode Island is very real.

Second, it would be a gross waste of Beneficial's resources to require it to file a separate lawsuit in Illinois to press its ancillary claims. There is no case pending in Illinois concerning these parties, and Beneficial would be forced to hire another set of lawyers to press a wholly separate lawsuit against CMI at great expense to Beneficial, which has been rendered insolvent as a result of the actions of CMI and CVS. Beneficial would need to call the same witnesses and introduce the same proof in Illinois as in Rhode Island, thereby enormously increasing the costs of litigating this dispute. In addition, this will force the Illinois courts to waste scarce judicial resources on a case that can be resolved in one proceeding here in Rhode Island.

In addition, it is worth noting that the State of Illinois, by the admission of CMI, lacks an overriding interest in the events at issue in the complaint. The crux of the dispute is that CVS,

---

[7] This is so even if CVS's claim against CMI is dismissed, because the allegations in the cross-claim are inextricably connected to the allegations in CVS's lawsuit against Beneficial and Beneficial's counterclaim against CVS.

based in Rhode Island, has failed and refused to pay for product purchased from Beneficial, a company based in Utah, based on explicit payment terms of Net 31, and that CMI has engaged in fraud and other misconduct in asserting that the terms are "pay on scan." The key player for CMI, Vice President Ellis, does not live or work in Illinois; he lives in Pittsburgh, Pennsylvania. Affidavit of Edwin Ellis (Dec. 6, 2005) at ¶7.[8] While it is true that CMI is located in Illinois, by CMI's own admission, there was, at best, a few telephone calls from Beneficial to CMI in Illinois and only one meeting there, all concerning merely the Sales Representative Agreement. Affidavit of Michael Okun (Dec. 6, 2005) at ¶¶ 9-10. The main activities at issue -- including the negotiations between CVS and Beneficial and its agent and the receipt and filling of the purchase orders for the WillpowerRX™ -- occurred elsewhere, primarily in Rhode Island and Utah. Affidavit of Harvey Carmichael (June 21, 2005) at ¶¶ 3, 9-17, 29 (Exhibit 1); Affidavit of Thomas Sullivan (May 24, 2005) at ¶¶ 15, 19-20 (Exhibit 2). Likewise, it would be very inconvenient for Beneficial to litigate this matter in Illinois, as all the parties (save CMI) and all the prospective witnesses and documentary evidence are located elsewhere, including Rhode Island and Utah. Affidavit of Harvey Carmichael (June 21, 2005) at ¶¶ 3, 9-17, 29 (Exhibit 1); Affidavit of Thomas Sullivan (May 24, 2005) at ¶¶ 15, 19-20 (Exhibit 2).

CMI argues that the federal district court's decision in Utah precludes Beneficial from relitigating the application of the forum selection clause. However, the Utah federal district court never ruled that the forum selection clause would apply to Beneficial's cross-claim where Beneficial never chose the forum and was sued as a reluctant defendant, along with CMI, in a

---

[8] In his affidavit, Ellis indicates it is more convenient and economical for him to travel to Illinois than to Rhode Island but offers no support for this assertion. Southwest Airlines regularly flies between Pittsburgh and Providence several times a day. www.southwest.com.

lawsuit in Rhode Island. Transcript of Motion to Dismiss (Oct. 3, 2005) at p. 26-28 (Exhibit 3). Nor could the Utah court even have done so, since Beneficial was the plaintiff in Utah, not a reluctant defendant. The only ruling the Utah federal court made was that *if* Beneficial was going to initiate a lawsuit against CMI, that forum had to be Illinois. Thus, Beneficial did not have a "full and fair opportunity to litigate" the legal issue raised by CMI's motion to dismiss the cross-claim in the Utah case, and the issue was not finally decided in that action. *See In re Public Service of New Hampshire*, 848 F. Supp. 318, 325 (D.R.I. 1994), *aff'd* 43 F.3d 763 (1st Cir. 1995). Indeed, it is fair to say that the cases on which Beneficial relies in this opposition were never raised by any parties in Utah, nor was there any reason to do so.

In short, this dispute should be resolved in a single forum – Rhode Island. The cross-claim arises from the same transaction that forms the basis of the main lawsuit and is an integral part of the main matter, does not require any different fact-finding from the issues raised in the original pleadings, and must be resolved in one forum to ensure that the disposition of the main proceeding will not be frustrated by inconsistent findings or rulings in Illinois.

## CONCLUSION

For the foregoing reasons, Beneficial respectfully requests that the Court deny Cross-claim Defendant Contemporary Marketing, Inc.'s motion to dismiss Beneficial's cross-claim; and Third-Party Defendant Edward Ellis' motion to dismiss Beneficial's Third-Party Complaint.

Dated: January 13, 2006

Respectfully submitted,

David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607

*Attorneys for Beneficial Holdings, Inc. Beneficial Health Systems, Inc. and Beneficial Nutraceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2006, a copy of the foregoing was hand-delivered to:

Todd M. Reed, Esq.
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, R.I. 02903

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
127 Dorrance Street, 4th Floor
Providence, RI 02903

and a copy of the foregoing was mailed, U.S. first class postage, to the following:

Nicholas Fortuna Esq.
Jesse A. Kaplan, Esq.
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, New York 10016

David A. Wollin

*365270_1.doc*