FILED
U.S. DISTRICT COURT
2005 JUN 21 P 4: 13
DISTRICT OF UTAH
BY: DEPUTY CLERK

JAMES E. MORTON, #3739
JACQUELYNN D. CARMICHAEL, #6522
MORTON & CARMICHAEL, L.C.
3995 South 700 East, Suite 400
Salt Lake City, Utah 84107
Telephone (801) 261-5702
Facsimile: (801) 261-5703

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BENEFICIAL HOLDINGS, INC. a Nevada corporation, dba BENEFICIAL HEALTH SYSTEMS,<br><br>Plaintiff,<br><br>vs.<br><br>CVS PHARMACY, INC. a foreign Corporation, CONTEMPORARY MARKETING, INC., a foreign corporation, and ED ELLIS, an individual,<br><br>Defendants. | AFFIDAVIT OF HARVEY L. CARMICHAEL<br><br>Civil No.: 2:05CV0439TS<br><br>Honorable Ted Stewart |

Salt Lake County )
)ss
State of Utah )

Being first duly sworn upon his oath, Harvey L. Carmichael, hereby deposes and states as follows:

1. I am the President of Beneficial Holdings, Inc. dba Beneficial Health Systems (hereinafter "Beneficial").

2. I have personal knowledge of the information contained herein and could and would testify competently regarding the same if called upon to do so.

3. Beneficial is a Nevada corporation head-quartered and doing business in Salt Lake County, State of Utah.

4. Beneficial's mailing address is 4848 South Highland Drive, #402 Salt Lake City, Utah 84117.

5. Beneficial's physical address is 2825 East Cottonwood Parkway, Salt Lake City, Utah 84121.

6. Beneficial's corporate telephone and facsimile numbers are local Salt Lake City numbers, to wit: (801) 990-3341 and (801) 990-3340.

7. Defendant CMI, through its agent and/or employee Ed Ellis, negotiated the placement of Plaintiff's product, WillpowerRX™, for retail sale with Defendant CVS Pharmacy, Inc.

8. In July, 2004 Beneficial received CVS's first purchase orders. **The purchase orders reflected payment terms of 2% 30 Net 31.**

9. Shortly thereafter, Beneficial received confirmation from Ed Ellis regarding his negotiation of Net 31 payment terms with CVS. Specifically, Mr. Ellis traveled to Salt Lake City to meet with representatives of Beneficial regarding the CVS retail account.

10. In addition to Beneficial's President, the meeting was attended by a representative of Beneficial's manufacturer and one of Beneficial's private investors, both of whom attended the meeting for the express purpose of discussing the payment terms that would govern the relationship between Beneficial and CVS.

11. At the meeting in Salt Lake City, Mr. Ellis represented that he had been able to obtain payment terms of Net 31 on behalf of Beneficial from CVS.

12. Mr. Ellis made this representation to all in attendance at the meeting held in Salt Lake City, in August, 2004.

13. Mr. Ellis's representations were confirmed by the purchase orders received by Beneficial from CVS, which orders also reflected the very terms of 2%30 Net 31 as specified by Mr. Ellis.

14. Based upon the payment terms set forth in the purchase orders, as well as Mr. Ellis's representations confirming the same, Beneficial accepted CVS's purchase orders and began filling the same.

15. Over the course of Beneficial's contractual relationship with CVS, Beneficial received 92 purchase orders for product from CVS.

16. Beneficial received the subject purchase orders via facsimile in its Salt Lake City office and/or at my personal residence, also located in Salt Lake City, Utah.

17. Many of the purchase orders received by Beneficial, including all of the initial purchase orders, were manufactured in the State of Utah through

Beneficial's product broker, Equity Labs, and shipped from the State of Utah to the various locations specified by CVS.

