# SALES REPRESENTATIVE AGREEMENT

THIS AGREEMENT is made this 21st day of June, 2004 , by and between Beneficial Holdings., an Nevada corporation ("Principal"), and CONTEMPORARY MARKETING, INC., an Illinois corporation ("Broker").

## RECITALS:

WHEREAS, Principal is a manufacturer and seller, among other things, of nutritional food products and/or other merchandise (collectively "Products"); and

WHEREAS, Principal desires to secure the exclusive services of a broker to negotiate the sales of Principal's Products as more particularly described hereinafter; and

WHEREAS, Broker is desirous of securing the exclusive right, as hereinafter described, to negotiate the sales of Principal's Products.

NOW THEREFORE, in consideration of the premises and covenants and undertakings herein contained, it is mutually agreed as follows:

## GENERAL PROVISIONS

1. **Grant of Exclusive Rights**. Principal hereby appoints Broker as its exclusive sales agent for the Principal's Products identified in Exhibit A attached hereto to the Accounts set forth in Exhibit B, and Broker hereby agrees to act for Principal, as its sole and exclusive representative for negotiations of sales of the Principal's Products to the Accounts, subject to the terms, provisions and conditions hereof. Principal shall permit Broker to use Principal's Products' name for promotion and advertisement in the sale of the Products. While this Agreement is in effect, Principal will not, directly or indirectly, sell or otherwise exploit the Products to the Accounts and will not permit any other third party, either directly or indirectly, to sell or otherwise exploit the Products to the Accounts. However, nothing in this Agreement shall prohibit Broker from distributing products of other manufacturers, whether or not said products are competitive with Principal's Products.

2. **Sales Negotiations**. All sales negotiations by Broker for the account of Principal shall be conducted in accordance with such prices, terms and conditions as are specified by Principal, and in accordance with all applicable laws, rules and regulations in the sale and exploitation of the Products.

3. **Purchase Order Confirmation**. All purchase orders taken from buyers by Broker shall be subject to Principal's confirmation, and it is understood that Broker will not obligate or commit Principal to the sale or delivery of products without Principal's authorization and direction.

4. **Agency**. Broker is an independent contractor and shall act as agent for Principal; neither Broker nor its employees shall be considered employees of Principal; and neither party shall in any event be held liable or accountable for any obligations incurred by the other party except as specified herein; it being specifically understood that the respective businesses of each of the parties shall be operated separate and apart from each other.

5. **Term/Termination.** This Agreement shall continue in full force and effect from year to year; provided that either party my terminate this Agreement by giving ninety (90) days written notice of such intention to the other party.

6. **Applicable Law.** The laws of the State of Illinois shall govern the application and interpretation of this Agreement in all respects and aspects, and the sole venue for bringing any legal action hereunder shall be in the Circuit Court of Cook County, Illinois; all parties hereto agreeing to submit themselves to the jurisdiction of said Court.

7. **Notices.** All notices hereunder shall be sent by hand delivery, facsimile transmission, overnight receipted delivery or by registered or certified mail to the Parties hereto as follows:

To Principal:
Beneficial Holdings
Attn: Mr. Harvey Carmichael
4848 S. Highland Drive, # 402
Salt Lake City, UT 8412

To Broker:
Contemporary Marketing, Inc.
Attn: Michael Okun
1569 Barclay Boulevard
Buffalo Grove, Illinois 60089
Facsimile No. (847) 123-4567

**THE PRINCIPAL AGREES AS FOLLOWS:**

8. **Exclusive Representation.** Broker shall be the sole and exclusive representative of Principal for negotiating sales of the Products identified on Exhibit A to the Accounts shown on Exhibit B attached.

9. **Accounts.** The Accounts set forth in Exhibit B shall be considered as exclusive to the Broker and cannot be deleted, changed or modified by Principal. Principal may not negate, cancel or annul these accounts during the term of this Agreement, and may only terminate pursuant to the terms and conditions set forth in this Agreement.

