UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CVS PHARMACY, INC.

Plaintiff,

- against -

Civil Action No.: 05-171-T

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., INTEGRATED BIOPHARMA, INC., and CONTEMPORARY MARKETING , INC.

Defendants.

**PLAINTIFF'S OBJECTION TO DEFENDANTS BENEFICAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., AND INTEGRATED BIOPHARMA, INC.S' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff CVS, Inc. ("CVS"), hereby objects to defendants Beneficial Holding, Inc., Beneficial Health Systems, Inc., Beneficial Nutraceutical, Inc. (referred to collectively as "Beneficial"), and Integrated Biopharma, Inc.s' (referred to as "Integrated"), motion for partial summary judgment in favor of counts 1, 2 and 9 of Beneficial's counterclaim, counts 1, 2, and 8 of Integrated's counterclaim, and count 1 of plaintiff's complaint. The grounds for this objection are set forth in the accompanying memorandum of law.

Respectfully submitted,

EDWARDS ANGELL PALMER & DODGE LLP

Todd Reed, Esq. (#6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2006, a copy of the within document was mailed, via first class mail, to the following counsel of record:

David Wollin, Esquire
Adler Pollack & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

CharCretia V. DiBartolo, Esquire
Hinshaw & Culbertson LLP
127 Dorrance Street, 4th Floor
Providence, RI 02903

Nicholas Fortuna, Esquire
Jesse A. Kaplan, Esquire
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, NY 10016

[signature]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---------------------------------------------------------------

CVS PHARMACY, INC.

Plaintiff,

- against - Civil Action No.: 05-171-T

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., INTEGRATED BIOPHARMA, INC., and CONTEMPORARY MARKETING , INC.

Defendants.

---------------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS BENEFICAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., AND INTEGRATED BIOPHARMA, INC.S' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff CVS, Inc. ("CVS"), respectfully submits this memorandum of law in opposition to defendants Beneficial Holding, Inc., Beneficial Health Systems, Inc., Beneficial Nutraceutical, Inc. (referred to collectively as "Beneficial"), and Integrated Biopharma, Inc.s' ("Integrated"), motion for partial summary judgment in favor of counts 1, 2 and 9 of Beneficial's counterclaim, counts 1, 2, and 8 of Integrated's counterclaim, and count 1 of plaintiff's complaint.

## Introduction

While Beneficial and Integrated try to argue that CVS offered Beneficial "2%30 net 31" payment terms, they have ignored the fact that Beneficial had already agreed to "Pay on Scan" payment terms prior to CVS' issuance of the applicable purchase orders. Of equal importance, Beneficial and Integrated have failed to address CVS' claim and affirmative defense that the

purchase orders should be reformed based on a mutual mistake. Once again, Beneficial and Integrated ignore the fact that the relevant CVS purchase orders contained obvious clerical errors indicating payment terms that were different than what was previously negotiated and agreed to. Accordingly, defendants Beneficial and Integrated have failed to make a prima facie showing that summary judgment is appropriate. At the very least, CVS has demonstrated a genuine material issue of fact as to what was agreed to, and whether the relevant CVS purchase orders contained mutual mistakes. Moreover, as discovery is still in its infancy, Beneficial and Integrateds' motion for summary judgment must be denied.

**Beneficial and CVS Agreed to "Pay on Scan" Payment Terms**

Prior to CVS' issuance of purchase orders, CVS and Beneficial had already agreed to "Pay on Scan" payment Terms." Contrary to Beneficial's narrow interpretation of the U.C.C., purchase orders are not by definition offers.[1] That is, sellers are capable of making offers, and buyers are capable of accepting a seller's offer by doing among other things, submitting purchase orders. *See Polytop Corporation v. Chipsco, Inc.*, 826 A.2d 945, 948-949, 50 UCC Rep.Serv.2d 652 (R.I. 2003)(holding that a seller's quotations constituted offers and that the buyer's subsequent purchase orders constituted acceptances); *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 635, 36 UCC Rep.Serv.2d 1031(R.I. 1989)(holding that seller's "proposal" contained the "typical earmarks of an offer" such as information as to type, specifications, quantity, delivery terms, and price). Pursuant to 6A-2-206(1)(a), "an offer to

