UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CVS PHARMACY, INC.

Plaintiff,

- against -

Civil Action No.: 05-171-T

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., INTEGRATED BIOPHARMA, INC., and CONTEMPORARY MARKETING, INC.

Defendants.

**PLAINTIFF'S RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS OF BENEFICAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., AND INTEGRATED BIOPHARMA, INC., IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, CVS Pharmacy, Inc. ("CVS"), respectfully submits this response to the moving defendants' Statement of Undisputed Material Facts:

1. While CVS does not possess independent knowledge as to this fact, CVS has no reason to believe that Beneficial Holdings, Inc., is not headquartered in Utah. CVS admits that Beneficial Holdings, Inc., is a Nevada corporation and that it does business in Salt Lake City, Utah.

2. CVS admits that Beneficial Holdings, Inc., Beneficial Health Systems, Inc., and Beneficial Nutraceuticals, Inc. (referred to collectively as "Beneficial"), hired contemporary Marketing, Inc. ("CMI") as its agent to negotiate the sale of Beneficial's product, WillpowerRX, with CVS. It is CVS' understanding that CMI also negotiated the sale of Beneficial's products to other retailers (*See* Affidavit of Ed Ellis dated June 16, 2006 ("Ellis Aff."), ¶ 2).

3. CVS denies ever having actual knowledge of the contents of the Sales Representative Agreement between Beneficial and CMI. CVS, therefore is unable to admit what Beneficial and CMI agreed to, including the scope of CMI's authority. Moreover, since discovery is still in its infancy, CVS is unable to confirm or deny the validity of this fact. Regardless of the agreement between Beneficial and CMI, CMI had the apparent authority to bind Beneficial to contracts.

4. CVS admits that the purchase orders Beneficial referred to in paragraph 4 were issued by CVS following CMI's negotiations with CVS on Beneficial's behalf, Harvey Carmichael's direct negotiations with CVS, and after Harvey Carmichael sent CVS the June 10, 2004 letter ("the Carmichael Letter") agreeing to "Pay on Scan" payment terms (*See* Affidavit of Thomas Sullivan dated June 15, 2006 ("Sullivan Aff"),¶¶ 6-17, Ex. A; Ellis Aff., ¶¶ 3-5).

5. CVS admits that payment terms of "2% 30 Net 31" means that the buyer must pay for products it orders within 31 days of receipt of the seller's invoice, and that the buyer will receive a 2% discount if it pays within 30 days or less. CVS denies, however, that the purchase orders referred to in paragraph 4 provided that the payment terms were "2% 30 Net 31" or meant that CVS had to pay for the product that CVS ordered within 30 days of receipt of Beneficial's invoice. Though the purchase orders identified in paragraph 4 contained "2% 30 Net 31" language, the inclusion of such language was a mere typographical error and did not reflect the true intentions of the parties or the contract that the parties had previously agreed to (*See* Sullivan Aff., ¶¶ 20-27; Ellis Aff. ¶¶ 9, 12). Namely, it did not reflect the agreed upon "Pay on Scan" payment terms (*See* Sullivan Aff. ¶¶20-27; Ellis Aff., ¶ 12).

6. CVS denies that Beneficial accepted the purchase orders referenced in paragraph 4 by executing a written purchase order confirmation on a form prepared by CMI, or in any other manner. The written confirmation forms Beneficial identified were forms that Beneficial may have provided to CMI, but were never provided to CVS (*See* Sullivan Aff., ¶ 21). Moreover, Beneficial did not accept CVS' purchase orders since CVS had previously accepted the terms that Beneficial previously offered in the Carmichael Letter, including "Pay on Scan" payment terms (*See* Sullivan Aff., ¶ 19). After Beneficial issued its written offer on June 10, 2004, CVS orally accepted Beneficial's offer in its entirety, including the "Pay on Scan" payment terms(*See* Sullivan Aff., ¶ 19). Shortly thereafter, CVS issued purchase orders which contained typographical errors and contained "2% 30 Net 31" language instead of indicated "Pay on Scan" payment terms (*See* Sullivan Aff., ¶¶ 20-27; Ellis Aff., ¶¶ 9, 12). CVS' purchase orders were not offers or counteroffers for Beneficial to accept.

7. CVS admits the facts contained in this paragraph.

8. CVS admits that the price of the WillpowerRX in the purchase orders referenced in paragraph 4 totaled $1,103,328. Since Beneficial and CVS agreed to "Pay on Scan" payment terms, CVS would only be responsible for paying for units of WillpowerRX that CVS actually sold to its customers at its retail locations (*See* Sullivan Aff., ¶ 11; Ellis Aff., ¶ 12).

9. CVS admits that it has paid or Beneficial and/or Integrated Biopharma, Inc. ("Integrated Biopharma"), $100,807.42 for units of WillpowerRX that were sold at CVS' retail locations. Since this litigation has commenced, Beneficial has rejected all additional payments made by CVS (*See* Sullivan Aff., ¶ 36).

10. CVS is unaware of Beneficial's obligations to Integrated Biopharma as CVS was not a party to any financing or security agreements. Moreover since discovery is in its infancy, CVS is unable to confirm or deny the validity of this fact.

Respectfully submitted,

EDWARDS ANGELL PALMER &
DODGE LLP

Todd Reed, Esq. (#6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2006, a copy of the within document was mailed, via first class mail, to the following counsel of record:

David Wollin, Esquire
Adler Pollack & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

CharCretia V. DiBartolo, Esquire
Hinshaw & Culbertson LLP
127 Dorrance Street, 4th Floor
Providence, RI 02903

Nicholas Fortuna, Esquire
Jesse A. Kaplan, Esquire
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, NY 10016