UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS, INC.<br>Plaintiff,<br><br>v.<br><br>BENEFICIAL HOLDINGS, INC., et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 05-CV-171 T |

**REPLY BRIEF OF DEFENDANTS BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, BENEFICIAL NUTRACEUTICALS, INC. AND INTEGRATED BIOPHARMA, INC. IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

When the Court looks to the still *undisputed* evidence in the record, applies the only law applicable to this case, Utah law, properly excludes parol evidence and applies the law of mistake, there is only one conclusion: The only contracts that are enforceable as a matter of law in this case are the purchase orders that CVS sent to, and were accepted by, Beneficial and that the only agreed upon payment terms were 2% 30 Net 31. Contrary to CVS's argument, Harvey Carmichael's June 10, 2004 letter ("Carmichael letter") cannot create an enforceable contract *as a matter of law*. Accordingly, partial summary judgment should be granted in favor of Beneficial and Integrated Biopharma.

## ARGUMENT

## I. UNDISPUTED FACTS STILL EXIST FOR SUMMARY JUDGMENT

Despite CVS's submission of two affidavits, there are core undisputed facts still existing that call for summary judgment. As discussed further, CVS's factual submissions do not create genuine issues of material fact because they are either barred by the parol evidence rule or, as discussed later in connection with the Carmichael letter and the defense of mistake, do not defeat

summary judgment as a matter of law.[1] Indeed, in some instance, CVS's facts actually bolster Beneficial's and Integrated Biopharma's position. Even taking into consideration CVS's affidavits, there still is no dispute that:

1. Beneficial is a Nevada corporation headquartered and doing business in Salt Lake City, Utah. Undisputed Fact 1.

2. Beneficial hired Contemporary Marketing, Inc. ("CMI") as its agent to negotiate the sale of Beneficial's product, WillpowerRX™, with CVS. Undisputed Fact 2.

3. Although CVS claims it never saw the CMI Sales Representative Agreement, the terms of that Agreement are undisputed. The critical terms provide that:

-- No contractual arrangement would be formed until purchase orders were sent from CVS or other retailers and only when they were accepted by Beneficial. Undisputed Fact 3 (quoting paragraph 3 of the Sales Representative Agreement).

-- Offers from CVS and other retailers would only be in the form of purchase orders (contrary to CVS's unsubstantiated position that the purchase orders in this case were acceptances of a prior offer). Undisputed Fact 3 (same)

-- CMI had absolutely no authority and was prohibited from obligating or committing Beneficial to the sale or delivery of any product without Beneficial authorization and direction. Undisputed Fact 3 (same) ("Broker will not obligate or commit Principal to the sale or delivery of products without Principal's authorization and direction."). Thus, as a matter of fact and law, CMI could not obligate Beneficial to sell product on the basis of "pay on scan."

---

[1] Most of the facts alleged in the two affidavits submitted by CVS would be hotly disputed at trial, but Beneficial and Integrated Biopharma accept them as true solely for purposes of this motion for summary judgment.

4. CVS issued 55 purchase orders to Beneficial for purchase of WillpowerRX™. Undisputed Fact 4.

5. Each of the 55 purchase orders clearly and unambiguously provide that the payment terms are 2% 30 Net 31 ("Net 31") and make no mention of "pay on scan." Undisputed Fact 5.

6. Net 31 means that the buyer must pay for all the product its purchases within 31 days (and will receive a 2% discount if it pays within 30 days or less). Undisputed Fact 5.

7. Beneficial accepted the purchase orders in Utah when Harvey Carmichael executed a *written* purchase order confirmation on a form entitled "P.O. Confirmation." Undisputed Fact 6. Although CVS attempts to dispute that any purchase order confirmation occurred, CVS offers no substantive support for its argument and merely relies on the assertion that it never saw the confirmations. Simply pointing to bare allegations of fact is insufficient to create a genuine issue of fact. *Rivera v. Rhode Island*, 312 F. Supp. 2d 175, 178 (D.R.I. 2004), *aff'd,* 402 F.3d 27 (1st Cir. 2005).

8. Upon acceptance of the 55 purchase orders by Beneficial, the requested amount of WillpowerRX™ was shipped to and received by CVS. Undisputed Fact 7.

