UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **CVS, INC.** | : | |
| | : | |
| **v.** | : | **C.A. No. 05-CV-171T** |
| | : | |
| **BENEFICIAL HOLDINGS, INC., et al.** | : | |

## CROSS CLAIMS AND AMENDED COUNTERCLAIM OF DEFENDANT INTEGRATED BIOPHARMA, INC.

Integrated BioPharma, Inc. (hereinafter, "Integrated"), counterclaims against plaintiff CVS, Inc. ("CVS") and cross-claims against Beneficial Holdings, Inc., Beneficial Health Systems, Inc., Beneficial Nutraceuticals, Inc. (hereinafter, collectively, "Beneficial") and Contemporary Marketing, Inc. ("CMI"), pursuant to Rule 13 of the Federal Rules of Civil Procedure.

FACTUAL BACKGROUND

1. Integrated is a Delaware corporation with a principal place of business in Hillside, New Jersey. Integrated is engaged in the business, among other things, of the contract manufacture of dietary supplements and additives.

2. CVS is a Rhode Island corporation with a principal place of business in Woonsocket, Rhode Island. CVS owns and operates a national chain of drug and convenience stores.

3. The three corporate entities comprising Beneficial are, on information and belief, Utah corporations with their principal places of

business in that state. Beneficial has sufficient contacts with the State of Rhode Island to make it amenable to suit in this Court.

4. CMI, on information and belief, is an Illinois corporation with a principal place of business in that state. CMI has sufficient contacts with the State of Rhode Island to make it amenable to suit in this Court.

5. Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a).

7. On information and belief, Beneficial is engaged in the business of contracting for the manufacture of consumer products in the field of dietary supplements, and distributing those products to national chain retailers. One of the products Beneficial claims to own is a dietary supplement called WillpowerRx.

8. On information and belief, CMI is a marketing and sales representative firm holding itself out as having the ability to place product of its customers with large retailers. On information and belief, Beneficial engaged the services of CMI to assist it in the marketing and sale of WillpowerRx to national chain retailers.

9. On information and belief, CMI arranged for Beneficial to enter into a relationship with CVS under which CVS agreed to purchase WillpowerRx from Beneficial and place WillpowerRx in its stores.

10. Both CVS and CMI knew that Beneficial was not a manufacturer of WillpowerRx, and that Beneficial would be required to make arrangements with a manufacturer to produce WillpowerRx for sale to CVS.

11. In 2004, with the knowledge of CMI, CVS issued multiple purchase orders to Beneficial for WillpowerRx, with payment terms denominated as "2% 30 Net 31." The payment terms 2% 30 Net 31(hereinafter, "Net 31") on a CVS purchase order mean that CVS will pay the invoice price, less a discount of two percent, within 30 days of the date of the invoice, or pay the full amount of the invoice if it is paid after 30 days. Such purchase orders constituted a promise by CVS to pay for product on Net 31 terms. CVS and CMI knew or reasonably should have known that the CVS promise to pay WillpowerRx invoices on Net 31 terms would induce third parties, including third parties that may provide Beneficial financing, or may manufacture product for Beneficial, to take action in reliance on that promise.

12. In 2004, Beneficial approached Integrated to ask it to be its manufacturer of WillpowerRx for sale to CVS. In its presentation to Integrated, Beneficial represented that it had obtained the agreement of CVS to place WillpowerRx in its stores, and to purchase WillpowerRx from Beneficial under Net 31 terms.

13. Beneficial provided to Integrated copies of the Net 31 purchase orders that it had received from CVS for WillpowerRx, as an inducement to

Integrated to advance Beneficial financing for its WillpowerRx program. In reliance on the CVS net 31 purchase orders, Integrated entered into a financing agreement with Beneficial, and, pursuant to that agreement, advanced funds in excess of $245,000 to Beneficial in support of its WillpowerRx program. As collateral for the financing, Integrated received a security interest in and assignment of purchase orders issued to Beneficial by CVS.

14. Following Integrated's initial financing of Beneficial's WillpowerRx program based on the CVS Net 31 purchase orders, Integrated, through its subsidiary Manhattan Drug Company, agreed to manufacture WillpowerRx for Beneficial, and ship the WillpowerRx to CVS, on extended payment terms. Integrated was induced to provide manufacturing for Beneficial on such terms in reliance on the CVS Net 31 purchase orders that had been, and were continuing to be, issued by CVS to Beneficial for the WillpowerRx.

15. Integrated manufactured WillpowerRx for Beneficial, and shipped the WillpowerRx to CVS, pursuant to the CVS Net 31 purchase orders. The total cost of the WillpowerRx that Integrated manufactured and shipped in reliance on the CVS purchase orders is in excess of $400,000.

16. Integrated would never have advanced funds to Beneficial, or manufactured and shipped WillpowerRx to CVS, but for the existence of the CVS purchase orders with Net 31 terms.

