UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS, INC. | : | |
| | : | |
| v. | : | C.A. No. 05-CV-171T |
| | : | |
| BENEFICIAL HOLDINGS, INC., et al. | : | |

**MOTION OF INTEGRATED BIOPHARMA, INC. TO COMPEL PRODUCTION OF DOCUMENTS**

Integrated BioPharma, Inc. ("Integrated") seeks an order compelling Crossclaim Defendant Contemporary Marketing, Inc. ("CMI") to provide documents responsive to Requests 1, 2 and 3 of its Second Request for Production of Documents. Discovery has established that responsive documents exist and are in the control of CMI's officer and employee. However, CMI has refused to produce the documents.

**Background**

This case arises out of a large volume of purchase orders issued by CVS for a dietary supplement product marketed by the defendant Beneficial Health Systems ("Beneficial"). Integrated was the manufacturer of the product. During 2004 and 2005, CVS issued upwards of 40 separate purchase orders for the product. Integrated manufactured and shipped the product to CVS in response to the purchase orders; Beneficial issued invoices to CVS relative to the purchase orders, and CVS in turn made payments to Integrated for some of the purchase orders. The purchase orders contained

payment terms; on many, the payment term was "2%30net31"; on others, the payment term was blank. CVS claims that the "2%30net31" term was inserted by mistake.

At deposition and by affidavit, Edwin Ellis, a current officer and employee of CMI, has testified that in two telephone conferences and at one in-person meeting, Harvey Carmichael, a representative of Beneficial, agreed to and confirmed purchase terms other than "2%30net31". Integrated disputes the substance of these discussions and whether they took place at all.

At deposition, Ellis testified:

Q: When did you first learn that CVS had issued purchase orders for the Beneficial product?

A: In June, the first – the week after the Fourth of July.

Q: in July, then you mean?

A: I'm sorry, in July. I'm sorry.

Q: How did you learn?

A: Harvey called me, I was standing on a soccer field in Rider, New Jersey watching my son's game, and he told me he had received the POs.

. . .

Q: Did Harvey - - you said to Harvey, it's still pay-on-scan?

A: Yes.

Deposition of Edwin Ellis at 53:17 – 53:14

Ellis testified that the terms were discussed in a second telephone conversation:

A: . . .

> At that point I told him [Carmichael] that he couldn't because it was a pay-on-scan deal, that it has always been a pay-on-scan deal. It was never anything but a pay-on-scan deal.
>
> . . .
>
> So after I hung up with him, I called Mike Oken, told him about it, tried Darren Lopez and Darren didn't answer. I called Adam [Satin] and explained to him that it couldn't happen, and then Stewart [Laskin].

Ellis Dep. at 67:15 – 18.

Ellis testified by affidavit that Carmichael attended an in-person meeting at which CVS and CMI claim an agreement was made or confirmed:

> In May 2004, I attended a WillpowerRX planning meeting in Buffalo Grove, Illinois. At the planning meeting, Harvey Carmichael and Darren Lopez, a consultant to Beneficial, discussed and acknowledge [sic] that Beneficial would agree to "Pay on Scan" payment terms. . .

Affidavit of Edwin Ellis at ¶4.

At deposition, Ellis changed his testimony from his earlier affidavit:

Q: Let's start with the date. Was the meeting in March or April of 2005, or was it in May 2004?

A: It was in the spring of 2004. I think it was in March or April just because since I have gone over my flights to Buffalo Grove since this meeting.

Q: When you say you have gone over your flights to Buffalo Grove, what did you look at?

A: My credit card receipts.

Q: So when you signed this [affidavit] nine months ago and you said May 2004 was the date of the meeting or the month of the meeting, that was without relating it to your credit card receipts?

A: Correct.

. . .

Q: It also says Darren Lopez was present at the meeting?

A: That was a mistake as well.

Ellis Dep. at 56:24 – 57:12

Integrated maintains that these discussions did not take place, including the fact that Carmichael was not present at the spring meeting. Accordingly, in order to investigate these facts and determine the credibility of Ellis's testimony, Integrated served the following requests on CMI and received the following responses:

**REQUEST NO. 1:**

Appointment books, diaries, airline or flight records, rental car records, credit card records, notes or memoranda of any kind that document the trip to Providence, Rhode Island by Edwin Ellis during which he met at CVS with Harvey Carmichael and Thomas Sullivan.

**RESPONSE NO. 1:**

CMI objects to this request on the grounds that it is overly broad in time and scope, unduly burdensome and otherwise beyond the scope of discovery provided for by the Federal Rules of Civil Procedure.

Without waiving the foregoing objection and subject thereto, CMI states that it has no documents in its care, custody or control which are responsive to this request.

**REQUEST NO. 2:**

The cell phone record for Edwin Ellis that covers July 2004 for the telephone on which he received a telephone call from Harvey Carmichael in Rider, New Jersey in July 2004.

**RESPONSE NO. 2:**

CMI states that it has documents in its care, custody or control which are responsive to this request.

**REQUEST NO. 3:**

The telephone records for the telephone used by Edwin Ellis for making the telephone calls to Adam Satin and Stewart Lask in August or September, 2004, as testified to by Mr. Ellis at page 67 of his deposition.

**RESPONSE NO. 3**

CMI states that it has no documents in its care, custody or control which are responsive to this request.

**Argument**

CMI's refusal to produce these requested documents is unfounded. As set forth in the above-referenced deposition testimony, the documents clearly exist. The documents are within the care, custody and control of CMI under Fed. R. Civ. P. Rule 34. A corporation is required to produce items in possession of one of its officers or employees when those items were created in connection with the officer or employee's function in connection with the company. *Riddell Sports, Inc. v. Brooks*, 158 F.R.D. 555, 558-6 (S.D.N.Y.

1994). The requested documents – phone records, receipts and other evidence of travel – were clearly created in connection with Ellis's work for CMI. They directly relate to and evidence contacts between the parties during the period of formation of the agreement between Beneficial and CMI. The only ostensible reason for CMI's refusal to produce the documents is that it dislikes what those documents may show. That is not a basis that is recognized under the Federal Rules of Civil Procedure and CMI is without a legitimate basis to refuse to produce the documents.

Respectfully submitted,
Integrated BioPharma, Inc.,
By its attorneys,

**R. DANIEL PRENTISS, P.C.**

/s/ R. Daniel Prentiss
R. Daniel Prentiss (#0783)
One Turks Head Place, Suite 380
Providence, RI 02903
(401) 824-5150
(401) 824-5181 (fax)
dan@prentisslaw.com

## CERTIFICATION

I hereby certify that on this 17th day of May, 2007, this document was filed electronically and is available for reviewing and downloading to the ECF registered counsel of record.

Todd M. Reed, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

Nicholas Fortuna, Esq.
Jesse A. Kaplan, Esq.
Allyn & Fortuna LLP
200 Madison Avenue, 5th Floor
New York, NY 10016

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
127 Dorrance Street, 4th Floor
Providence, RI 02903

Jacquelynn D. Carmichael, Esq.
Eisenberg, Gilchrist & Morton
900 Parkside Tower
215 South State Street
Salt Lake City, UT 84111

/s/ R. Daniel Prentiss