UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

CVS PHARMACY, INC.

Plaintiff,

- against - Civil Action No.:05-171-T

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC., INTEGRATED BIOPHARMA, INC., and CONTEMPORARY MARKETING , INC.

Defendants.

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS INTEGRATED BIOPHARMA, INC.**

The plaintiff, CVS Pharmacy, Inc. ("CVS"), by its attorneys, Edwards Angell Palmer & Dodge L.L.P., respectfully requests an order pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment with respect to counts 1 and 2 of defendant Integrated BioPharma, Inc.'s ("Integrated") amended counterclaim for breach of contract, count 4 of Integrated's amended counterclaim for promissory estoppel, count 5 of Integrated's amended counterclaim for misrepresentation, and count 6 of Integrated's amended counterclaim for a book account. The grounds for this motion are set forth in the accompanying memorandum of law.

Respectfully submitted,

EDWARDS ANGELL PALMER &
DODGE LLP

By:___/s/ Todd M. Reed__________
Todd Reed, Esq. (# 6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June, 2007, I did send a true copy of the within document by ECF and regular mail, to the following:

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
155 South Main Street, Suite 304
Providence, RI 02903

Beneficial Holdings, Inc., Beneficial Health Systems, Inc.
and Beneficial Nutraceuticals, Inc.
c/o Jacquelynn D. Carmichael, Esq.
Eisenberg, Gilchrist & Morton
900 Parkside Tower
215 South State Street
Salt Lake City, Utah 84111

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Turks Head Place, Suite 380
Providence, RI 02903

/s/ Todd M. Reed

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CVS PHARMACY, INC.

Plaintiff,

- against -

Civil Action No.: 05-171-T

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC.,
BENEFICIAL NUTRACEUTICALS, INC.,
INTEGRATED BIOPHARMA, INC., and
CONTEMPORARY MARKETING , INC.

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT INTEGRATED BIOPHARMA, INC.**

Plaintiff CVS, Inc. ("CVS"), respectfully submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment with respect to counts 1 and 2 of defendant Integrated BioPharma, Inc.'s ("Integrated") amended counterclaim for breach of contract, count 4 of Integrated's amended counterclaim for promissory estoppel, count 5 of Integrated's amended counterclaim for misrepresentation, and count 6 of Integrated's amended counterclaim for a book account.[1]

## INTRODUCTION

Based on its mere status as one of the creditors of defendants Beneficial Holding, Inc., Beneficial Health Systems, Inc., Beneficial Nutraceutical, Inc (referred to collectively as "Beneficial"), Integrated seeks to essentially enforce a contract that it was not a party to and hold

[1] Integrated has also voluntarily discontinued count 3 (Unjust Enrichment) of its amended counterclaim against CVS.

CVS responsible for Beneficial's failure to repay Integrated for Beneficial's debts. After engaging in negotiations with Beneficial, CVS entered into a contractual relationship with Beneficial regarding the purchase of a weight loss supplement called WillpowerRx. As a result, CVS began issuing purchase orders to Beneficial. Unbeknownst to CVS, Beneficial allegedly obtained financing from Integrated that was allegedly secured by Beneficial's accounts receivables. Integrated has asserted a number of claims arising out of purchase orders that CVS issued to Beneficial. Under these over-expansive claims, CVS would be subject to almost unlimited liability to any of Beneficial's potential creditors based on the mere fact that it was theoretically possible that Beneficial could obtain financing utilizing Beneficial's CVS receivables.

Even though CVS was unaware that Beneficial would obtain financing from a third party based on CVS' purchase orders, Integrated claims that CVS either negligently or fraudulently made misrepresentations to Integrated by issuing purchase orders to Beneficial. Integrated's claim for negligent misrepresentation must fail as a matter of law as CVS did not owe Integrated, an unintended recipient of CVS' purchase orders, a duty of care. Likewise, Integrated's claim for fraudulent misrepresentation must fail as CVS certainly did not issue its purchase orders to Beneficial with the intent to deceive anyone, let alone Integrated.

