UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

CVS PHARMACY, INC.

Plaintiff,

- against -

Civil Action No.:05-171-T

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC.,
BENEFICIAL NUTRACEUTICALS, INC.,
INTEGRATED BIOPHARMA, INC., and
CONTEMPORARY MARKETING , INC.

Defendants.

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS BENEFICAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC., BENEFICIAL NUTRACEUTICALS, INC.**

The plaintiff, CVS Pharmacy, Inc. ("CVS"), by its attorneys, Edwards Angell Palmer & Dodge L.L.P., respectfully requests an order pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment in its favor of count 1 of its complaint asserting a claim for declaratory relief against defendants Beneficial Holding, Inc., Beneficial Health Systems, Inc., Beneficial Nutraceutical, Inc (referred to collectively as "Beneficial"). More specifically, CVS seeks a declaration that the contract's payment terms were pay on scan, and CVS was therefore only responsible for paying for units of WillpowerRx that CVS actually sold at its retail locations. CVS also seeks summary judgment with respect to count 1 of defendant Beneficial's counterclaim for declaratory relief, count 2 of Beneficial's counterclaim for breach of contract, and count 9 of Beneficial's counterclaim for a book account. The grounds for this motion are set forth in the accompanying memorandum of law.

Respectfully submitted,

EDWARDS ANGELL PALMER &
DODGE LLP

By: /s/ Todd M. Reed
Todd Reed, Esq. (#6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June, 2007, I did send a true copy of the within document by ECF, to the following:

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
155 South Main Street, Suite 304
Providence, RI 02903

Beneficial Holdings, Inc., Beneficial Health Systems, Inc.
and Beneficial Nutraceuticals, Inc.
c/o Jacquelynn D. Carmichael, Esq.
Eisenberg, Gilchrist & Morton
900 Parkside Tower
215 South State Street
Salt Lake City, Utah 84111

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
Turks Head Place, Suite 380
Providence, RI 02903

/s/ Todd M. Reed

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

CVS PHARMACY, INC.

Plaintiff,

- against -

Civil Action No.: 05-171-T

BENEFICIAL HOLDINGS, INC., BENEFICIAL HEALTH SYSTEMS, INC.,
BENEFICIAL NUTRACEUTICALS, INC.,
INTEGRATED BIOPHARMA, INC., and
CONTEMPORARY MARKETING , INC.

Defendants.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE BENEFICIAL DEFENDANTS**

Plaintiff CVS Pharmacy, Inc. ("CVS"), respectfully submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment in its favor of count 1 of its complaint asserting a claim for declaratory relief against defendants Beneficial Holding, Inc., Beneficial Health Systems, Inc., Beneficial Nutraceutical, Inc (referred to collectively as "Beneficial"). More specifically, CVS seeks a declaration that the contract's payment terms were Pay on Scan, and CVS was therefore only responsible for paying for units of WillpowerRx that CVS actually sold at its retail locations. CVS also seeks summary judgment with respect to count 1 of defendant Beneficial's

counterclaim for declaratory relief,[1] count 2 of Beneficial's counterclaim for breach of contract, and count 9 of Beneficial's counterclaim for a book account.[2]

## INTRODUCTION

Beneficial seeks to take advantage of an obvious clerical error in CVS' purchase orders to vitiate the previously agreed upon Pay on Scan payment term that CVS required, Beneficial unequivocally offered, and CVS accepted.[3] CVS had negotiated Pay on Scan payment terms with Beneficial's agent, sales representative and product broker, Contemporary Marketing, Inc. ("CMI"). CVS made it absolutely clear that it required Pay on Scan payment terms if it was going to do business with Beneficial. CMI, acting as Beneficial's agent, agreed. After CVS and Beneficial, through its agent CMI, negotiated and agreed upon Pay on Scan Payment terms, it is undisputed that CVS received a letter from Beneficial's president, Harvey Carmichael, on Beneficial letterhead, unequivocally offering Pay on Scan payment terms (the "Carmichael Letter").

Following CVS' receipt of the Carmichael Letter, neither Beneficial nor its agent, CMI, ever indicated that it was withdrawing it offer of Pay on Scan or that it was wavering. Rather, it is undisputed that CMI continued to outwardly manifest its intention to contract on a Pay on Scan basis. Subsequently, CVS orally accepted Beneficial's offer of Pay on Scan Payment terms.