18. CVS's offer to purchase Beneficial's product through the submission of purchase orders bearing payment terms of 2%30 Net 31 induced Beneficial to take certain actions including, without limitation, (1)accepting CVS's "offers" (purchase orders) and agreeing to transact business with CVS by filling its purchase orders; (2) engaging manufacturers and obtaining loans to manufacture product to fill CVS's orders; (3) obtaining loans to provide additional operating capital for Beneficial's business; (4) agreeing to repay the subject loans upon receipt of CVS's first 30 day payment; (5) agreeing to "tag" CVS on television and newsprint ads (at an increased cost of advertising) that Beneficial paid for and aired for the benefit of both Beneficial and CVS; (5) agreeing to provide a certain level of advertising of its product; (6) purchasing product liability insurance in the amount required by CVS and identifying CVS as an additional named insured on the policy; and (7) agreeing to have Beneficial's product advertised in CVS's circulars at a substantial cost to Beneficial.

19. During the course of the relationship between the parties, CVS ordered and received over $1.2 million of product from Beneficial.

20. To date, CVS has paid for approximately $80,000 of product.

21. CVS's failure to honor the terms contained in the purchase orders received and filled by Beneficial has resulted in extraordinary damages to Beneficial include, without limitation, (1) damage to Beneficial business

relationships, as Beneficial has been unable to repay its manufacturer and other creditors; (2) damage to Beneficial's prospective economic relations, as Beneficial has lost sales (as a result of being unable to advertise its product to the extent necessary to achieve market awareness and promote the sale of its product); been unable to fill orders for its product; has lost its celebrity spokesperson; and has lost other retail accounts; (3) damage to Beneficial's reputation; (4) damage to Beneficial's contractual relations with its manufacturers, lenders, retailers, spokespersons, vendors and other business relationships; (5) loss of over $7 million dollars in market value and as a going concern; and (6) damage from being rendered insolvent and no longer having a presence in the retail market.

22. In addition to the submission of 92 purchase orders to Beneficial for filling, CVS also required Beneficial to carry certain limits of product liability insurance and identify CVS as an additional named insured in its product liability insurance policy.

23. CVS also advertised Beneficial's product in its store circulars for which it charged Beneficial over $58,000.

24. CVS further required Beneficial to provide it with a number of items, including its tax I.D. number, as well as its payment address and its return-shipping address for purposes of returning product damaged in transit.

25. Beneficial provided CVS with a payment address in New Jersey, as Beneficial intended to utilize the first portion of its receivables to pay off a loan to one of its manufacturers.

26. If that payment had been fully and timely made, Beneficial would have then redirected the payment address back to its accounts receivable address in Utah.

27. Unfortunately, CVS was nearly two months delinquent under the terms of the contract in making its first payment to Beneficial and then only paid for one or two purchase orders when, in fact, the majority of the 92 purchase orders had already been filled and payment was overdue on those orders at that time.

28. Recently, CVS contacted both Beneficial, as well as its agent, Ageless Enterprises, directly, via email, to inquire with respect to where it should make a large return of product.

29. All of Beneficial's witnesses, with the exception of four witnesses that reside out of state, are located in Utah. These witnesses include, without limitation, Beneficial's President, Beneficial's manufacturer, Equity Labs, Beneficial's fulfillment company, Ageless Enterprises (that handled all warehouse returns from CVS) Beneficial's transfer agent that can attest to the loss of market value in Beneficial's equity, Beneficial's accountant who will provide testimony regarding Beneficial's financial losses and Darren Lopez, an

independent contractor of Beneficial and witness to representations made by Defendants CMI and Ed Ellis at the meeting that took place in Salt Lake City.

30. If Beneficial is required to try its claims in a foreign jurisdiction, it will effectively be deprived of its day in court. Beneficial has been rendered insolvent by the actions of CVS, CMI and Mr. Ellis and will be unable to shoulder the financial burden of prosecuting these claims in foreign jurisdictions.

DATED this 15 day of June, 2005.

HARVEY L. CARMICHAEL
President, Beneficial Holdings, Inc.

SUBSCRIBED AND SWORN TO before me this 15th day of June, 2005.

NOTARY PUBLIC

My commission expires:
12·19·07

Notary Public
GLORIA WALKER
3995 S. 700 E. #400
Salt Lake City, UT 84107
My Commission Expires
December 19, 2007
State of Utah