10. **Commissions.** Principal shall pay Broker a commission or brokerage fee of 7% on each and every sale of Products by Broker or by Principal or any other party to any of the Accounts described on Exhibit B attached, as provided herein. Said commissions will be paid on net dollar sales after allowances, returns and adjustments and before cash discounts (prompt payment discounts). Said commissions payment will be due on the tenth (10th) day of the month following receipt of payment. Commissions cannot be earned on free merchandise, slotting fees, returned goods (excluding spoils) or on shipments that are refused by a customer for any reason. Broker shall have the right to inspect and audit, upon three (3) days written notice, Principal's books and records related to any orders, shipments, invoicing and payments for the Products sold to the Accounts pursuant to this Agreement. Upon termination of this Agreement for any reason and by either party, Broker shall be entitled to commissions on all orders placed and accepted prior to the date of notification of termination.

11. **Rights Following Termination.** For all Accounts as shown on Exhibit B, Broker will continue to be paid at the commission rate stated in the preceding paragraph for a period of twelve (12) months after termination, as long as the Principal is making sales of the Products to the Accounts. This provision and those stated in Paragraph 9 above shall continue and will survive the termination of this Agreement as set forth in Paragraph 5.

12. **Shipments.** Principal shall ship the Products sold as Broker may specify, and simultaneously with each shipment Principal shall supply Broker with copies of all shipping receipts, bills of lading or similar documents evidencing delivery of the Products to the Accounts. Principal shall be given reasonable notice with respect to the required shipments. Principal accepts full responsibility for granting credits to buyers.

13. **Sales and Promotional Policies.** Principal shall keep Broker fully informed on all sales and promotional policies and programs affecting the Products and Accounts.

14. **Indemnification.** If any claim or action is made or filed against Broker, claiming loss or injury of any nature whatsoever, as a result of any defect or alleged defect in the Products or the purchase or use of the Products, Principal shall defend, hold harmless and indemnify Broker from any and all loss and damage, costs and expenses, including legal fees, incurred by it.

15. **Product Liability Insurance.** Principal shall furnish Broker with a current certificate of product liability insurance upon execution of this Agreement showing Broker as an additional insured on said policy.

**BROKER AGREES AS FOLLOWS:**

16. **Principal's Instructions.** Broker shall carry out Principal's instructions with respect to the sales of the Products.

17. **Reporting Purchase Orders.** Broker shall promptly submit all purchase orders for Products for confirmation or approval by Principal.

19. **Assistance in Collections.** Broker shall assist Principal when requested by Principal in effecting prompt and full payments by buyers for all Products sold and delivered to buyers. The final determination as to credit and credit terms to be extended to buyers shall be made only by Principal. Broker's agreement to assist in the collection of Principal's accounts receivable shall not be construed as a guaranty of payment of such accounts or give Principal the right to charge Broker's account with any sums owed Principal by buyer. In the event of such unauthorized charge by Principal against Broker's account, Broker may immediately terminate this Agreement and seek recovery of all such charges plus interest, attorney's fees and costs of collection.

20. **Contact Prospective Buyers.** Broker shall use every effort to obtain new accounts in furtherance of sales of Principal's Products.

21. **Entire Agreement.** This instrument constitutes the entire Agreement of the parties and any prior representations, statements, understandings or warranties, if any, shall be merged into this Agreement.

22. **Modifications.** This Agreement shall not be modified except by an instrument in writing executed by the parties hereto.

23. **Costs of Collection.** Any party found to be in breach of any of the terms of this Agreement shall be required to pay all costs associated with the enforcement of any provision hereunder, including reasonable attorney's fees.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement, thereunto duly authorized on this day and year above written.

**PRINCIPAL:**

**BENEFICIAL HOLDINGS**

**By:** ______________________ Pres

**HARVEY L. CARMICHAEL**

**CONTEMPORARY MARKETING, INC.**

**By:** ______________________

**MICHAEL OKUN, President**

## EXHIBIT "A" - PRODUCTS

WILL POWER RX
ENDURANCE RX
ENJOY RX



# EXHIBIT "B" – ACCOUNTS

GNC

WALGREENS

CVS

TARGET

WAL-MART