[1] Neither *SII Megadiamonds, Inc. v. American Superabrasives Corp.*, 969 P.2d 430 (Utah 1998), nor the Uniform Commercial Code in either Utah (Utah UCC § 70A-2-206) or in Rhode Island (G.L. 1956 § 6A-2-206), stand for the proposition that purchase orders can only function as offers.

make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." 6A-2-206(1)(a).[2]

Here, Harvey Carmichael's June 10, 2004 letter (the "Carmichael Letter") was an offer to sell WillpowerRX to CVS. CVS, Beneficial's exclusive agent CMI, and CMI's president Harvey Carmichael, had negotiated the deal's terms, including "Pay on Scan" payment terms (*See* Affidavit of Thomas Sullivan dated June 15, 2006 ("Sullivan Aff."),¶¶ 6-13; Affidavit of Edwin Ellis dated June 16, 2006 ("Ellis Aff."), ¶ 3). Subsequently, Beneficial issued the Carmichael Letter which detailed the price, payment terms, displays, returns, and slotting for WillpowerRx that the parties had previously negotiated (Sullivan Aff., ¶¶ 14-16, Ex. A). Of particular importance, Beneficial explicitly offered payment terms of "Pay on Scan" for the first year (*See* Sullivan Aff., ¶¶ 14-16, Ex. A; Ellis Aff., ¶ 5). Moreover, the Carmichael Letter clearly invited CVS to accept the terms that Beneficial offered, including Beneficial's representation that it would, "…extend to CVS terms of Pay on Scan for a period of One year…" (*See* Sullivan Aff., ¶¶ 14-16).

Subsequent to Beneficial's issuance of the Carmichael Letter, but prior to CVS' issuance of the relevant purchase orders, CVS accepted Beneficial's offer by contacting Beneficial's exclusive agent CMI, and indicating that CVS was going to issue purchase orders (*See* Sullivan Aff., ¶ 19).[3] Accordingly, CVS accepted Beneficial's offer of "Pay on Scan" payment terms.[4]

Assuming *arguendo* that CVS' prior acceptance was insufficient, the relevant CVS purchase orders would have served as acceptances of Beneficial's previous offer. That CVS'

---

[2] Utah UCC § 70A-2-206 is identical.

[3] Under the terms of Beneficial's June 10, 2004 offer, CVS was not required to accept in any particular manner. Accordingly, CVS' oral acceptance of Beneficial's offer was more than sufficient. *See* 6A-2-206(1)(a).

[4] Beneficial and Integrated argue that Utah rather than Rhode Island law applies based on their claims that Beneficial accepted CVS purchase orders in Utah. It is CVS' position that CVS accepted Beneficial's offer in Rhode Island. Therefore, Rhode Island law applies.

purchase orders arguably contained different payment terms does not mean that CVS did not accept Beneficial's offer and that there was not an agreement reached between the parties. Rhode Island's Uniform Commercial Code has expressly rejected the long time common law "mirror image rule." In, *Polytop* 826 A.2d at 948-949, the Rhode Island Supreme Court rejected the "mirror image rule" when applying the U.C.C. and found that the buyer had agreed to an arbitration requirement in the seller's offer by submitting purchase orders even though the buyer's purchase orders were silent to the issue of dispute resolution. Moreover, the buyer's acceptance was still unconditional despite language in the buyer's purchase orders stating that, "Any additional or different terms proposed by seller are rejected unless expressly assented to in writing by buyer's authorized agent." *Polytop* 826 A.2d at 948-949; *see also* G.L. 1956 § 6A-2-207.

Even if CVS' purchase orders were offers or counteroffers, Beneficial subsequently agreed that "Pay on Scan" payment terms would apply. After CVS issued the relevant purchase orders, Beneficial's exclusive agent CMI, contacted CVS and advised CVS that the payment terms were in fact "Pay on Scan" (*See* Sullivan Aff., ¶ 27; Ellis Aff., ¶ 9). Accordingly, even if CVS' purchase orders were offers or counteroffers, Beneficial counter offered payment terms of "Pay on Scan," which CVS accepted.