9. The total cost of the WillpowerRX™ as reflected in the purchase orders is $1,103,328. Undisputed Fact 8.

10. CVS has only paid Beneficial and/or Integrated Biopharma[2] a total of $100,807.42 for the WillpowerRX™ it purchased. Undisputed Fact 9.

---

[2] It is also undisputed that Integrated Biopharma has been assigned from Beneficial a portion of the accounts receivables due from CVS, and as of December 20, 2005, in connection with these receivables, Beneficial owes Integrated Biopharma the amount of $626,801.18. Undisputed Fact 10.

Thus, on the basis of these undisputed facts and the law set forth in Beneficial's opening memorandum of law, the following propositions of law apply: 1) Utah law applies (not Rhode Island), since the purchases orders, the only contracts authorized by the Representative Agreement that Beneficial agreed to review and accept, were not accepted until Harvey Carmichael did so in Utah[3]; and 2) CVS and Beneficial entered into 55 separate contracts for the sale of WillpowerRX™ obligating CVS to pay on the basis of Net 31 payment terms.[4] "In Utah, contracts mean what they say, and parties will be bound by them." *Russ v. Woodside Homes, Inc.*, 905 P.2d 901, 906 n.1 (Utah Ct. App. 1995).

## II. CVS CANNOT DEFEAT THE CLEAR AND UNAMBIGUOUS TERMS OF THE PURCHASE ORDERS BY RELYING ON PAROL EVIDENCE

CVS's first argument is that the affidavits of Tom Sullivan and Ed Ellis create genuine issues of material fact about the deal agreed upon and reflected in the purchase orders of Net 31. CVS claims that the purchase orders do not mean what they say because there was actually a different deal – a deal based on "pay on scan" terms. To the extent this argument relies on the assertions of Sullivan and Ellis to contradict the clear and unambiguous terms of the purchase orders, they are irrelevant as a matter of law under the parol evidence rule. (To the extent they are based on the Carmichael letter, that issue is addressed in Part III, *infra*.).

Under Utah law, the parol evidence rule operates in the absence of fraud to exclude prior and contemporaneous conversations, statements or representations offered for the purpose of

[3] *DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474, 484 (R.I. 2004) (acceptance of an offer or the final act which constitutes the making of a contract determines the state of completion).

[4] Utah Uniform Commercial Code ("UCC") §§ 70A-2-204(1); 70A-2-206(1)(b); *SII Medadiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 434 (Utah 1998) (ruling that orders sent to Utah supplier were offers that formed contracts when they were accepted and the goods shipped).

varying or adding to the terms of an integrated contact.[5] *Medianews Group, Inc. v. McCarthey*, __ F. Supp. 2d __, No. 2:03-CV-176 TS, 2006 WL 1129396, slip op. at *10 (D. Utah April 24, 2006) (Utah law). "Parol evidence is not so much *inadmissible* to vary the terms of an integrated writing as it is *irrelevant*, because 'the later agreement *discharges* the antecedent ones in so far as it *contradicts or is inconsistent with* the earlier ones.'" *Id.* (citation omitted). "The parol evidence rule is founded upon the principle that when the parties have discussed and agreed upon their obligations to each other, and reduced those terms to writing, that such terms, if clear and unambiguous, furnish better and more definite evidence of what was undertaken by each party than the too often fickle memory of man, for why else reduce it to writing." *Id.* at *11.

In this case, the oral assertions that Sullivan and Ellis make in an attempt to contradict the clear and unambiguous Net 31 payment terms in the purchase orders and instead to establish a different deal -- one based on pay on scan -- are irrelevant as a matter of law and must be rejected. *Id.* at *10; *Brown v. Richards*, 840 P.2d 143, 148 (Utah Ct. App. 1992) (barring parol evidence as to purchase price terms).[6] They cannot be used to defeat the clear and unambiguous terms of the purchase orders.[7]

## III. THE CARMICHAEL LETTER IS UNENFORCEABLE AS A MATTER OF LAW

CVS attempts to create a genuine issue by arguing that a separate contract based on the Carmichael letter (with "pay on scan" payment terms) was formed after Sullivan orally

[5] The only applicable exception to the parol evidence rule is the defense of mistake which is discussed in Part IV, *infra*.

[6] *See, e.g.*, Sullivan Affidavit at ¶¶ 9-10, 18-19, 23-24 (and exhibits); Ellis Affidavit at ¶¶ 3-9, 12 (and exhibits).