17. CVS received the benefit of the WillpowerRx that was shipped to its stores by Integrated.

18. Beneficial notified CVS and CMI that CVS was to make payment on the purchase orders for WillpowerRx directly to Integrated, to pay Integrated for the advance financing and the costs of the manufacture of the WillpowerRx. CVS acknowledged that direction.

19. CVS made payment of some of the Net 31 purchase orders to Beneficial for WillpowerRx according to their terms, and made the payment directly to Integrated, as directed by Beneficial. Total payments made by CVS on the purchase orders amounted to approximately $82,000. Thereafter, CVS has refused to make further payment of the purchase orders for WillpowerRx.

20. According to statements made in papers filed with CVS's authority in this litigation, which statements constitute judicial admissions, CVS never intended the purchase orders to be payable on Net 31 terms, and always intended that it would only pay for WillpowerRx based on actual sales of the product in its stores.

21. According to statements made in papers filed with CMI's authority in this litigation, which statements constitute judicial admissions, CMI was aware that CVS never intended the purchase orders to be payable on Net 31 terms, and that CVS always intended that it would only pay for WillpowerRx based on actual sales of the product in its stores.

## AMENDED COUNTERCLAIM

### COUNT I
### Breach of Contract

22. The CVS Net 31 purchase orders constituted offers to purchase goods according to Net 31 terms. Beneficial accepted the offers by causing goods to be shipped to CVS under the purchase orders. On Beneficial's acceptance, the purchase orders became contracts binding CVS to the payment terms.

23. Beneficial fulfilled its promises under the purchase orders by shipping the product to CVS in accordance with the terms of the purchase orders.

24. CVS accepted the product shipped to it under the purchase orders issued to Beneficial.

25. CVS breached its contracts by failing to pay in accordance with the contract terms.

26. CVS is liable to Beneficial for payment for the goods shipped to and accepted by CVS pursuant to the purchase orders.

27. Integrated is the assignee of a portion of the accounts receivable owed by CVS to Beneficial, and is owed the amounts due by CVS.

28. Integrated has sustained damages as a consequence of CVS's breach of contract.

## COUNT II
## Third Party Beneficiary

29. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

30. Integrated was a third party beneficiary of the contracts between CVS and Beneficial.

31. CVS has breached its obligations under the contracts with Beneficial.

32. Integrated has suffered damages as a consequence of CVS's breaches, which damages were foreseeable to CVS.

## COUNT III
## Quantum Meruit-Unjust Enrichment

33. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

34. Integrated provided a product to CVS for which it has not been paid.

35. A benefit was conferred on CVS by Integrated, for which CVS has not paid and by which CVS has been unjustly enriched at the expense of Integrated.

## COUNT IV
## Promissory Estoppel

36. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

37. CVS's promise of payment of the purchase orders on Net 31 terms foreseeably induced Integrated to take action to its detriment in reliance on the promise.

38. Integrated advanced funds and manufactured and shipped product in reasonable reliance on CVS's promise, and has not been repaid.

39. Integrated would suffer an injustice if CVS were permitted to avoid its promise of payment according to the terms of the purchase orders.

**COUNT V**
**Misrepresentation**

40. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

41. CVS's purchase orders containing the promise of payment on Net 31 terms were a material misrepresentation of CVS's intention regarding payment for product it ordered.

42. CVS's misrepresentations regarding its intention to pay for product purchased under the purchase orders were intentional, and were stated for the purpose of inducing Integrated to supply it with product when it knew Integrated would never manufacture and ship such product if it were aware of CVS's real intentions.

43. If CVS's material misrepresentations were not intentional, then they were made negligently, with the purpose of inducing Integrated to supply it with product when it knew or should have known that Integrated

would never manufacture and ship such product if it were aware of CVS's real intentions.

44. Integrated reasonably relied on CVS's misrepresentations, to its detriment and damage.

**COUNT VI**
**Book Account**

45. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

46. CVS owes Integrated, as assignee of a portion of Beneficial's accounts receivable, an account for CVS's failure to pay the invoices issued on the product it purchased.

47. Accordingly, Integrated is entitled to an award of damages against CVS on account of the product it received and for which it has not paid.

WHEREFORE, Integrated demands judgment against CVS for compensatory damages in amount in excess of $600,000, plus interest and costs.

**CROSS CLAIM AGAINST BENEFICIAL**

**COUNT I**
**Breach of Contract**

48. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

49. Beneficial contracted with Integrated to have Integrated manufacture and ship WillpowerRx to CVS. Beneficial promised to pay Integrated for all of the product Integrated manufactured.

50. Integrated fully performed its contract with Beneficial by manufacturing and shipping WillpowerRx as requested by Beneficial.

51. Beneficial has breached its contract with Integrated in that it has not paid Integrated for the product Integrated manufactured and shipped.