Integrated also asserted two breach of contract claims and a claim for a book account against CVS, all of which seem to incorrectly rely on the mere fact that Integrated is one of Beneficial's secured creditors.[2] As Integrated was neither a party nor an intended beneficiary of the contract between CVS and Beneficial, Integrated does not have standing to assert a breach of contract claim against CVS in its own right. Likewise, it is not entitled to an accounting.

---

[2] Integrated alleges that it was assigned a portion of Beneficial's accounts receivables.

Finally, Integrated has asserted a claim for promissory estoppel against CVS. Integrated alleged that it should receive the benefit of the payment terms that CVS allegedly promised to Beneficial in CVS' purchase orders. While Integrated's claim that CVS actually promised such payment terms is dubious in itself, Integrated has no standing to enforce such an alleged promise as it is undisputed that Integrated was not an intended beneficiary of CVS' purchase orders. Moreover, the record is devoid of any facts that support Integrated's contention that CVS should have reasonably expected Integrated to take action based on purchase orders that CVS issued to Beneficial. Since CVS was unaware of the mere existence of a relationship between Beneficial and Integrated, let alone that Beneficial was going to obtain financing from Integrated utilizing CVS' purchase orders, there was no reason for CVS to expect that Integrated would make advances to Beneficial in alleged reliance on CVS' purchase orders.

## ARGUMENT

### I. Integrated's Fifth Count (Misrepresentation)

Though Integrated alleged a single count of misrepresentation, in reality Integrated has alleged two separate causes of action against CVS for both negligent misrepresentation and fraudulent/intentional misrepresentation. Pleading in the alternative, Integrated essentially alleged that if CVS and Beneficial agreed to Pay on Scan payment terms, CVS induced Integrated to advance monies to Beneficial in reliance on language in some of CVS' purchase orders containing alleged misrepresentations as to payment terms (*See* Integrated's Amended Counterclaim, ¶¶ 13, 40-44).[3] Integrated alleged that CVS either intentionally or negligently made these misrepresentations (*See* Integrated's Amended Counterclaim, ¶¶ 40-44). CVS is entitled to summary judgment as to both claims. To begin with, Integrated's claim for negligent

[3] For the purpose of this motion, CVS does not address whether its purchase orders contained misrepresentations or whether Integrated reasonably relied on CVS' purchase orders.

misrepresentation fails as a matter of law because CVS did not owe Integrated a duty of care. Likewise, Integrated's claim for fraudulent/intentional misrepresentation also fails as a matter of law because it is undisputed that CVS did not issue its purchase orders with the intent to deceive anyone, let alone Integrated.

### A. Negligent Misrepresentation: CVS did not owe Integrated a duty of care.

CVS did not owe Integrated a duty of care as CVS never intended to influence Integrated or any other third-parties, and certainly had no knowledge that Beneficial intended to use CVS' purchase orders to influence either Integrated or any other third-parties that would potentially provide Beneficial with financing. Rather, CVS merely issued its purchase orders to order goods from Beneficial. Accordingly, summary judgment is appropriate with respect to the portion of count 5 of Integrated's amended counterclaim for negligent misrepresentation.

A defendant cannot be held liable under a negligence theory unless the defendant owes a duty of care to the plaintiff and that duty has been breached. *See Hydro-Manufacturing, Inc. v. Kayser-Roth Corp.*, 640 A.2d 950 (R.I. 1994); *Ryan v. State Department of Transportation,* 420 A.2d 841 (R.I. 1980). Whether a duty exists in a particular factual situation is a question of law. *See Ferreira v. Strack,* 636 A.2d 682 (R.I. 1994).

A defendant's potential liability for negligent misrepresentation must have reasonable boundaries. *See Forcier v. Cardelo,* 173 B.R. 973, 983 (D.R.I 1994). "It is not enough that the maker merely knows of the ever-present possibility of repetition [of information supplied by him] to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." *Forcier,* 173 B.R. at 983, *citing* Restatement (Second) of Torts § 552 cmt. h (1977). Thus, the law must not arbitrarily extend liability beyond a defendant's reasonable expectations as to whom the information will reach. *See Forcier,* 173 B.R. at 983. Courts

should not impose on a defendant open-ended liability to third-parties that the defendant was not in contractual privity with. *See Dowling v. Narragansett Capital Corp.*, 735 F.Supp. 1105, 1125 (D.R.I. 1990). Such exposure has been described as "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Forcier,* 173 B.R. at 981, *quoting Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 444 (1931); *Dowling,* 735 F.Supp. at 1125. A duty of care is only extended to a "foreseen and limited classes of persons." *Rusch Factors, Inc. v. Levin,* 284 F.Supp. 85, 92-93 (D.R.I. 1968).