---

[1] Beneficial seeks a declaration that the applicable payment terms were "2%30net 31" (*See* Beneficial's Counterclaim, ¶ 48-54).

[2] Integrated BioPharma, Inc. ("Integrated"), the assignee of all of Beneficial's claims in this action, has agreed to voluntarily discontinue count 3 (Unjust Enrichment), Count 5 (Intentional Interference with a Contractual Relationship), Count 6 (Intentional Interference with a Prospective Economic Advantage), Count 7 (Fraud Misrepresentation), and Count 8 (Negligent Misrepresentation) of Beneficial's counterclaims against CVS.

[3] The result Beneficial seeks to achieve is the factual equivalent of a purchaser accidentally paying with a $20 bill for something that only costs $10. Common sense dictates that the contract price does not become $20.

Accordingly, despite CVS' purchase orders' obvious clerical errors, CVS is entitled to summary judgment as to CVS' first count for a declaration that the parties agreed to Pay on Scan payment terms as it is clear that the parties had outwardly manifested their intent to agree to such terms. Conversely, CVS is entitled to summary judgment with respect to count 1 of Beneficial's counterclaim seeking a declaration that the parties agreed to payment terms other than Pay on Scan. Moreover, the sole basis for Beneficial's breach of contract claim is that CVS failed to pay Beneficial for WillpowerRX on a "Net 31day basis" (*See* Beneficial's Counterclaim, ¶ 57). Likewise, pursuant to count 9 of its counterclaim, Beneficial claims it is entitled to an accounting from CVS based on CVS' alleged failure to pay on 2%30 net 31 terms (*See* Beneficial's Counterclaim, ¶ 89). As Beneficial's causes of action for breach of contract and a book account necessarily depend on 2%30 net 31 payment terms, they also must fail as a matter of law.

Even if CVS' purchase orders were offers,[4] Beneficial's agent acknowledged that CVS purchase orders were really Pay on Scan, and in turn accepted Pay on Scan payment terms. Accordingly, in the alternative, CVS is entitled to summary judgment as Beneficial accepted Pay on Scan payment terms.

Even if CVS' purchase orders were offers, and Beneficial accepted these offers by delivering goods as alleged by Beneficial in its counterclaim, it is undisputed that CVS subsequently notified Beneficial of the clerical error and of the fact that CVS would only agree to Pay on Scan payment terms. Furthermore, Beneficial admits that it received CVS' notification before it filled the outstanding purchase orders. If CVS' purchase orders were offers as alleged by Beneficial, CVS' notification clearly countermanded its offers, and acted as a new

[4] Beneficial attempts to ignore the sequence of events leading up to CVS' issuance of purchase orders and claims that CVS' purchase orders were offers.

offer of Pay on Scan with regards to the purchase orders that Beneficial had yet to fill. By subsequently filling CVS' purchase orders, Beneficial accepted the Pay on Scan payment terms offered by CVS. Accordingly, in the alternative, CVS is entitled to summary judgment with regards to all purchase orders that Beneficial filled after Beneficial was notified that those purchase orders contained clerical errors and that CVS would only agree to Pay on Scan.

After notifying Beneficial of the clerical errors, CVS remedied its computer system that generated purchase orders so that all subsequent purchase orders issued by CVS to Beneficial contained language indicating Pay on Scan payment terms. At the very least, CVS is entitled to summary judgment as to the 41 purchase orders which indicated Pay on Scan that CVS issued after it notified Beneficial that the prior purchase orders contained clerical errors and that CVS would only agree to Pay on Scan.

## ARGUMENT

### I. Beneficial and CVS Agreed to Pay on Scan Payment Terms

Prior to CVS' issuance of purchase orders, CVS and Beneficial had already agreed to Pay on Scan payment terms. Recognizing the realities of commercial transactions, Rhode Island's Uniform Commercial Code liberally defines how a contract for sale can be formed, what such a contract must include, and when it can be made. *See* 6A-2-204; 6A-2-206(1)(a). More specifically, pursuant to 6A-2-204(1), "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct of both parties which recognizes the existence of a contract." 6A-2-204. Likewise, Rhode Island's Uniform Commercial Code does not limit "offers" to a narrowly defined type of communication. *See* 6A-2-206(1)(a) . Rather, an "offer" and "acceptance" are liberally defined as follows: "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." 6A-

2-206(1)(a).[5] The offer and the acceptance are sufficient if they manifest objectively the parties' mutual assent to be bound by a contractual relationship. *See Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 635, 36 UCC Rep.Serv.2d 1031(R.I. 1989), *citing* Restatement (Second) Contracts §§ 18- 19 (1981).