**<u>Reformation of Contract Based on Mutual Mistake</u>**

Regardless of what constituted the offer and acceptance, the relevant CVS purchase orders clearly contained clerical errors that ran contrary to the parties' intent. Under both Utah and Rhode Island law, CVS is entitled to a reformation of the purchase orders in order to effectuate the parties intent and reflect the previously agreed upon "Pay on Scan" payment

terms.[5] To hold that CVS is bound to such a clerical error in its purchase orders would be patently unfair and would promote dishonesty.[6]

Under Utah law, a contract may be reformed for mutual mistake if 1) the instrument does not embody the intentions of both parties; or 2) If one party is laboring under a mistake about a contract term and the other party knows and concedes the mistake, but remains silent. *See Briggs v. Liddell,* 699 P.2d 770 (Utah 1985); *Mabey v. Kay Peterson Construction Co.,* 682 P.2d 287, 291 (Utah 1984); *R.L. Warner v. Sirstins,* 838 P. 2d 666, 670 (Utah App. 1992).[7]

Reformation is therefore appropriate under Utah law in instances of a draftsman's error. A writing should be reformed based on a mutual mistake when there is a variance between the writing and the true agreement and intention of the parties caused by the draftsman. *See Hotinger v. Jensen,* 684 P.2d 1271, 1273 (Utah 1984); *Lloyd's Unlimited v. Nature's Way Marketing, Ltd.,* 757 P.2d 507, 511-512 (Utah App.1988)(granting leave to amend the pleadings to add a claim for reformation of contract when due to a secretarial error, a written integrated contract mistakenly stated that the plaintiff would receive commissions of .50 cents (1/2 a cent) per unit rather than the 50 cents a unit previously agreed to); *R.L. Warner,* 838 P. 2d at 669 (reforming a written sales contract of a vehicle when the buyer knew that he would only receive

---

[5] As discussed, CVS takes the position that Rhode Island law applies since the contracts at issue were accepted by CVS in Rhode Island. Regardless of what state's law applies, CVS purchase orders should be reformed to reflect the parties true intentions. Since there is a choice of law dispute, CVS will discuss the application of both Utah and Rhode Island law.

[6] Under the result desired by Beneficial, Beneficial would receive the benefit of CVS' clerical error even though Beneficial had previously agreed to payment terms that favored CVS. This would be the equivalent of allowing a seller who offered to sell goods for $10 to keep the extra money when a buyer accidentally paid with a $100 bill, thinking that it was $10. Common sense and fair dealing dictate that the buyer's tender of $100 would not constitute a counteroffer to purchase the goods for $100 rather than $10. Rather, the tender of extra money would be an obvious error that ran contrary to both the price the buyer intended to pay and the price that the seller agreed to accept.

[7] Utah delineates a separate test for reformation due to a unilateral mistake. *See John Call Engineering v Manti City Corp.,* 743 P.2d 1205 (Utah 1987).

a trade in credit of $14,200 for his vehicle, not the $28,400 which he ultimately received when the seller mistakenly credited the trade in value twice); *Doxey-Layton Company v. Clark*, 548 P.2d 902, 906-907 (Utah 1976)(sustaining trial court's reformation of a deed due to a scrivener's error).

Rhode Island also recognizes that a written instrument may be reformed to reflect the parties' true intentions and correctly reflect their prior understanding. *See Dubreuil v. Allstate Insurance Co.*, 511 A.2d 300, 302 (R.I. 1986) A Mutual mistake is defined as a mistake "common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be canceled." *Leonard v. McDowell*, 824 A.2d 1266, 1270 (R.I. 2003), *quoting Dubreuil v. Allstate Insurance Co.*, 511 A.2d 300, 302-03 (R.I.1986). An agreement containing a mutual mistake fails in a material respect to correctly to reflect the understanding of both parties. *Dubreuil*, 511 A.2d at 302.

Accordingly, under Rhode Island law, a writing may be reformed if it contains a clerical or typographical error that does not conform to the parties' intentions. *See Shapiro v. Albany Ins., Co., of New York. Shapiro*, 56 R.I. 18, 183, A. 578, 579 (R.I. 1936) (reforming insurance policy due to a mutual mistake when the policy incorrectly described am insured as an owner rather than a mortgagee); *Rosen v. E. Rosen Co.*, 818 A.2d 695, 698, 2003 Copr.L.Dec. P 28, 612 (R.I. 2003) (reforming imprecise bill of sale that did not assign interest in copyrights when the parties intended that the copyrights be included in said transfer of assets).