[7] CVS takes a swipe at Mr. Carmichael by citing a pending securities case in Utah. However, the case is just as irrelevant to this summary judgment motion as is CVS's payment of a $110 million settlement of a shareholders' lawsuit accusing the company of making misleading statements and violating accounting practices. www.msnbc.msn.com/id/8128625/.

"accepted" the terms of that letter and, presumably, later issued purchase orders. However, even accepting Sullivan's testimony (which is irrelevant under the parol evidence rule), the Carmichael letter is unenforceable as a matter of law for three *independent* reasons.

First, the Carmichael letter – which is merely designated a "proposal" – is not enforceable under the Utah UCC because it lacks any *quantity* terms. UCC 2-201(1) is crystal clear that a contract between merchants must contain the quantity of goods in order for it to be enforceable. Utah UCC § 70A-2-201 ("A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."). As the commentary to this rule makes clear, "[t]he only term which must appear is the quantity term . . ." Commentary to Utah UCC § 70A-2-201.[8] The case law addressing this issue is in accord. *See., e.g., Rosenfeld v. Basquiat*, 78 F.3d 84, 93 (2d Cir. 1996); *Omega Engineering., Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1090 (D. Conn. 1995). Thus, even assuming Sullivan orally "accepted" the Carmichael letter, there still was no agreement as to quantity and thus no enforceable contract arising from that proposal.[9]

The Carmichael letter is unenforceable for a second, independent reason. The letter was nothing more than an illusory contract, because CVS never promised to buy anything from

---

[8] Rhode Island's UCC 2-201(1) and commentary are identical.

[9] To the extent CVS is arguing, inconsistently, that the acceptance was the issuance of the purchase orders containing the Net 31 language (which in itself undermines CVS's argument of a "meeting of the minds" as to "pay on scan" terms), the undisputed CMI Sales Representative Agreement defeats that argument as a matter of law. Paragraph 3 of the Sales Representative Agreement establishes, unequivocally and without dispute, that CVS's purchase orders were offers that needed to be accepted by Beneficial to be enforceable, and that CMI had no authority to bind Beneficial otherwise. Moreover, even under Rhode Island law, the Carmichael letter became obsolete once CVS issued the purchase orders and Beneficial accepted them by acting upon them and filling the orders. *See Fleet National Bank v. 175 Post Road, LLC*, 851 A.2d 267, 273 (R.I. 2004).

Beneficial. *Vulcan Automotive Equipment, Ltd. v. Global Marine Engine & Parts, Inc.*, 240 F. Supp. 2d 156, 159 (D.R.I. 2003). CVS could have decided not to do business with Beneficial at any time, and Beneficial would have had no claim for breach of contract. *Id.* This was precisely the ruling that Judge Lagueux made in the *Vulcan Automotive* case applying Rhode Island law. In that case, this Court ruled that a November 10, 1999 letter exchanged between the buyer and seller in which the seller promised to supply marine engines and parts only to the buyer and the buyer in turn promised to keep its account current and in good standing with the seller was an illusory contract that failed for lack of mutuality of obligation. *Id.* Instead, Judge Lagueux ruled that the seller was entitled to recover damages because the buyer had breached the subsequent, numerous individual purchase orders, concluding: "An offer to create a new purchase and sales contract was made every time defendant sent plaintiff a purchase order. When delivery was made with the accompanying invoice in tow, the contract for sale was consummated, and defendant became obligated to pay for the goods supplied." *Id.* The United States District Court in Utah reached the same conclusion in a similar case in *Gull Laboratories, Inc. v. Diagnostic Technologies, Inc.*, 695 F. Supp. 1151, 1153-54 (D. Utah 1988). Likewise, in this case, the Carmichael letter is an illusory contract, failing for a lack of mutuality of obligation (and indeed quantity), and thus the purchase orders control in this case.

Third, the integration clause contained in CVS's Terms and Conditions (particularly paragraph 1), incorporated into every purchase order, precludes CVS from relying on the Carmichael letter to contradict the Net 31 payment terms. The language of paragraph 1 is clear and unambiguous in providing broadly that each purchase order is the "final, complete and exclusive statement of the terms of the agreement of the parties," and that, in case of conflict

between the purchase order and any terms or conditions on or in "any correspondence pertaining to . . . the merchandise," the purchase order's terms "shall control." Thus, the Terms and Conditions make it crystal clear that the purchase order terms trump any contrary or inconsistent language in the Carmichael letter.