52. Integrated has suffered money damages as a result of Beneficial's breach, and, further has been caused to incur legal fees and expenses.

**COUNT II**
**Book Account**

53. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

54. Beneficial owes Integrated an account for Beneficial's failure to pay for the product Integrated and shipped at Beneficial's order.

55. Accordingly, Integrated is entitled to an award of money damages against Beneficial on account of the product it received and for which it has not paid.

**COUNT III**
**Fraud**

56. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

57. Beneficial knew that CVS did not intend to honor the purchase orders it issued to Beneficial containing payment terms of Net 31. At the very least, Beneficial had reason to question the validity of the Net 31 payments terms of the purchase orders.

58. Beneficial nevertheless presented the CVS Net 31 purchase orders to Integrated as being valid and accurate expressions of CVS's promise to pay.

59. Beneficial presented the CVS purchase orders to Integrated for the purpose of inducing Integrated to provide financing to Beneficial, and to provide manufacturing of product to Beneficial on credit.

60. Beneficial had an obligation to inform Integrated of the reasons it had to question the validity of the Net 31 payment terms of the purchase orders. Nevertheless, Beneficial deliberately failed to inform Integrated of its doubts, and intentionally withheld from Integrated its knowledge that CVS did not intend to honor the Net 31 payment terms of the purchase orders.

61. Beneficial's failure to inform Integrated of its knowledge and reasons to question the validity of the Net 31 payment terms of the purchase orders was a material misrepresentation.

62. Integrated reasonably relied on the material misrepresentations of Beneficial in agreeing to enter into financing of Beneficial and to manufacture product for Beneficial on credit terms.

63. Integrated's reliance on Beneficial's misrepresentations has caused it to suffer money damages by virtue of non-payment of its invoices for manufacturing product, and in causing Integrated to incur legal fees and related litigation expenses.

WHEREFORE, Integrated demands judgment against Beneficial for compensatory damages in amount in excess of $650,000, plus interest and costs.

**CROSS CLAIM AGAINST CMI**
**COUNT I**
**Fraud**

64. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

65. CMI was aware of the value to a business entity such as Beneficial of a relationship as distributor of products to a national retail chain such as CVS, particularly a relationship in which CVS promised to purchase product on net 31 payment terms.

66. CMI knew or should have known that Beneficial would utilize the CVS purchase orders in its relations with third parties, including its lenders and manufacturer.

67. CMI knew or should have known that Integrated would rely on the CVS Net 31 purchase orders in deciding whether to enter into a financing and manufacturing relationship with Beneficial, and that Integrated would likely be induced by the purchase orders to agree to those relationships.

68. CMI had a duty in the circumstances to act to inform Beneficial and Integrated of its knowledge that CVS had no intention of honoring the payment terms of the purchase orders that CVS had issued.

69. CMI failed to inform beneficial or Integrated of its knowledge that CVS would refuse to honor the terms of the purchase orders it issued to Beneficial. Such failure to inform constituted a material misrepresentation.

70. Beneficial and Integrated reasonably relied on the misrepresentation by CMI, to their detriment. Integrated has suffered money damages as a result.

**COUNT II**
**Promissory Estoppel**

71. Integrated realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

72. On information and belief, CMI ratified and adopted the Net 31 payment terms of the CVS purchase orders in its communications with Beneficial. Specifically, CMI represented to Beneficial that it was able to obtain Net 31 payment terms from CVS for Beneficial because of CMI's close relationship to and influence on CVS.

73. CMI knew, or should reasonably have foreseen that its representation that it had been able to obtain Net 31 payment terms would induce third parties such as Integrated to take action in reliance on the representation.

74. In reasonable reliance on CMI's representation, Integrated was induced to provide financing for Beneficial, and to manufacture product for Beneficial on credit terms.

75. CVS's refusal to honor the payment terms as represented by CMI has caused Integrated to suffer money damages.

WHEREFORE, Integrated demands judgment against CMI for compensatory damages in amount in excess of $650,000, plus interest and costs.

INTEGRATED DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Integrated BioPharma, Inc.,
By its attorneys,

**R. DANIEL PRENTISS, P.C.**

/s/R. Daniel Prentiss
R. Daniel Prentiss (#0783)
One Financial Plaza, Suite 1800
Providence, RI 02903
(401) 824-5150
(401) 824-5123 (fax)
dan@prentisslaw.com

## CERTIFICATION

I hereby certify that on this 22nd day of December, 2006, this document was served by first class mail, postage prepaid, to the following counsel of record.

Todd M. Reed, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

Nicholas Fortuna, Esq.
Jesse A. Kaplan, Esq.
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, NY 10016

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
127 Dorrance Street, 4th Floor
Providence, RI 02903

Jacquelynn D. Carmichael, Esq.
Eisenberg, Gilchrist & Morton
900 Parkside Tower
215 South State Street
Salt Lake City, UT 84111

/s/R. Daniel Prentiss