In order to deal with a defendant's potentially limitless exposure, the courts have essentially adopted the limitations on liability set forth in the Restatement (Second) of Torts § 552(2) which states as follows:

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1)[4] is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552

Accordingly, in order to establish that CVS owed Integrated a duty of care, Integrated must prove either (1) that Integrated is a member of a class which CVS intended its purchase orders to benefit/influence and that Integrated's reliance would be foreseeable; or (2) that Integrated is a member of a class of persons which Beneficial intended the purchase orders to benefit/influence, that CVS knew of Beneficial's intent at the time that it prepared the purchase

[4] (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Restatement (Second) of Torts § 552.

orders, and that Integrated's reliance would be foreseeable. *See Dowling,* 735 F.Supp. 1125 (limiting an investment bank's duty to company's shareholders to circumstances where the investment bank was hired by the company for the specific purpose of guiding the company's shareholders); *Rusch Factors, Inc.,* 284 F.Supp. at 91 (limiting accountants' duty to corporation's creditor to circumstances where the accountants actually knew the plaintiff and prepared the balance sheets for him); *Forcier,* 173 B.R. at 983.

Here, when CVS issued the purchase orders, it was unaware of any relationship between Beneficial and Integrated (*See* Undisputed Fact 15). When negotiating CVS' purchase of WillpowerRX, Beneficial and its representatives never discussed or identified Integrated (*See* Undisputed Fact 15). Such a discussion would have been impossible since according to Integrated, Beneficial did not begin conducting business with Integrated until August 2004 (*See* Undisputed Fact 15). In fact, Beneficial's President and principal, Harvey Carmichael, admits that he never discussed Integrated with either CVS or Beneficial's sales representative and product broker, Contemporary Marketing, Inc., ("CMI") (*See* Undisputed Fact 16).

Aside from the fact that CVS was unaware of Integrated, CVS neither intended nor knew that Beneficial was going to use CVS' purchase orders, or the content of those purchase orders, to influence third-parties to provide Beneficial with financing. Likewise, CVS obviously did not issue its purchase orders with the intention of influencing potential third-parties that might provide Beneficial with financing. Rather, CVS issued purchase orders to Beneficial for the sole purpose of ordering goods from Beneficial (*See* Undisputed Fact 10). When negotiating CVS' purchase of WillpowerRX, Beneficial and its representatives never told CVS that Beneficial intended on or was contemplating assigning its receivables to a third-party and/or receiving financing from a third-party using its receivables as collateral (*See* Undisputed Fact 19). In fact,

Beneficial and its representatives never even mentioned that Beneficial was going to or might obtain any financing, let alone the specific nature of how it would obtain such financing (*See* Undisputed Fact 19). Furthermore, Harvey Carmichael admits that he never communicated to CVS or directed CMI to communicate to CVS that Beneficial allegedly did not have sufficient cash reserves or cash flow to supply CVS with WillpowerRX (*See* Undisputed Fact 20).

In addition to the fact that Beneficial never disclosed to CVS that it might obtain financing using CVS' purchase orders, CVS never even contemplated that Beneficial would try to or would be able to obtain such financing. As the parties had discussed and agreed upon Pay on Scan payment terms, it would have been unlikely that Beneficial would be able to obtain financing based on Beneficial's CVS receivables since payment by CVS was contingent on the ultimate sales performance of WillpowerRX (*See* Undisputed Fact 21). Moreover, as CVS' category manager for vitamin supplements and the person responsible for entering into contracts for that category, Tom Sullivan had never previously been involved in a deal where to his knowledge, a vendor used CVS' purchase orders to obtain financing (*See* Undisputed Fact 21).