It follows that sellers are capable of making offers, and buyers are capable of accepting a seller's offer. *See Polytop Corporation v. Chipsco, Inc.*, 826 A.2d 945, 948-949, 50 UCC Rep.Serv.2d 652 (R.I. 2003)(holding that a seller's quotations constituted offers and that the buyer's subsequent purchase orders constituted acceptances); *Superior Boiler Works,* 711 A.2d at 635, 36 UCC Rep.Serv.2d 1031(R.I. 1989)(holding that seller's "proposal" contained the "typical earmarks of an offer").

Here, Beneficial clearly and outwardly manifested its intent to enter into a contract with CVS, and clearly invited CVS to accept the terms that it had offered. After Beneficial's agent, CMI, approached CVS regarding WillpowerRX, CVS entered into negotiations with CMI regarding the purchase of WillpowerRX (*See* Undisputed Facts 3-6). Of particular importance was the issue of payment terms (*See* Undisputed Fact 8). CVS told CMI that CVS viewed WillpowerRX as a risky endeavor because Beneficial was a new vendor and because WillpowerRX was a new product with no proven sales record or recognizable brand name (*See* Undisputed Fact 8). Therefore, CVS told CMI on multiple occasions that CVS would only consider purchasing WillpowerRX if Beneficial was willing to offer CVS Pay on Scan payment terms (*See* Undisputed Fact 9). CVS made it absolutely clear that it would not negotiate on payment terms (*See* Undisputed Fact 9). Ed Ellis, CMI's Vice President of marketing and sales,

---

[5] Beneficial and Integrated argue that Utah rather than Rhode Island law applies based on their claims that Beneficial accepted CVS purchase orders in Utah. It is CVS' position that CVS accepted Beneficial's offer in Rhode Island. Therefore, Rhode Island law applies. Utah UCC § 70A-2-206, however, is identical.

expressed his understanding and agreed that the payment terms would have to be Pay on Scan (*See* Undisputed Fact 9).

After the parties negotiated Pay on Scan, CVS received a letter from Beneficial's President, Harvey Carmichael (the "Carmichael Letter"), which constituted an offer to sell WillpowerRX to CVS (*See* Undisputed Facts 11-12). Through the Carmichael Letter, Beneficial outwardly manifested to be bound by the terms therein, including payment terms of Pay on Scan for the first year (*See* Undisputed Fact 15). Moreover, the Carmichael Letter clearly invited CVS to accept the terms that Beneficial offered (*See* Undisputed Facts 13-15).

Subsequent to Beneficial's issuance of the Carmichael Letter, neither Beneficial nor its agents, namely CMI, ever indicated to CVS that Beneficial was revoking its agreement to offer Pay on Scan payment terms or that Beneficial was having second thoughts (*See* Undisputed Fact 16). Rather, Beneficial continued to outwardly manifest its intention to be bound by the terms previously agreed upon. In particular, Beneficial continued push for purchase orders and began to perform under the contract by executing CVS' Returned Goods Agreement as agreed upon in the Carmichael Letter (*See* Undisputed Fact 18). On July 2, 2004, CMI, sent CVS an email regarding Beneficial's marketing and promotional campaign (*See* Undisputed Fact 19). This email reiterated that the payment terms for the purchase of WillpowerRX would be "Pay on Scan." The email stated in pertinent part, "They are pay on scan" (*See* Undisputed Fact 19). These actions do not manifest any reluctance on Beneficial's part to enter into a deal with CVS and agree to Pay on Scan payment terms. In fact, Harvey Carmichael admits that prior to Beneficial's receipt of CVS purchase orders, as far as he was concerned, the payment terms for CVS could have been Pay on Scan since nothing was ever said to the contrary (*See* Undisputed Fact 17).

In early July, 2004, CVS accepted Beneficial's offer by contacting Beneficial's agent CMI, and indicating that CVS was going to accept Beneficial's offer and that purchase orders would be forthcoming (*See* Undisputed Fact 20). Accordingly, CVS accepted Beneficial's offer of Pay on Scan payment terms.