Moreover, since the parties' intent is integral to whether a contract can be reformed due to a mutual mistake, summary judgment can only be granted in the most extraordinary of circumstances. *See Hutchinson v. Proxmire*, I443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411

(1979); *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (commenting that summary judgment is used sparingly where intent and state of mind are implicated); *Seamons v. Snow,* 206 F.3d 1021, 1027-28 (3d Cir. 1999)(noting that state of mind issues typically should not be decided on summary judgment); *Mendocino Envt'l Ctr. v. Mendocino County,* 192 F.3d 1283, 1302 (9th Cir. 1999)(observing that state of mind questions are factual issues inappropriate for summary judgment).

Without even considering Beneficial's credibility, the evidence submitted by CVS creates a material issue of fact as to the parties' intent.[8] CVS clearly intended to purchase WillpowerRX on a "Pay on Scan" basis. Due to an obvious clerical error when setting up Beneficial's vendor account, the ultimate payment terms, rather than the correct and agreed upon "Pay on Scan" payment terms, were entered into the CVS computer system that created and issued the purchase orders (*See* Sullivan Aff., ¶¶ 22-26, Ex. C).[9] As CVS' computer system automatically generates purchase orders without oversight from the category manager's office, Tom Sullivan's office did not review the relevant purchase orders before they were issued to CMI (*See* Sullivan Aff., ¶ 26). Accordingly, CVS did not realize that the purchase orders contained clerical errors until well after they were issued (*See* Sullivan Aff., ¶ 26).

Likewise, the evidence overwhelmingly supports the conclusion that Beneficial, both independently, and through its agent CMI, intended to sell WillpowerRX to CVS on a "Pay on

[8] The credibility of Beneficial's president, Harvey Carmichael is certainly at issue. The Securities and Exchange Commission has recently filed a civil injunctive action in the United States District Court, District of Utah, against Carmichael alleging violations of sections 5(a) and 5(c) of the Securities Act of 1933, sections 10(b), 13(d) and 16(a) of the Securities and Exchange Act of 1934, and Rules 10b-5, 13d-1, 13d-2, 16a-2 and 16-a-3 of the Securities and Exchange Act of 1934. *See Securities and Exchange Commission v. Harvey L Carmichael and Irving Freiberg,* Case No. 2:05CV00233 PGC (USDC Utah).

[9] CVS did, however, input "Pay on Scan" payment terms in its accounting system.

Scan" basis.[10] During early discussions prior to CVS' issuance of the initial purchase orders, CVS informed Beneficial directly and through its agent, CMI, that since WillpowerRX was such a new and unproven product, CVS would only consider purchasing WillpowerRX if Beneficial was willing to offer "Pay on Scan" payment terms (*See* Sullivan Aff., ¶¶ 7-13). CVS clearly indicated that CVS would not negotiate on this point (*See* Sullivan *Aff.,* ¶ 10). Both Ed Ellis and Harvey Carmichael expressed their understanding and agreed that the payment terms would have to be "Pay on Scan" (*See* Sullivan Aff., ¶ 10; Ellis Aff., ¶ 3).

According to Beneficial's exclusive agent CMI, Beneficial held a WillpowerRX planning meeting in May 2004 (*See* Ellis Aff., ¶ 4). At the planning meeting, Harvey Carmichael, and a Beneficial consultant, Darren Lopez, discussed and acknowledged that Beneficial would agree to "Pay on Scan" payment terms (*See* Ellis Aff., ¶ 4).

Though Beneficial now denies that it agreed to "Pay on Scan" payment terms, on June 10, 2004, Beneficial's president sent CVS a letter (the "Carmichael Letter) outwardly manifesting Beneficial's intent to agree to "Pay on Scan" payment terms. The Carmichael Letter unequivocally stated that "Beneficial will extend terms of Pay on Scan for a period of one year, after which the terms will switch to 2%30 net 31 days (*See* Sullivan Aff., ¶¶ 14-16, Ex. A; Ellis Aff., ¶ 5). Between June 10, 2004, when Beneficial offered "Pay on Scan" payment terms, and July 8, 2004, when CVS' issued its first purchase orders, neither Beneficial nor its agent, CMI, ever indicated to CVS that it would require payment terms other than what Beneficial had previously agreed to (*See* Sullivan Aff., ¶ 17). That is, Beneficial never indicated that it wanted payment terms other than "Pay on Scan" (*See* Sullivan Aff., ¶ 17).

[10] Evidence from Beneficial's agent CMI, is highly probative as to Beneficial's intent. *See American Insurance Company v. Freeport Cold Storage, Inc.*, 703 F.Supp. 1475 (D. Utah 1987)(commenting that evidence from agent regarding intention must be elicited).