CVS takes issue with this conclusion in two respects. Although CVS does not dispute the language of the Terms and Conditions, CVS argues that there is a genuine factual dispute about whether they apply to these purchase orders. To the contrary, CVS's own affidavit of Tom Sullivan, coupled with the language of the website (which CVS cites but conveniently fails to provide to the Court) establishes that they are applicable. Sullivan's affidavit establishes that, at the time CVS issued purchase orders to Beneficial, CVS's own website, www.cvssuppliers.com, contained supplier/vendor information for suppliers/vendors dealing with CVS including Beneficial. Sullivan Affidavit at ¶¶ 32-33.[10] The website told both Beneficial and other vendors that the Terms and Conditions, among other general terms and conditions, were a "critical" part of doing business with CVS. Entitled "Supplier Requirements & Information," the website indicated that the "following information is critical to doing business with CVS." (Exhibit 1 attached hereto).[11] The website listed a series of "General Terms & Conditions," including CVS's Terms and Conditions which were specifically named and contained a computer hyperlink to the actual Terms and Conditions. *Id.* Additionally, under the heading "Logistics"

---

[10] Sullivan's affidavit differs from the representation that CVS made to the Court during the summary judgment conference that the Terms and Conditions are inapplicable when a purchase order is faxed to a vendor as opposed to being sent via email through CVS's EDI system. CVS made that representation to convince the Court that there were genuine issues of material fact such that a summary judgment motion should not have been filed. CVS does not raise that faulty assertion in its papers.

[11] This document can be located at www.cvssuppliers.com/supplier_reqs.html.

on the same page, CVS indicated that "All suppliers *are expected to download* a copy of the CVS Routing Guide and Supplier Compliance Instructions, which contains detailed information about shipping requirements and other useful data. It is the supplier's responsibility to follow the terms." *Id.* (emphasis in original). The CVS Routing Guide, a copy of which Beneficial received from CVS and produced to CVS in discovery in this case (all as evidenced by Beneficial's bates stamp number), further confirmed that CVS's purchase orders to Beneficial contained the Terms and Conditions. *Id.* The Routing Guide provided in pertinent part: "The instructions apply to purchase orders issued by CVS/pharmacy and are incorporated by reference into the terms and conditions of all CVS/pharmacy purchase orders." *Id.* Thus, by Sullivan's own testimony (coupled with the actual website he references), the Terms and Conditions apply to the CVS purchase orders.

CVS's argument that it never specifically referred Beneficial to the website or informed Beneficial that the website contents would be incorporated into CVS's agreement is irrelevant in light of Sullivan's admission that the website was for vendors/suppliers dealing with CVS and the website's clear statement that the Terms and Conditions are "critical" requirements in dealing with CVS. Certainly, the terms of a contract can be based on documents extrinsic to the actual contract itself. *See Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930-31 & n. 17 (5th Cir. 1997) (ruling that liability limiting terms of airbill properly could be based on service guide that was readily available and written in plain language).

CVS also argues that, even if the Terms and Conditions are applicable, paragraph 1 only applies to conflicting terms made *subsequent to* the execution of the applicable contract. However, the plain language of paragraph 1 has no temporal limitation. Rather, the language

applies broadly to correspondence both before and after the purchase orders are issued. Hence, the integration clause should be enforced. Under Utah law, "[i]ntegration clauses such as these are routinely enforced to prevent a party from claiming that an agreement outside the contract changes, supersedes or adds to the terms of the written contract itself." *Medianews Group*, __ F. Supp.2d __, slip op. at *11.[12] The integration clause precludes CVS's reliance on the Carmichael letter as a matter of law.

## IV. CVS CANNOT CLAIM MUTUAL MISTAKE AS A MATTER OF LAW

CVS's last argument is that the Sullivan and Ellis affidavits create a genuine issue of material fact that there was a mutual mistake of fact about the payment terms, precluding entry of summary judgment. Even accepting the assertions from Sullivan and Ellis are relevant to the mutual mistake defense, CVS's defense fails as a matter of law for two independent reasons.