As CVS neither intended nor knew that Beneficial intended on using CVS purchase orders, or the content of those purchase orders, to influence third-parties to provide Beneficial with financing, CVS did not owe Integrated a duty of care when issuing its purchase orders to Beneficial.

**B. Fraudulent/Intentional Misrepresentation: CVS did not issue purchase orders to Beneficial with the intent to deceive integrated.**

Summary Judgment is appropriate with respect to the portion of count 5 of Integrated's amended counterclaim for fraudulent/intentional misrepresentation as it is undisputed that CVS did not issue its purchase orders to Beneficial with the intent to deceive Integrated. In Rhode Island, common law fraud has four elements: (1) a false or misleading statement of material fact

that was (2) known by the defendant to be false and (3) made with intent to deceive, (4) upon which the plaintiff relies to its detriment. *See B.S. Int'l Ltd. v. Licht*, 696 F.Supp. 813, 827 (D.R.I. 1988); *McGovern v. Crossley*, 477 A.2d 101, 103 (R.I. 1984); *Halpert v. Rosenthal*, 107 R.I. 406, 412, 267 A.2d 730, 733 (1970).[5]

Here, it is undisputed that CVS did not and could not have issued its purchase orders to Beneficial with the intent of deceiving Integrated. As previously discussed in detail, when it issued the purchase orders allegedly relied upon by Integrated, CVS was unaware of the very existence of a relationship between Beneficial and Integrated, let alone the nature of that relationship. As CVS was unaware that Integrated, or any one like Integrated, was going to provide financing to Beneficial based on CVS' purchase orders, it is impossible that CVS intended to deceive or mislead Integrated about the payment terms that CVS and Beneficial had agreed to.

Moreover, it is undisputed that CVS did not intentionally include incorrect payment term language in its purchase orders. Due to a clerical error, a number of CVS' purchase orders inadvertently and mistakenly included language indicating the eventual payment terms of 2%30 net 31, rather than the Pay on Scan payment terms that Beneficial and CVS had previously agreed to (*See* Undisputed Fact 11). Accordingly, CVS' did not issue its purchase orders to deceive anyone, let alone Integrated.

## II. Integrated's First, Second, and Sixth Counts (Breach of Contract and Book Account)

Integrated also asserts two counts of breach of contract against CVS. Though both counts are based on CVS alleged failure to make payments under CVS' contract with Beneficial, Integrated's second count asserts a claim that Integrated is allegedly a third-party beneficiary to

[5] While CVS only addresses the third element of fraud in this motion, CVS does not concede that the other elements have been satisfied.

the contract between CVS and Beneficial (*See* Integrated's Amended Counterclaim, ¶¶ 22-32). Integrated also claims that as an assignee of a portion of Beneficial's accounts receivables, Integrated is entitled to an accounting (*See* Integrated's Amended Counterclaim, ¶¶ 45-47). These counts also must fail as a matter of law because Beneficial does not have standing in its own right to enforce a contract that it was no a party to.

### A. Integrated does not have standing to assert these claims as it was neither a party to nor an intended beneficiary of the contract at issue.

Integrated does not have standing to assert its breach of contract claims as it was neither a party to the contract between CVS and Beneficial nor a third-party beneficiary of that contract. Though unclear, Integrated claims that since it is allegedly an assignee of a portion of Beneficial's accounts receivables, it is owed amounts allegedly due by CVS (*See* Integrated's Amended Answer and Counterclaim, ¶ 27). An assignment of receivables, however, does not pass legal title to the assignee. *See U.S. v. Colby Academy,* 524 F. Supp. 931, 934 (E.D.N.Y 1981); *State Factor Corp. v. Sales Factors Corp.,* 257 AD 101, 12 NYS2d 12 (N.Y. 1939).[6] Rather, it merely creates an equitable right enforceable against the assignor when the accounts come into existence. *See Colby Academy,* 524 F. Supp. at 934; *State Factor Corp.,* 257 AD at 14. Accordingly, Integrated cannot maintain its claim for breach of contract unless it is a third-party beneficiary of the contract(s) between CVS and Beneficial.