Even if Beneficial argues that CVS' oral acceptance was insufficient, the relevant CVS purchase orders would have served as acceptances of Beneficial's previous offer. That CVS' purchase orders arguably contained different payment terms does not mean that CVS did not accept Beneficial's offer and that there was not an agreement reached between the parties. Rhode Island's Uniform Commercial Code has expressly rejected the long time common law "mirror image rule." In *Polytop* 826 A.2d at 948-949, the Rhode Island Supreme Court rejected the "mirror image rule" when applying the U.C.C. and found that the buyer had agreed to an arbitration requirement in the seller's offer by submitting purchase orders even though the buyer's purchase orders were silent to the issue of dispute resolution. Moreover, the buyer's acceptance was still unconditional despite language in the buyer's purchase orders stating that, "Any additional or different terms proposed by seller are rejected unless expressly assented to in writing by buyer's authorized agent." *Polytop* 826 A.2d at 948-949; *see also* G.L. 1956 § 6A-2-207. Accordingly, even if CVS' oral acceptance was insufficient, CVS accepted Beneficial's offer through its purchase orders.

As CVS and Beneficial clearly agreed to Pay on Scan payment terms, CVS is entitled to summary judgment in its favor of count 1 of its complaint seeking a declaration as to the contract's payment terms. Likewise, CVS is entitled to summary judgment summary judgment with respect to count 1 of defendant Beneficial's counterclaim for declaratory relief, count 2 of

Beneficial's counterclaim for breach of contract, and count 9 of Beneficial's counterclaim for a book account.

## II. In the Alternative, Beneficial's Agent CMI Accepted Pay on Scan Payment Terms

Assuming *arguendo* that CVS' purchase orders were offers,[6] CMI acting as Beneficial's agent, agreed to and accepted Pay on Scan payment terms. It is undisputed that in early September 2004, Beneficial, through its agent CMI, spoke to CVS regarding CVS' purchase orders' payment term language (*See* Undisputed Fact 32). More specifically, Tobias Lombardi notified Ed Ellis that CVS' had and would only agree to Pay on Scan payment terms (*See* Undisputed Fact 32). Ed Ellis confirmed that Beneficial was aware that CVS' purchase orders incorrectly contained "2%30 net 31" payment terms and that the correct payment terms were Pay on Scan (*See* Undisputed Fact 32). According, even if CVS' purchase orders were offers, Beneficial, through its agent CMI, recognized that the parties intended to agree to Pay on Scan and in turn accepted Pay on Scan payment terms on Beneficial's behalf.

## III. In the Alternative, CVS Countermanded all Offers that Beneficial had Not Filled

Assuming *arguendo* that CVS' purchase orders were offers, and Beneficial accepted CVS' offers by filling these purchase orders, CVS withdrew and countermanded its purported offers to extend "2%30net31" payment terms by notifying Beneficial both orally and in writing

---

[6] Beneficial alleged in its counterclaim that CVS' purchase orders were offers, and that Beneficial accepted these offers by "filling" CVS' purchase orders. More specifically, Beneficial alleged as follows: "Beneficial and CVS shared a contractual relationship. The purchase orders submitted by CVS to Beneficial were 'offers' and Beneficial's 'filling' of the purchase orders were 'acceptances' of CVS' offers" (*See* Beneficial's Counterclaim, ¶ 56). Likewise Integrated alleged as follows: "The CVS Net 31 purchase orders constituted offers to purchase goods according to Net 31 terms. Beneficial accepted the offer by causing goods to be shipped to CVS under the purchase orders. On Beneficial's acceptance, the purchase orders became contracts binding CVS to the payment terms (*See* Integrated's Amended Counterclaim, ¶ 22).

that its purchase orders' payment terms were in fact Pay on Scan.[7] More specifically, through CVS' August 27, 2004 email to Beneficial and CVS' subsequent conversation with Beneficial's agent, CMI, CVS made it clear to Beneficial that Beneficial was a Pay on Scan vendor and that CVS would only agree to Pay on Scan payment terms. By filling CVS' purchase orders after it was notified that CVS was only offering Pay on Scan payment terms, Beneficial accepted CVS' Pay on Scan payment terms.