Rather, Beneficial, through its agent CMI, continued to reinforce Beneficial's acquiescence to "Pay on Scan" payment terms (*See* Sullivan Aff., ¶ 18). In particular, on July 2, 2004, Ed Ellis sent Tom Sullivan an email reaffirming that the purchase terms would be "Pay on Scan." Ed Ellis affirmatively stated: "**They are pay on scan**"( *See* Sullivan Aff., ¶ 18, Ex. B)(Emphasis added)).

Moreover, when the relevant CVS purchase orders were initially issued, Ed Ellis spoke with Harvey Carmichael regarding the clerical error. Ed Ellis confirmed with Harvey Carmichael that the payment terms were "pay on scan" despite the purchase order's "2% 30 Net 31" language. (*See* Ellis Aff., ¶ 6). In August 2004, Ed Ellis attended a WillpowerRX planning meeting in Salt Lake City, Utah (*See* Ellis Aff., ¶ 7). During this planning meeting, Ed Ellis reviewed an Account Planner with Harvey Carmichael and other Beneficial executives (*See* Ellis Aff., ¶ 7). The Account Planner outlined a number of interested retailer's key terms and conditions and noted that CVS was "**pay on scan for 1 year**" (*See* Ellis Aff., ¶ 7, Ex. A (emphasis added)). In September 2004, Ed Ellis spoke to Harvey Carmichael and reaffirmed that Beneficial and CVS only agreed to "Pay on Scan" payment terms, regardless of what the purchase orders stated (*See* Ellis Aff., ¶ 8).

Subsequent to CVS' issuance of the relevant purchase orders, Beneficial continued to manifest its intent that the payment terms were "Pay on Scan." In September 2004 Ed Ellis spoke to Harvey Carmichael and reaffirmed that Beneficial and CVS only agreed to "Pay on Scan" payment terms, regardless of what the purchase orders stated (*See* Ellis Aff., ¶ 9). Subsequently, Ed Ellis contacted CVS on Beneficial's behalf, and acknowledged that the purchase orders contained clerical errors and confirmed that the payment terms should have been "Pay on Scan" (*See* Sullivan Aff., ¶ 27; Ellis Aff., ¶ 9).

Furthermore, CVS always paid Beneficial on a "Pay on Scan" basis. Likewise, Beneficial always accepted payment on a "Pay on Scan" basis (*See* Sullivan Aff., ¶ 29). In fact, Ed Ellis would provide Beneficial with updates as to WillpowerRX's sales performance so that Beneficial could estimate upcoming scan payments (*See* Ellis Aff., ¶ 10, Ex. B). Additionally, once CVS detected and remedied the clerical error in its system that generates purchase orders, Beneficial gladly filled purchase orders that accurately reflected "Pay on Scan" payment terms (*See* Sullivan Aff., ¶ 28).[11] Moreover, Despite Beneficial's recent claims that it would never agree to "Pay on Scan" payment terms, it is undisputed that Beneficial agreed to "Pay on Scan" payment terms with other retailers such as G.N.C (*See* Ellis Aff., ¶ 11).

Of Equal importance, Beneficial and Integrated have failed to discharge their prima facie burden by establishing an absence of evidence supporting CVS' reformation claim and affirmative defense. Beneficial and Integrated have essentially ignored the evidence that supports the conclusion that Beneficial intended the sale of WillpowerRX to be governed by "Pay on scan" payment terms.

Beneficial has failed to even attempt to explain why it sent CVS the Carmichael letter stating that "Beneficial will extend terms of Pay on Scan for a period of one year, after which the terms will switch to 2%30 net 31 days" ( *See* Sullivan Aff., ¶¶ 14-16, Ex. 10). Beneficial does not claim that it made any representations, either orally or in writing, that it would not agree to "Pay on Scan" payment terms. Beneficial ignores the fact that it continuously accepted payment from CVS on a "pay on Scan" basis, and that it constantly requested information regarding WillpowerRX's sales performance (*See* Ellis Aff., ¶ 10). Beneficial also ignores the fact that after the parties became aware of the clerical error, Beneficial filled a large number of purchase

---

[11] Beneficial and Integrated have not moved for summary judgment with regards to the purchase orders that contained the correct "Pay on Scan" payment terms.

orders that did in fact reflect "Pay on Scan" payment terms (*See* Sullivan Aff., ¶ 28). Beneficial also fails to address the fact that it agreed to "Pay on Scan" terms with other retailers such as G.N.C. (*See* Ellis Aff., ¶ 11). Moreover, Beneficial ignores the overwhelming amount of evidence from its agent, CMI, indicating that Beneficial agreed to "Pay on Scan" payment terms. Accordingly, Beneficial and Integrated have failed to sustain their prima facie burden. At the very least, CVS has raised a genuine issue of material fact with respect to the parties' intent.