First, the record is devoid of the requisite clear and convincing evidence that there was a *mutual* mistake of fact. *John Call Engineering, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1209 (Utah 1987) (mutual mistake must be demonstrated by clear and convincing evidence). The evidence, even construed in CVS's favor, shows that CVS committed a mistake (a negligent one) about the terms of its own purchase orders, not Beneficial. CVS has failed to produce clear and convincing evidence that Beneficial (in particular Harvey Carmichael) both misunderstood the clear, explicit and unambiguous payment terms of "Net 31" in the purchase orders at the time they were issued and intended them to be "pay on scan," and there certainly is no such evidence as to Integrated Biopharma. *John Call Engineering, Inc. v. Manti City Corp.*, 743 P.2d 1205,

[12] The same is true under Rhode Island law. *East Greenwich Fire Dist. v. Henrikson*, 632 A.2d 641, 642 (R.I. 1993).

1207-10 (Utah 1987) (rejecting mutual mistake defense in the face of a clear and unambiguous contract that failed to be read).[13] CVS is left with merely a claim for *unilateral* mistake of fact, which is not a valid defense in this case because CVS has failed to establish that the mistake occurred despite CVS's exercise of due care in executing the purchase orders, that enforcement of the purchase orders would be unconscionable and that it would be possible to give relief without prejudicing Beneficial and Integrated Biopharma. *John Call Engineering*, 743 P.2d at 1209-10 (rejecting unilateral mistake defense for the same reasons); *Mabey v. Kay Peterson Construction Co.*, 682 P.2d 287, 291 (Utah 1984) (rejecting both mutual mistake and unilateral mistake defenses regarding price terms).

Second, even assuming, *arguendo*, that the mutual mistake defense were available, it fails as a matter of law. Utah law provides that the defense is unavailable when the mistake results from the party's negligence in failing to read a clear and unambiguous contract. *John Call Engineering*, 743 P.2d at 1208. "'[A] person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. If the contract is plain and unequivocal in its terms, he is ordinarily bound thereby.'" *Id.* (citations omitted). *See also Naisbitt v. Hodges*, 307 P.2d 620, 623 (Utah 1957) ("Evidence necessary to substantiate the mutual mistake of fact must be clear, definite and convincing, and the party seeking reformation

---

[13] *See* Sullivan Affidavit at ¶ 30 (conceding that Beneficial has claimed it would never agreed to "pay on scan" terms and the payment terms were "always" Net 31). Utah law would reject the use of the June 10, 2004 Carmichael letter as clear and convincing evidence of Beneficial's state of mind several weeks later when the first purchase orders were issued. *Briggs v. Liddell*, 699 P.2d 770, 773 n.1 (Utah 1985). The same is true for any alleged discussions occurring months after the purchase orders were issued when CVS sought to remove the Net 31 language and this dispute arose. *John Call Engineering*, 743 P.2d at 1209.

should not be guilty of negligence in the execution of the contract . . . ."). This rule of law follows from the principle that "each party has the burden to read and understand the terms of a contract" before signing it, and a party "may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense." *Id.*; *Russ*, 905 P.2d at 906 n.1. The rule is designed to "give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence were admissible." *Garff Realty Co. v. Better Buildings*, 234 P.2d 842, 844 (Utah 1951). Thus, in this case, CVS cannot claim the defense of mutual mistake because Sullivan, by his own admission, did not read any of the 55 purchase orders that were issued over a period of many months. CVS's own negligence precludes the defense as a matter of law. "The mere fact that [CVS] was at fault in not advising itself as to what was in the specifications does not amount in law to a mutual mistake but merely to negligence on its part." *Bowser v. Hamilton Glass Co.*, 207 F.2d 341, 3434 (7th Cir. 1953).

## CONCLUSION

Beneficial and Integrated Biopharma respectfully request that their motion for partial summary judgment be granted in their favor.

Respectfully submitted,

[signature]

David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607
Dated: July 6, 2006
*Attorneys for Beneficial Holdings, Inc.*
*Beneficial Health Systems, Inc.,*
*Beneficial Nutraceuticals, Inc. and*
*Integrated Biopharma, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of July, 2006, a copy of the foregoing was hand-delivered to:

Todd M. Reed, Esq.
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, R.I. 02903

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
127 Dorrance Street, 4th Floor
Providence, RI 02903

and a copy of the foregoing was mailed, U.S. first class postage, to the following:

Nicholas Fortuna Esq.
Jesse A. Kaplan, Esq.
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, New York 10016

_______________________

386070_1.doc