Integrated, however, is not a third-party beneficiary to the contract as CVS never contemplated the mere existence of Integrated, let alone directly and unequivocally intended for Integrated to receive a benefit from the contract. "There is a strong presumption that parties contract only for the benefit of themselves, and a contract will not be considered as having been made for the use and benefit of a third person unless it clearly appears that such was the intention

[6] The Security Agreement between Beneficial and Integrated is governed by New York law.

of the parties." *State v. Medical Malpractice Joint Underwriting Association,* 2005 WL 1377493 at* 3 (R.I. Super. 2005), *quoting Brown v. Summerlin Assocs., Inc.,* 614 S.W.2d 227, 229 (Ark.1981). Only parties to the contract or intended third party beneficiaries may seek to have rights declared under a contract. *See Forcier* 173 B.R. at 984-85 (only intended third party beneficiaries, not incidental beneficiaries, can bring an action for damages resulting from a breach of contract); *Davis v. New England Pest Control Co.,* 576 A.2d 1240, 1242 (R.I. 1990); *Finch v. Rhode Island Grocers Association,* 93 R.I. 323, 329-30, 175 A.2d 177, 184 (R.I. 1961). Rhode Island follows the Restatement (Second) of Contracts rule concerning third party beneficiaries, which requires that the parties directly and unequivocally intend to benefit a third party in order for that third party to be considered an intended beneficiary. *See Finch,* 93 R.I. at 330. Therefore, "[t]he intent to benefit the third party must be clearly expressed in the contract." *Forcier,* 173 B.R. at 985, *citing Blu-J. Inc. v. Kemper C.P.A. Group,* 916 F.2d 637, 640 (11th Cir.1990).

Moreover, a "promissor's mere awareness that someone other than the promisee may derive a benefit from the promissor's performance under the contract is insufficient to cloak that third-party with the mantle of intended beneficiary." *Forcier,* 173 B.R. at 973, *quoting Rhode Island Depositor's Economic Corporation v. Ernst & Young,* C.A. No 92-1120 (R.I. Super. Ct., March 11, 1994). Accordingly, a defendant's knowledge or awareness of a third-party's potential benefit or reliance on defendant's statements, does not prove an explicit intent to confer a benefit. *See Forcier,* 173 B.R. at 986 (holding that plaintiffs' contention that a defendant accountant may have been aware that plaintiffs reviewed and made use of defendant's audits and reports regarding certain debentures before purchasing same, was without legal consequence).

Likewise, under Utah law, for a third party to have an enforceable right under a contract, the contracting parties must have clearly intended to confer a separate and distinct benefit upon that third party. *See Rio Algom Corp. v. Jimco LTD.,* 618 P.2d 497, 506 (Utah 1980); *Tracy Collins Bank & Trust v. Dickamore,* 652 P.2d 1314, 1315 (Utah 1982); *Clark v. American Standard, Inc.,* 583 P.2d 618, 620 (Utah 1978). A third party who benefits only incidentally from the performance of a contract has no right to recover under that contract. *See Mel Trimble Real Estate v. Fitzgerald,* 626 P.2d 453, 454 (Utah 1981); *Rio Algom Corp.,* 618 P.2d at 506; *Tracy Collins,* 652 P.2d at 1315; *Schwinghammer v. Alexander,* 21 Utah 2d 418, 420, 446 P.2d 414, 415 (Utah 1968).

In particular, a third-party creditor of one of the contracting parties, does not qualify as an intended beneficiary merely because it would incidentally reap the benefits of a contract for the sale of goods that it took a security interest in. *See Tracy Collins,* 652 P.2d at 1314-1316. In *Tracy Collins*, the defendant buyer entered into a contract for the sale of goods whereby it was to make installment payment to the seller's escrow account. Plaintiff, Tracy Collins, was one of the seller's creditors, and claimed a security interest in the goods sold to the defendant buyer under the Uniform Commercial Code. Each month, the seller directed the escrow holder to disburse a portion of its receivables to the plaintiff, Tracy Collins. After the defendant buyer ceased making monthly installment payments to the seller's escrow account, Tracy Collins brought an action to enforce the sales/escrow agreement between the seller and the buyer as a third-party creditor beneficiary. *See Tracy Collins,* 652 P.2d at 1314-1316.