An offer to buy or sell may be withdrawn or countermanded at any time before its acceptance. A buyer may withdraw an order or offer at any time before it has been accepted by a seller. *See B. T. Moran, Inc., v. First Security Corporation,* 82 Utah 316, 24 P.2d 384, 387 (Utah 1933)(notice to seller's salesperson sufficient to revoke contract for sale of goods); *Crane v. Timberbrook Village, Ltd.,* 774 P.2d 3, 5 (Utah App. 1989)(purchase of limited partnership interest).[8] Moreover, under both Utah and Rhode Island law, an offer to buy or sell goods will not be left open and considered a firm offer, unless that offer is a "[s]igned writing which by its terms gives assurance that it will be held open …" U.C.A. 1953 § 70A-2-205; Gen. Laws, 1956, § 6A-2-205.

Here, it is undisputed that under both Integrated and Beneficials' interpretations of what constituted the offer and acceptance, as of August 27, 2004, Beneficial had yet to fill and therefore accept most of the purchase orders previously issued by CVS.[9] Since under its own

---

[7] Under this scenario, CVS reserves its right to argue at trial that the previously filled purchase orders should be reformed to reflect the true intentions of the parties.

[8] Beneficial and Integrated claimed in their prior motions for summary judgment that if Beneficial accepted CVS' offer in Utah, the contract was formed in Utah and would be governed by Utah Law. Accordingly, assuming *arguendo,* the contract was formed in Utah, Utah law will apply.

[9] As of August 27, 2004, Beneficial had only filled 23 of the 48 purchase orders that CVS had issued (*See* Undisputed Fact 39). Between August 27, 2004, and September 2, 2004, when CVS remedied the error in its system that generates purchase orders, CVS issued an additional 7 purchase orders containing incorrect payment terms (*See* Undisputed Fact 39).

interpretation, Beneficial had not accepted these offers, CVS was free to withdraw these purported offers at any time, and offer Pay on Scan payment terms. Furthermore, it is undisputed that CVS' purchase orders were not firm offers as CVS never gave Beneficial any written assurance that these purchase orders would be left open.[10]

It is also undisputed that Beneficial received CVS' notification that CVS' considered Beneficial a Pay on Scan vendor. That is, it is undisputed that Beneficial's agent, Stewart Lask, received CVS' August 27, 2004 email notifying Beneficial that it was a Pay on Scan vendor (*See* Undisputed Facts 27, 28, 30, 33, and 34). In fact, Beneficial affirmatively alleges that prior to receiving its first payment, CVS' accounts payable department told agents for Beneficial's manufacturer and private investor that CVS' payment obligations were Pay on Scan (*See* Undisputed Facts 34-35). Though notification to Stewart Lask was sufficient in itself, it is also undisputed that Beneficial's President, Harvey Carmichael, was notified that CVS would only agree to Pay on Scan payment terms (*See* Undisputed Facts 28, 29, 30, and 35). Not only did Lask testify that he immediately notified Carmichael, but Carmichael also testified that based on the August 27, 2004 email, Beneficial learned that CVS was claiming that the payment terms were Pay on Scan (*See* Undisputed Facts 28, 29, 30, and 35). Once again, Beneficial affirmatively alleges in its counterclaim that CVS' notification was "reported to Beneficial" (*See* Undisputed Fact 35).

Additionally, it is undisputed that almost immediately after conferring with Lask on August 27, 2004, CVS notified Beneficial's agent, CMI, that the terms of CVS' purchase orders were really Pay on Scan (*See* Undisputed Facts 31-32). CMI confirmed that Beneficial was

---

[10] Neither Beneficial nor Integrated allege that CVS had given Beneficial assurance in writing that the purchase orders would be left open.

aware that CVS' purchase orders incorrectly contained "2%30 net 31" payment terms and that the correct payment term was Pay on Scan (*See* Undisputed Fact 32). While notification to Beneficial's agent, CMI, was sufficient in itself, Beneficial affirmatively alleges that CMI informed Beneficial that the payment terms were Pay on Scan (*See* Undisputed Fact 36).

Accordingly, based on CVS' August 24, 2004 email, and CVS' conversation with CMI, Beneficial admits that it was put on notice that CVS' purchase orders contained clerical errors and that CVS intended them to contain Pay on Scan payment terms. Assuming *arguendo* that CVS' purchase orders were offers, CVS' August 27, 2004 email and its notification to CMI served as a withdrawal its alleged prior offer of "2%30net 31" payment terms, and served as a new offer to purchase WillpowerRX on a Pay on Scan basis.