**Parol Evidence is Admissible**

Through their failure to even address the issue of intent, Beneficial and Integrated imply that the parties' intent is irrelevant and that the purchase orders should be taken at face value regardless of whether they contained obvious clerical errors. Beneficial and Integrated imply that evidence beyond the four corners of the purchase orders is inadmissible under the parol evidence rule.

Under Utah law, parol evidence is always admissible to prove that a writing should be reformed because it did not conform to the parties' intent. *See Jensen v. Manila Corp. of the Church of Jesus Christ of Latter Day Saints*, 565 P.2d 63, 64 (Utah 1977); *R.L. Warner,* 838 P. 2d at 669; *West One Trust Company v. Morrison,* 861 P. 2d 1058 (Utah App. 1993)(finding that parol evidence is admissible to show that an integrated writing should be reformed or voided due to mutual mistake); *Lloyd's Unlimited,* 757 P.2d at 511-512 (holding that reformation of contract claim was colorable despite integration clause stating that "This agreement contains the entire understanding of the parties hereto and may not be altered, amended, modified, or discharged in anyway whatsoever except by subsequent agreement in writing by all parties hereto"). Likewise, under Rhode Island law, parol evidence is admissible to show mutual mistake and establish the parties' intent. *See Conti v. Fisher,* 48 R.I. 33, 35, 134 A.2d 849, 849 (R.I. 1926); *Industrial*

*National Bank v. Peloso,* 121 R.I. 305, 310, 397 A.2d 1312 (R.I. 1979). Accordingly, even if the relevant CVS purchase orders are integrated documents, parol evidence is admissible to prove a mistake and the parties' intent.

At the very least, there is a material issue of fact as to whether the purchase orders are even integrated documents that would be subject to the parol evidence rule. "Pursuant to G.L. 1956, § 6A-2-202(b), parol or extrinsic evidence of consistent prior agreements is admissible in supplementation or explanation of such instruments unless there has been a preliminary finding by the trial justice that the writing was intended by both parties as a complete and exclusive statement of all the terms...". *Golden Gate Corp v. Barrington College,* 98 R.I. 35, 199 A.2d 586 (R.I. 1964) *citing* 1956, § 6A-2-202(b). Thus, the parol evidence rule is only applicable if the parties intended the writing at issue serve as "a final expression of their agreement." 1956, § 6A-2-202(b).[12]

While Beneficial and Integrated seem to argue that the relevant purchase orders were final, complete, and exclusive statements of the agreement based on language in certain "Terms and Conditions," the "Terms and Conditions" that Beneficial and Integrated rely upon do not apply to the purchase orders at issue. The "Terms and Conditions" relied upon by Beneficial and Integrated were never included in any of the purchase orders that CVS issued to CMI and Beneficial (*See* Sullivan Aff., ¶ 32). Rather, these "Terms and Conditions" were merely available on www.cvssuppliers.com, a web site maintained by CVS that contains supplier/vendor information (*See* Sullivan Aff., ¶ 32).

CVS never referred Beneficial to www.cvssuppliers.com and informed Beneficial that the contents of that web site would be incorporated into CVS' agreement with Beneficial (*See* Sullivan Aff., ¶ 33). Moreover, there is no indication that Beneficial ever accessed this web site

[12] Utah UCC § 70A-2-202 is identical.

and agreed to abide by the "Terms and Conditions" or requested that they be included in the agreement. (*See* Sullivan Aff., ¶ 33). Rather, CVS directly negotiated the deals' terms and conditions with Beneficial and its agent, CMI (*See* Sullivan Aff., ¶ 34).