The Court found that Tracy Collins was not a third-party beneficiary to that contract, as the contract was void of any indication that the parties intended to benefit Tracey Collins even though the defendant buyer knew the seller was in financial difficulty *See Tracy Collins,* 652

P.2d at 1314-1316. Neither Tracy Collins nor creditors as a class were mentioned in the contract at issue, and there was no evidence that defendant buyer even knew of the seller's obligation to Tracy Collins. Moreover, that a portion of the defendant buyer's payments were disbursed to Tracy Collins was inconsequential and did not afford Tracey Collins third-party beneficiary status. *See Tracy Collins,* 652 P.2d at 1314-1316.

Here, neither CVS nor Beneficial contracted with the explicit intention to confer a benefit on Integrated. To begin with, the various documents making up the contract, namely the Carmichael Letter are silent as to any payment to Integrated, any creditor of Beneficial, or any other third-party (*See* Undisputed Fact 7). Likewise, CVS' purchase orders are also silent on that issue (*See* Undisputed Fact 10). These documents do not even reference Integrated or Beneficial's creditors as a class (*See* Undisputed Facts 7 and 10).

The parties could not have intended to confer a benefit on Integrated as Beneficial did not even begin negotiations with Integrated until well after CVS had already issued its initial purchase orders (*See* Undisputed Facts 10, 12, 13). Prior to August 23, 2004, CVS was unaware of the mere possibility of any relationship between Integrated and Beneficial (*See* Undisputed Facts 15 and 18). When negotiating CVS' purchase of WillpowerRX, Beneficial and its representatives never discussed or identified Integrated (*See* Undisputed Fact 19). Such a discussion would have been impossible since Beneficial did not begin conducting business with Integrated until August 2004 (*See* Undisputed Fact 19). In fact, Harvey Carmichael admits that he never discussed Integrated with either CVS or CMI (*See* Undisputed Fact 20). If Carmichael, Beneficial's president, did not even communicate this information to Beneficial's exclusive sales agent, CMI, it is impossible that CVS would have known about Integrated, let alone intended to confer a benefit on Integrated.

Moreover, while there may be a dispute as to the amount of payments due, it is undisputed that CVS was only required to make payment to Beneficial. While CVS obviously was happy to comply with Beneficial's subsequent request that payments be forwarded to an Integrated address, CVS certainly had no obligation to do so as CVS never agreed to satisfy Beneficial's past or future debts and obligations (*See* Undisputed Fact 18). Thus, CVS' performance under the contract was in no means dependent on making payments to Integrated.

As neither CVS nor Beneficial contracted with the explicit intention to confer a benefit on Integrated, Integrated cannot be a third-party beneficiary to the contract between CVS and Beneficial. Accordingly, Integrated does not have standing to assert its claims for breach of that contract and a book account.

## III. Integrated's Fourth Count (Promissory Estoppel)

Integrated also asserts a claim against CVS for promissory estoppel. Integrated alleged that CVS promised to make payment to Beneficial on payment terms other than Pay on Scan, and that the alleged promise foreseeably induced Integrated to make certain advances to Beneficial (*See* Integrated's Amended Counterclaim, ¶¶ 36-39).[7] Once again, Integrated has no standing to enforce such an alleged promise as it is undisputed that Integrated was not an intended beneficiary of CVS' purchase orders. Moreover, the record is devoid of any facts that support Integrated's contention that CVS should have reasonably expected Integrated to take action based on CVS' purchase orders.

### A. Integrated was not an intended beneficiary of CVS' purchase orders.

Integrated's lack of standing to assert a promissory estoppel claim based on CVS' alleged promise to Beneficial (i.e. CVS' purchase orders), is no different from its inability to assert a

[7] The only difference between Integrated's negligent misrepresentation claim and its claim for promissory estoppel is that one involves a misrepresentation while the other involves a promise.

claim for breach of a contract that it was a complete stranger to. That is, it makes little sense that an incidental third party that does not have standing to enforce a contract would have standing to enforce those provisions by merely asserting a promissory estoppel claim. Integrated, an incidental third party to CVS' purchase orders, should not obtain standing by characterizing the purchase orders as mere promises instead of contracts. *See Public Service Company of New Hampshire v. Hudson Power and Light Department,* 938 F.2d 338, 346 (1st Circuit 1991)(applying Massachusetts law, the First Circuit held that a plaintiff that did not qualify as an intended beneficiary of a contract, also did not have standing to interpose a promissory estoppel claim); *Veranda Beach Club, Ltd., Partnership v. Western Sur. Co.,* 936 F.2d 1364. 1380 (1st Circuit 1991)(applying Massachusetts law, the First Circuit held that a promissory estoppel theory failed against a third party since that third party was not an intended beneficiary of the promisor's promise).