Subsequently, Beneficial chose to fill these purchase orders subject to CVS' August 27, 2004 email stating that Beneficial was a Pay on Scan vendor, subject to CVS' notification to CMI that Beneficial was a Pay on Scan vendor, and knowing that CVS intended to pay Beneficial on a Pay on Scan basis (*See* Undisputed Facts 39-40). By choosing to subsequently fill CVS' outstanding purchase orders after receiving CVS' multiple notifications, Beneficial in turn accepted Pay on Scan payment terms with regards to any outstanding purchase orders. Accordingly, even if CVS' purchase order were offers, CVS is entitled to partial summary judgment in favor of count 1 of its complaint for declaratory relief with regards to all purchase order that Beneficial filled after August 27, 2004. Likewise, CVS is entitled to summary judgment with respect to count 1 of defendant Beneficial's counterclaim for declaratory relief, and count 2 of Beneficial's counterclaim for breach of contract, and count 9 of Beneficial's counterclaim for a book account, with regards to all purchase order that Beneficial filled after August 27, 2004.

## IV. In the Alternative, CVS Offered Beneficial Pay on Scan Payment Terms

Assuming *arguendo* that CVS' purchase orders were offers, and Beneficial accepted CVS' offers by filling these purchase orders, at the very least, Beneficial accepted Pay on Scan payment terms with regard to the 41 CVS purchase orders that contained language indicating Pay on Scan payment terms.

After CVS learned that its prior purchase orders incorrectly contained language indicating the ultimate payment terms rather than Pay on Scan, it immediately made the appropriate changes in its computer system that generates purchase orders so that all subsequent CVS purchase orders would identify Pay on Scan payment terms (*See* Undisputed Fact 42). From September 15, 2004, to December 16, 2004, CVS issued an additional 41 purchase orders to Beneficial, all of which contained payment term language indicating Pay on Scan payment terms (*See* Undisputed Fact 43). That is CVS identified Pay on Scan payment terms by leaving the payment terms blank (*See* Undisputed Fact 43).

Under both Integrated and Beneficials' interpretations of what constituted an offer and acceptance, Beneficial accepted the 41 purchase orders and their Pay on Scan payment terms by subsequently filling them. Moreover, Beneficial filled these 41 CVS purchase orders containing Pay on Scan payment terms subject to CVS' August 27, 2004 email stating that Beneficial was a Pay on Scan vendor, subject to CVS' notification to CMI that Beneficial was a Pay on Scan vendor, and knowing that CVS intended to pay Beneficial on a Pay on scan basis.

Accordingly, a the very least, CVS is entitled to partial summary judgment in favor of count 1 of its complaint asserting a claim for declaratory relief against defendant Beneficial with regards to the 41 purchase orders containing Pay on Scan payment terms that Beneficial filled. Likewise, CVS is entitled to summary judgment summary judgment with respect to count 1 of

defendant Beneficial's counterclaim for declaratory relief, count 2 of Beneficial's counterclaim for breach of contract, and count 9 of Beneficial's counterclaim for a book account with regards to those purchase orders.

**V. Conclusion**

For the foregoing reasons, CVS respectfully requests that the Court grant partial summary judgment in CVS favor on counts 1 of CVS' complaint, and counts 1, 2, and 9 of Beneficial's counterclaim.

Respectfully submitted,

EDWARDS ANGELL PALMER &
DODGE LLP

By: /s/ Todd M. Reed
Todd Reed, Esq. (# 6602)
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June, 2007, I did send a true copy of the within document by ECF and regular mail, to the following:

CharCretia V. DiBartolo, Esq.
Hinshaw & Culbertson LLP
155 South Main Street, Suite 304
Providence, RI 02903

Beneficial Holdings, Inc., Beneficial Health Systems, Inc.
and Beneficial Nutraceuticals, Inc.
c/o Jacquelynn D. Carmichael, Esq.
Eisenberg, Gilchrist & Morton
900 Parkside Tower
215 South State Street
Salt Lake City, Utah 84111

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
Turks Head Place, Suite 380
Providence, RI 02903

/s/ Todd M. Reed