In fact, Beneficial and Integrated's implication that the relevant CVS purchase orders were final expressions of the parties' agreement is inconsistent with Beneficial's own statement of facts. Beneficial and Integrated claim that CVS' purchase orders were offers and that Beneficial accepted these offers by allegedly issuing confirmations to CMI (*See* Declaration of Harvey Carmichael dated May 18, 2006, ¶¶ 8-9). If the CVS purchase orders were final expressions of the parties agreement, the parties would have by definition already reached an agreement. If the parties already reached an agreement, it is impossible that the CVS purchase orders were offers. Accordingly, Beneficial and Integrated have taken inconsistent positions as to the status of the relevant CVS purchase orders.

Assuming *arguendo* that "Terms and Conditions" do apply, the "Terms and Conditions" provide an exception for affirmations and statements made by the seller. Beneficial relies on the following language to support its position:

> "This contract is intended as the final complete and exclusive statement of the terms of the agreement of the parties, **except** that merchandise shall conform to **any affirmations of fact or promise**, any descriptions and any samples or models shown or **made to Purchaser**, whether or not such affirmations, samples or descriptions or samples are otherwise contained or referred to herein, and such affirmations, **and such affirmations,** descriptions and samples **shall constitute part of the basis of the bargain between Purchaser and Seller.**"(*See* Carmichael Decl., ¶ 10)(Emphasis added)

This provision does not nullify previous affirmations made by Beneficial regarding the sale of WillpowerRX, including Beneficial's explicit representation that it agreed "Pay on Scan" payment terms for the sale of WillpowerRX. Rather, this provision provides a guaranty that

CVS will get the benefit of prior affirmations made by sellers and that sellers will not be able to limit the agreement to the terms indicated in the applicable "contract."

Beneficial also relies on the following language:

> "In case of conflict between the terms and conditions of this agreement and any terms or conditions on or in any confirmation, acknowledgement, sale or invoice form of Seller, or any correspondence pertaining to any of these or the merchandise, the terms and conditions of this agreement shall control." (*See* Carmichael Decl., ¶ 11)(Emphasis added)

Once again, this language does not nullify terms that a Seller had previously made or agreed to. Rather, this provision deals with conflicting terms made subsequent to the execution of the applicable "contract." Accordingly, this language does not support the conclusion that the parties intended the relevant CVS purchase orders to serve as complete and exclusive statements of all terms.

Finally, while Beneficial and Integrated conclude that these "Terms and Conditions" apply to the purchase orders at issue, these "Terms and Conditions" could just as easily apply to the agreed upon terms outlined in the Carmichael Letter. As previously discussed, the "Terms and Conditions" that Beneficial and Integrated rely upon were not attached to any of the relevant purchase orders. Rather, they were located on CVS' web site, www.cvssuppliers.com. Moreover, the "Terms and Conditions" merely refer to "This contract" and "this agreement" (*See* Carmichael Declaration, Ex. E). Accordingly, there is no indication that these "Terms and Conditions" would not apply to the Carmichael Letter, which clearly outlines the agreement's terms in the most detail.

**Beneficial and Integrateds' Motion for Summary Judgment is Premature**

Beneficial and Integrated's motion for summary judgment is premature as discovery is still in its infancy. Summary judgment should only be granted if the non-moving party has had

an adequate opportunity to conduct discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Therefore, pre-discovery motions for summary judgment should be the exception, rather than the rule. *See Patton v. General Signal Corp.*, 984 F. Supp. 666, 670 (W.D.N.Y 1997) (commenting that pre-discovery summary judgment remains the exception rather than the rule and will only be granted in the clearest of cases); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir. 2003)(holding that pre-discovery summary judgment should only be granted in the rarest cases).

Here, the Court has set a September 30, 2006 discovery deadline. While the parties have exchanged paper discovery and produced responsive documents, the parties have yet to hold depositions. Accordingly, Beneficial and Integrated's motion for summary judgment should be denied as premature.

**<u>Conclusion</u>**

For the foregoing reasons, Beneficial and Integrated's motion for summary judgment should be denied.

Respectfully submitted,

EDWARDS ANGELL PALMER &
DODGE LLP

Todd M. Reed, Esq. (#6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2006, a copy of the within document was mailed, via first class mail, to the following counsel of record:

David Wollin, Esquire
Adler Pollack & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

CharCretia V. DiBartolo, Esquire
Hinshaw & Culbertson LLP
127 Dorrance Street, 4th Floor
Providence, RI 02903

Nicholas Fortuna, Esquire
Jesse A. Kaplan, Esquire
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, NY 10016

____________________