Accordingly, for the same reasons discussed above, Integrated is not an intended beneficiary of the CVS purchase orders issued to Beneficial that Integrated allegedly relied on.

### B. CVS could not have reasonably expected Integrated to rely on its purchase orders.

Ignoring Integrated's lack of standing, Integrated's promissory estoppel claim still fails as a matter of law as CVS could not have reasonable expected Integrated to rely on CVS' purchase orders. Under Rhode Island law, "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *B.M.L. Corp. v. Greater Providence Deposit Corp., et al.,* 495 A.2d 675, 677 (R.I.1985) (quoting 1 Restatement (Second) Contracts § 90 at 242 (1981)). Like Integrated's claim for negligent misrepresentation, CVS cannot possibly be subject to open-ended liability to

third-parties, including Beneficial's potential creditors. *See Dowling,*, 735 F.Supp. at 1125. Once again, a duty of care is only extended to a "foreseen and limited classes of persons." *Rusch Factors,* 284 F.Supp. at 92-93. Therefore, Integrated cannot seriously argue that CVS reasonable expected Integrated to rely on CVS' purchase orders, unless CVS owed Integrated a duty of care.

As previously discussed, CVS neither intended nor knew that Beneficial intended on using CVS purchase orders, or the content of those purchase orders, to influence third-parties to provide Beneficial with financing. Once again, Beneficial and its representatives never discussed or identified Integrated (*See* Undisputed Fact 15). Likewise, Harvey Carmichael, admits that he never discussed Integrated with either CVS or Beneficial's sales representative and product broker, Contemporary Marketing, Inc., ("CMI") (*See* Undisputed Fact 16). It is also undisputed that Beneficial and its representatives never told CVS that Beneficial intended on or was contemplating assigning its receivables to a third-party and/or receiving financing from a third-party using its receivables as collateral (*See* Undisputed Fact 19). In fact, Beneficial and its representatives never even mentioned that Beneficial was going to or might obtain any financing (*See* Undisputed Fact 19 and 20). Additionally, CVS never even contemplated that Beneficial would try to or would be able to obtain such financing. (*See* Undisputed Fact 21).

Therefore, when issuing its purchase orders to Beneficial, CVS could not have reasonably expected that Integrated was going to advance Beneficial monies in reliance on CVS' purchase orders. A conclusion to the contrary would result in open ended liability to every one of the promisee's potential creditors, since in theory, those creditors might rely on the alleged promise to the promisee. Obviously, CVS cannot be subject to such indeterminate exposure.

## IV. Conclusion

For the foregoing reasons, CVS respectfully requests that the Court grant partial summary judgment with respect to counts 1 and 2 of defendant Integrated BioPharma, Inc.'s ("Integrated") amended counterclaim for breach of contract, count 4 of Integrated's amended counterclaim for promissory estoppel, count 5 of Integrated's amended counterclaim for misrepresentation, and count 6 of Integrated's amended counterclaim for a book account.

Respectfully submitted,

EDWARDS ANGELL PALMER & DODGE LLP

By:____/s/ Todd M. Reed_______

Todd Reed, Esq. (#6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June, 2007, I did send a true copy of the within document by ECF and regular mail, to the following:

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
155 South Main Street, Suite 304
Providence, RI 02903

Beneficial Holdings, Inc., Beneficial Health Systems, Inc.
and Beneficial Nutraceuticals, Inc.
c/o Jacquelynn D. Carmichael, Esq.
Eisenberg, Gilchrist & Morton
900 Parkside Tower
215 South State Street
Salt Lake City, Utah 84111

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Turks Head Place, Suite 380
Providence, RI 02903

/s/ Todd M. Reed